UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA          :
                                  :        S3 20-cr-188(JSR)
          -v-                     :
                                  :        MEMORANDUM ORDER
RUBEN WEIGAND                     :
                                  :
     Defendant.                   :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

     Defendant Ruben Weigand moves under 18 U.S.C. § 3142(f) for

reconsideration of the Court's March 17, 2020 order detaining

him pending trial. Alternatively, he moves for temporary release

under 18 U.S.C. § 3142(i) to facilitate his participation in the

preparation of his defense. For the following reasons, his

motions are denied.

     Last month, a grand jury in the Southern District of New

York returned an indictment against Weigand, charging him with

one count of conspiracy to commit bank fraud in violation of 18

U.S.C. § 1349. The indictment alleges that Weigand and his co-

conspirators participated in a scheme to trick banks into

processing over $100 million of credit and debit card payments

to marijuana businesses by disguising those payments as

transactions with a series of "phony retailers" engaged in other

lines of business.

     Weigand, a citizen of Germany and resident of Luxembourg,

was arrested at Los Angeles International Airport on March 9,

                                1

2020 during a layover on a flight from Switzerland to Costa

Rica. On March 13, Weigand was presented before a Central

District of California magistrate judge, who ordered his release

on bail. The Government appealed to this Court, which on March

17 reversed the magistrate judge. Weigand has since been

detained at the Santa Ana City Jail in Orange County,

California. He and his co-defendant are scheduled to be

telephonically arraigned before this Court tomorrow.

The relevant statute, 18 U.S.C. § 3142(f), allows this

Court to reopen a bail proceeding at any time before trial if

the Court finds that "information exists that was not known to

the movant at the time of the hearing and that has a material

bearing on the issue whether there are conditions of release

that will reasonably assure the appearance of such person as

required and the safety of any other person and the community."

The Court's original decision denying bail rested primarily on

two conclusions: that the Government's proffered evidence showed

a strong case against the defendant, and that there was a

substantial risk that the defendant would flee the United States

if released on bail. Weigand has not presented any information —

either in his letter motion dated April 21 or in the telephonic

oral argument held on April 24 — that undermines either of the

Court's earlier conclusions.

As to the strength of the evidence, the Court continues to

2

conclude that the Government has a substantial case that the defendant knowingly participated in the charged conspiracy. Among other evidence, the Government cites encrypted chat messages and emails between Weigand and his alleged co-conspirators discussing the scheme and containing application packages in the names of the "phony merchants" that the defrauded banks believed they were doing business with. Moreover, the defendant's seemingly false post-arrest statements, while possibly explained by jet lag or confusion, are more likely probative of his consciousness of guilt.

By way of newly obtained evidence, defense counsel at oral argument primarily relied on a recorded phone call between Weigand and a co-conspirator-turned-cooperator, in which Weigand disclaims personal participation in the conspiracy, or at least some aspects of it. The Court has listened to this recording and reviewed a transcript in camera and does not deem it so materially exculpatory (if at all) as to undermine the Court's earlier bail determination. Specifically, the call occurred fairly late in the conspiracy, after most of the aforementioned encrypted conversations had already occurred. A plausible reading of Weigand's disclaimers of personal involvement is that they refer only to that particular point in time, and therefore do not undermine the evidence of his earlier, more extensive participation.

As to the risk of flight, the Court continues to deem Weigand a substantial flight risk. The strength of the Government's case against the defendant gives him an obvious incentive to flee.[1] Further, he has very few ties to the United States, if any. He is a citizen of Germany — under whose laws Weigand does not qualify for extradition — and a resident of Luxembourg, where he owns a home and where his partner resides. Further still, he has substantial personal wealth, giving him the means and wherewithal to flee the jurisdiction in spite of the usual obstacles such as having his passport confiscated or being electronically monitored.

The Court is also unconvinced that Weigand's proposed bail package would assure his appearance. Weigand has proposed a $4 million personal recognizance bond, secured by his home in Luxembourg (or cash borrowed against it), plus additional cash, and with three co-signers pledging a combined $1 million. But Weigand's personal wealth gives him the means to absorb the loss of this collateral, as well as the means to make his co-signers whole. The Court was somewhat more attracted to the defendant's proposal for house arrest, with GPS monitoring, in the home of a

---

[1] Despite the interesting discussion at oral argument as to what the Sentencing Guidelines range might be if Weigand were convicted, Mr. Weigand (who was present telephonically at the oral argument) surely understands that, given the size and sophistication of the alleged fraud, he faces the possibility of a substantial sentence if convicted.

Rhode Island-based attorney who is a friend of Weigand's partner. But experience shows that GPS monitoring is far from foolproof, and if Weigand fled without this attorney's knowledge or assistance, she would likely not suffer professional consequences. While Weigand is also proposing to sign a waiver of his right to challenge extradition, nevertheless, as the Government argues, such a waiver is unlikely to be enforced in a foreign forum. The Court therefore concludes that there is "no condition or combination of conditions [that] will reasonably assure [Weigand's] appearance." 18 U.S.C. § 3142(e)(1).

The ongoing coronavirus pandemic makes this decision more difficult, but it does not change the outcome. The Court recognizes the plight that the outbreak poses for all incarcerated persons, including Weigand, who has presented evidence that he suffers from sleep apnea. Although it is not the end of the matter, however, the Court is somewhat reassured by the fact that the Santa Ana City Jail has not recorded any cases among its inmates and staff, this in spite of recent media reports that the virus may have been circulating in California for weeks longer than previously recognized. For the time being, therefore, the facility's quarantine protocols appear to be working.

And similarly, although the Court is sympathetic to the difficulties that defense counsel (in this and other cases) are

experiencing in arranging visits with incarcerated clients, 18

U.S.C. § 3142(i) applies no more to Weigand than it does to any

other defendant.

The Court has considered Weigand's other arguments and

finds them unpersuasive. The motions for reconsideration, or,

alternatively, for temporary release, are therefore denied.

SO ORDERED.

Dated: New York, NY
       April 27, 2020

_____
United States District Judge

6