UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **S3 20 Cr. 188 (JSR)** |
| v. | |
| Hamid Akhavan,<br>        a/k/a "Ray Akhavan," | |
| -and- | |
| Ruben Weigand, | |
|             Defendants. | |

**Government's Memorandum of Law In Opposition To
Defendants' Motions for a Bill of Particulars**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Christopher J. DiMase,
Nicholas Folly,
Tara La Morte
Assistant United States Attorneys
    *Of Counsel*

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    I. The Indictment ............................................................................................................ 2

    II. Procedural History ...................................................................................................... 3

    III. Discovery Materials and Other Disclosures ............................................................ 4

DISCUSSION ....................................................................................................................... 5

    I. Applicable Law .......................................................................................................... 5

    II. A Bill of Particulars Is Not Warranted In This Case, as the Defendants Improperly Seek Evidentiary Detail, and the Government Has Otherwise Made Sufficient Disclosures of the Information Sought ........................................................................... 9

        A. Identification of Uncharged Co-Conspirators ..................................................... 10

        B. Identification of Specific Misrepresentations ...................................................... 12

        C. Identification of Victim Banks ............................................................................ 14

        D. Other Evidentiary Detail ..................................................................................... 15

    III. Contrary to the Defendants' Arguments, the Discovery Produced in This Case Renders Defendants' Requests for Particulars Unnecessary, and Does Not Impermissibly Shift the Burden of Proof .................................................................... 19

CONCLUSION ..................................................................................................................... 22

## Table of Authorities

**Cases**

*Kelly v. United States*, __S. Ct.__, No. 18-1059, 2020 WL 2200833 (May 7, 2020) .................. 15

*Loughrin v. United States*, 573 U.S. 351 (2014)........................................................... 15

*Shaw v. United States*, 137 S. Ct. 462 (2016) ............................................................. 15

*United States v. Abakporo*, 959 F. Supp. 2d 382 (S.D.N.Y. 2013) ............................................. 16

*United States v. Barrera*, 950 F. Supp. 2d 461 (E.D.N.Y. 2013) ................................................ 17

*United States v. Bin Laden*, 92 F.Supp.2d 225 (S.D.N.Y. 2000)................................................. 11

*United States v. Bonventre*, 10 Cr. 228 (LTS), 2013 WL 2303726 (S.D.N.Y. 2013) .............. 6, 13

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (per curiam) ........................... 6, 10, 20

*United States v. Carroll*, No. 19 CR 545 (CM), 2020 WL 1862446 (S.D.N.Y. Apr. 14, 2020) .... 9

*United States v. Cephas*, 937 F.2d 816 (2d Cir. 1991) .................................................. 8

*United States v. Cimino*, 31 F.R.D. 277 (S.D.N.Y. 1962) ................................................ 8

*United States v. Cook*, No. 13 Cr. 777 (AJN), 2014 U.S. Dist. LEXIS 182268

   (S.D.N.Y. Mar. 10, 2014) ............................................................................ 10

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988) ............................................. 21

*United States v. Fea*, No. 10 CR. 708 (PKC), 2011 WL 2119708 (S.D.N.Y. May 24, 2011) ..... 14

*United States v. Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987) ........................................... 8

*United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404 (D. Conn. Aug. 12, 1996)........ 14

*United States v. Gottlieb*, 493 F.2d 987 (2d Cir. 1974) ........................................... 7, 17

*United States v. Henry*, 861 F. Supp. 1190 (S.D.N.Y. 1994) ........................................... 8

*United States v. Johnson-Guzman*, No. 98 CR. 350 (RWS), 1998 WL 730327

    (S.D.N.Y. Oct. 16, 1998) ......................................................... 17

*United States v. Kazarian,* No. 10 Cr. 895 (PGG), 2012 WL 1810214

    (S.D.N.Y. May 18, 2012)...................................................... 6, 19

*United States v. Leonelli*, 428 F. Supp. 880 (S.D.N.Y. 1977) ....................................... 9

*United States v. Levy*, 11 Cr. 62 (PAC), 2013 WL 664712, 13 (S.D.N.Y. Feb. 25, 2013)..... 13, 20

*United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657

    (S.D.N.Y. Aug. 26, 2014) ..................................................... 7, 8

*United States v. Mahaffy*, 446 F. Supp. 2d 115 (E.D.N.Y. 2006)................................. 10

*United States v. Mandell*, 710 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................. 19

*United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010) .................................... 6

*United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494

    (S.D.N.Y. Aug. 17, 2018) ..................................................... 9

*United States v. Mitlof*, 165 F. Supp. 2d 558 (S.D.N.Y. 2001)................................. 9, 18

*United States v. Mittal*, No. 98 Cr. 1302, 1999 WL 461293 (S.D.N.Y. July 7, 1999) ............... 17

*United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957

    (S.D.N.Y. Aug. 4, 2011) ..................................................... 6, 19

*United States v. Morales*, 280 F. Supp. 2d 262 (S.D.N.Y. 2003) ................................. 6

*United States v. Murgio*, 209 F. Supp. 3d 698 (S.D.N.Y. 2016) ................................. 10

*United States v. Muyet*, 945 F. Supp. 586 (S.D.N.Y. 1996) ........................... 8

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ............................. 17

*United States v. Nejad*, No. 18-CR-224 (AJN), 2019 WL 6702361 (S.D.N.Y. Dec. 6, 2019)..... 15

*United States v. Orena*, 32 F.3d 704 (2d Cir. 1994) ................................................................... 15

*United States v. Payden*, 613 F. Supp. 800 (S.D.N.Y. 1985) ........................................................ 7

*United States v. Perez*, 940 F. Supp. 540 (S.D.N.Y. 1996) ......................................................... 18

*United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287 (S.D.N.Y. 2018)........................................ 11

*United States v. Rigas*, 258 F. Supp. 2d 299 (S.D.N.Y. 2003) ..................................................... 7

*United States v. Rivera*, No. 16 CR. 175 (LGS), 2017 WL 1843302

   (S.D.N.Y. May 8, 2017)......................................................................................... 16, 17

*United States v. Russo*, 483 F. Supp. 2d 301 (S.D.N.Y. 2007)...................................................... 14

*United States v. Salas*, No. 07 CR.557 (JGK), 2008 WL 4840872 (S.D.N.Y. Nov. 5, 2008)........ 9

*United States v. Salazar*, 485 F.2d 1272 (2d Cir. 1973) ............................................................... 17

*United States v. Samsonov*, No. 07 Cr. 1198(CM), 2009 WL 176721

   (S.D.N.Y. Jan. 23, 2009).................................................................................. 6, 7, 19

*United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. 2001) ..................... 21

*United States v. Sindone*, 01 Cr. 517 (MBM), 2002 WL 48604 (S.D.N.Y. Jan. 14, 2002)............ 8

*United States v. Strawberry*, 892 F. Supp. 519 (S.D.N.Y. 1995) .................................................. 7

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990).................................................... 6, 8, 10, 17

*United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649

   (S.D.N.Y. Apr. 15, 2002)......................................................................................... 7, 17

*United States v. Trippe*, 171 F. Supp. 2d 230 (S.D.N.Y. 2001)......................................... 7, 10, 17

*United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ......... 20

*United States v. Wilson*, 493 F. Supp. 2d 364 (E.D.N.Y. 2006).................................................... 17

*United States v. Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013) ............................................ 7

**Statutes and Rules**

Federal Rule of Criminal Procedure 7(f) ........................................................................ 5

Title 18, United States Code, Section 1349 .................................................................... 2

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motions for a bill of particulars filed by defendants Hamid Akhavan and Ruben Weigand, respectively.

The 16-page single-count, speaking indictment, S3 20 Cr. 188 (JSR) (the "Indictment"), describes the charged bank fraud scheme in great detail.  The Indictment explains how the defendants deceived U.S.-based banks and financial institutions (the "Issuing Banks") into approving credit and debit transactions that they otherwise would not have approved had they been aware of the true nature of the transactions, that is, that they involved the sale of marijuana-based products.  In particular, the Indictment explains that while the defendants were in fact facilitating credit and debit purchases for marijuana products sold by marijuana dispensaries, the defendants fraudulently caused Issuing Banks to believe that they were facilitating credit and debit purchases for a number of innocuous products.  As the Indictment further explains, the defendants accomplished this fraud by creating "phony merchants," i.e., fictitious merchants engaged in the purported sale of legal products designed to mask that the transactions being processed by the Issuing Banks actually involved the sale of marijuana (the "Phony Merchants").  A number of these Phony Merchants are specifically identified in the Indictment.

As discussed further below, in addition to the Indictment, the Government has produced a substantial amount of discovery that contains the information that the defendants claim is needed to defend this case.  That discovery includes, among other things, pertinent financial records, email and other recorded communications involving the defendants related to the scheme, records from the Online Marijuana Marketplace Company and a marijuana dispensary connected to the scheme, and documents and records obtained from a cooperating witness who engaged in the scheme

together with the defendants.   As to defendant Weigand, the Government also provided a description of his role in the scheme in the context of twice opposing his request for release on conditions of bail, and in connection with a search warrant affidavit filed in support of a warrant to search his electronic devices.  The Government has similarly produced a search warrant affidavit for the search of defendant Akhavan's electronic devices; this affidavit likewise details Akhavan's conduct.  There is no further information that the defendants need to understand the charge against them or to prepare for trial.

## BACKGROUND

### I.  The Indictment

The Indictment was filed under seal on March 9, 2020, charging the defendants in a single count of conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349.  Over its 16 pages, the Indictment sets forth extensive allegations supporting the sole count of bank fraud conspiracy.   In particular, the Indictment provides substantial detail regarding, among other things: (a) the operation of the Online Marijuana Marketplace Company that employed the defendants' services (Indictment ¶¶ 3-6); (b) how credit card and debit card transactions are ordinarily processed, and the various entities involved in the processing of such transactions (*Id.* ¶¶ 7-11), and (c) the scheme employed by the defendants to cause Issuing Banks to process marijuana transactions for the Online Marijuana Marketplace Company, which those Issuing Banks otherwise would not have processed (*Id.* ¶¶ 1-2, 12-14).

In describing the fraud scheme, the Indictment explains how Akhavan, Weigand, and others created the Phony Merchants—fraudulent online companies purporting to sell legal products, including "dog products, dive gear, carbonated drinks, green tea, and face creams"—and established Visa and MasterCard merchant accounts with offshore banks to accept payments

directed to those Phony Merchants. (*Id.* ¶ 13).  The Indictment specifies that Akhavan, Weigand, and others used over a dozen such Phony Merchants for this purpose, and identifies eight specific websites associated with some of those Phony Merchants.  (*Id.*).  The Indictment further alleges that many of the Phony Merchants purported to have the same physical address, and despite being based outside of the United States, claimed to maintain U.S.-based customer service numbers. (*Id.*)  The Indictment alleges that over $100 million in marijuana credit and debit card transactions were processed through the Phony Merchant accounts.  (*Id.* ¶ 14).  The transactions were "miscoded" with incorrect "merchant category codes," or "MCCs," to give the false appearance that the transactions were "completely unrelated to marijuana." (*Id.*).  The Indictment further specifies that some of the MCCs reported for the marijuana transactions processed on behalf of the Online Marijuana Marketplace Company referred to "stenographic services, music stores/pianos, and cosmetic stores." (*Id.*)

## II.  Procedural History

Defendant Weigand was arrested on March 9, 2020, at Los Angeles International Airport in California.  He was presented in the Central District of California the following day, and was ordered detained.  This Court subsequently held two bail hearings related to Weigand, the first on March 17, 2020, and the second on April 24, 2020, culminating in an Order dated April 27, 2020, ordering the defendant's continued detention pending trial.  Defendant Akhavan surrendered to the U.S. Marshals in the Central District of California on March 27, 2020, and was presented and released on a series of bail conditions the same day.

On May 12, 2020, the Court arraigned both defendants on the Indictment, and scheduled, among other things, the trial in this matter beginning on December 1, 2020.

### III.  Discovery Materials and Other Disclosures

The Government has made substantial disclosures to the defendants, both in discovery productions and during proceedings held before the Court.  As part of its Rule 16 discovery productions, the Government has provided, among other things: (a) email and chat message communications between the defendants and others in connection with the charged scheme; (b) call and text detail records for a phone used by Akhavan; (c) subscriber and other non-content records for online accounts used by Akhavan and Weigand; (d) search warrant materials related to searches conducted on devices belonging to the defendants seized by the Government; (e) search warrant returns on email accounts and electronic devices belonging to the defendants; (f) materials related to post-arrest statements made by each of the defendants; (g) records from the Online Marijuana Marketplace Company related to the charged scheme; (h) records from a marijuana dispensary connected to the charged scheme; (i) communications and records from an employee of Akhavan related to the scheme; (j) bank records from banks that issued credit cards used by customers to make purchases from the Online Marijuana Marketplace Company; (k) financial records from Visa and MasterCard associated with purchases made from the Online Marijuana Marketplace Company under Phony Merchant names; (l) screenshots of fake websites associated with various Phony Merchants; (m) recordings of meetings and telephone calls between the defendants and a cooperating witness ("CW-1"); (n) a full forensic analysis of a cell phone used by CW-1 to communicate  with the defendants and others about the charged scheme; and (o) documents and records provided by CW-1 related to the operation of the charged scheme, including photographs of the defendants attending one or more meetings related to the scheme.

Of particular note, the Government has produced search warrant affidavits which further detail the charged bank fraud conspiracy, including information provided by a cooperating witness

involved in the charged bank fraud scheme.  The search warrant affidavits describe, among other things, specific communications involving Akhavan and Weigand relating to the execution of the scheme, and their conduct in connection with the scheme.  Moreover, in briefing related to Weigand's bail applications, the Government described Weigand's role in detail, stating that "Weigand's primary role in the Transaction Laundering Scheme was to manage an international network of bank accounts used by the Phony Merchants to process payments on behalf of the Online Marijuana Marketplace Company . . . In this role, Weigand was responsible for, among things, finding European banks to process the Online Marijuana Marketplace Company's marijuana transactions, and reviewing and then submitting fraudulent application packages for the Phony Merchants to his contacts at these overseas banks."  (Gov't Ltr. of Apr. 23, 2020, Dkt. No. 27, at 3).  The Government's briefing further noted that "[o]ne of Weigand's responsibilities was to submit fraudulent applications on behalf of the Phony Merchants to these offshore banks in order to open merchant bank accounts for the Phony Merchants."  (*Id.*).[1]

## DISCUSSION

### I. Applicable Law

Under Federal Rule of Criminal Procedure 7(f), the "court may direct the government to file a bill of particulars."  It is well established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same

---

[1]  At Weigand's bail hearing on April 24, 2020, the Government further stated: "[T]he goal . . . was to find way to process marijuana transactions for this company, and the solution that the defendant was intimately involved with was using phony merchant bank accounts in offshore banks around the world.  He was responsible for that network.  That was his role in the conspiracy." (Apr. 24, 2020 Hr'g Tr. at 20-21).

offense.  *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *Id.* (internal quotation marks omitted).

In exercising its broad discretion to determine whether the charges are "so general" that they require supplementing, the Court should consider not just the text of the Indictment, but also discovery and other information supplied to the defendant to date.  If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," no bill of particulars is required.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam); *United States v. Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003); *see, e.g.*, *United States v. Kazarian,* No. 10 Cr. 895 (PGG), 2012 WL 1810214, at *25 (S.D.N.Y. May 18, 2012) (noting the "enormous amount of discovery material" which "provide [the defendant] with much of the information sought in the request for a bill of particulars"); *United States v. Monserrate*, No. 10 Cr. 965 (CM), 2011 WL 3480957, at *4 (S.D.N.Y. Aug. 4, 2011) (denying request for bill of particulars where discovery materials and indictment were "sufficient to apprise the defendant of the charge against him" and to allow him to prepare for trial); *United States v. Samsonov*, No. 07 Cr. 1198(CM), 2009 WL 176721, at *4 (S.D.N.Y. Jan. 23, 2009) (denying bill of particulars request where indictment, discovery letters, and discovery materials gave defendant adequate information to prepare for trial); *United States v. Bonventre*, 10 Cr. 228 (LTS), 2013 WL 2303726, at *7 (S.D.N.Y. 2013) ("The Government's opposition brief sufficiently alerts [defendant] as to its theories concerning the crimes with which he is charged.").

The defense cannot use a bill of particulars as a general investigative tool, *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995), or as a device to compel disclosure of the Government's evidence prior to trial.  *See United States v. Triana-Mateus*, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974)).  "The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." *Triana-Mateus*, 2002 WL 562649, at *5; *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 485 (S.D.N.Y. 2013) ("It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." (internal citation and alteration omitted)).  Nor should a bill of particulars be employed in an attempt to "lock the government into its proof."  *United States v. Rigas*, 258 F. Supp. 2d 299, 304 (S.D.N.Y. 2003); *see also United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014) ("The government's presentation of evidence at trial is limited to the particulars contained in the bill, so care must be taken not to overly restrict the government's proof while still protecting the defendant from unfair surprise"); *Samsonov*, 2009 WL 176721, at *3 (bill of particulars "must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches").

Thus, the ultimate test is whether the information sought is *necessary*, not whether it is helpful.  *See United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985) ("It is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case.").  Accordingly, under

the relevant legal standard, the Government is not required to: (a) "particularize all of its evidence," *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); (b) disclose the precise manner in which the crimes charged in the indictment were committed, *see Torres*, 901 F.2d at 233-34; or (c) provide the defendant with a preview of the Government's case or legal theory, *see United States v. Muyet*, 945 F. Supp. 586, 598-99 (S.D.N.Y. 1996).

There are good reasons why bills of particulars are warranted only where the allegations in an indictment, as supplemented by discovery and elsewhere, are so general as to render it impossible to prepare a defense.  Because a bill of particulars "confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987); *see also Mahabub*, 2014 WL 4243657, at *2. Moreover, the Government's provision of particulars tantamount to an itemized preview of its proof creates the very real danger that a defendant will "tailor [his] testimony to explain away the Government's case." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (citing *United States v. Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962)); *United States v. Sindone*, 01 Cr. 517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present. Accordingly, the government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented."). These concerns animate the rule that "if the defendant has been given adequate notice of the charges against [him] and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case." *Henry*, 861 F. Supp. at 1197.

Applying these principles, courts in this district routinely deny motions for bills of particulars that are, at bottom, demands for additional details of the manner in which the offense was committed or how the Government intends to prove its case at trial. *See, e.g., United States v. Carroll*, No. 19 CR 545 (CM), 2020 WL 1862446, at *25 (S.D.N.Y. Apr. 14, 2020); *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *3 (S.D.N.Y. Aug. 17, 2018); *United States v. Salas*, No. 07 CR.557 (JGK), 2008 WL 4840872, at *13 (S.D.N.Y. Nov. 5, 2008); *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (denying request for bill of particulars identifying "each act of 'fraud, neglect, connivance, misconduct, and violation of law' upon which the Government will base its case," and noting that "the Government may not be compelled to disclose manner in which it will prove charges, manner in which defendant committed the crime charged, or a preview of Government's evidence or legal theories"); *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977) (rejecting request for bill of particulars regarding the names, dates and places for the entire case as "an attempt to discover the minutia of the Government's case").

## II.   A Bill of Particulars Is Not Warranted In This Case, as the Defendants Improperly Seek Evidentiary Detail, and the Government Has Otherwise Made Sufficient Disclosures of the Information Sought

The defendants do not need a bill of particulars to defend this case.  Indeed, much of what the defendants seek amounts to a request for a presentation of the Government's proof, and much of it is already contained in the Government's disclosures, which the defendants have ample time to review.  In short, the defendants' requests do not represent an appropriate use of Rule 7(f), and should therefore be denied.

### A.   Identification of Uncharged Co-Conspirators

Both defendants seek the identities of all alleged unindicted co-conspirators, including principals of the Online Marijuana Marketplace Company, as well as third party payment processors.  (*See* Akhavan Req. 1; Weigand Req. 7, 9, 10).

As an initial matter, the law in this Circuit generally does not require the Government to identify alleged co-conspirators as part of its Rule 16 discovery.  *See Torres*, 901 F.2d at 233-34 (upholding district court's denial of a bill of particulars where the defendant had requested, in part, "the identity of those other persons 'known and unknown' as alleged in . . . the indictment"); *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016) ("courts in this circuit frequently exercise their discretion to deny requests to identify co-conspirators through a bill of particulars") (citing *United States v. Mahaffy*, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006)); *United States v. Cook*,  No. 13 Cr. 777 (AJN), 2014 U.S. Dist. LEXIS 182268, at *15 (S.D.N.Y. Mar. 10, 2014) (denying motion for bill of particulars identifying other co-conspirators where "the co-conspirators are alleged to have worked directly with one another"); *Trippe*, 171 F. Supp. 2d at 240 ("[D]emands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied.").  That is particularly true where, as here, "the Government has provided discovery that will enable a defendant to adequately prepare his defense."  *Murgio*, 209 F. Supp. 3d at 721-22; *see also Bortnovsky*, 820 F.2d at 574 ("Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required.").

Here, the materials provided to the defendants as part of the Government's discovery productions—including, but not limited to email and message communications including Akhavan and/or Weigand, as well as communications involving other individuals involved in effectuating

the scheme on their behalf—are more than sufficient to allow the defendants to identify the other co-conspirators and entities in the charged bank fraud conspiracy and to prepare a defense.  These communications include, for example, communications involving officers and employees of the Online Marijuana Marketplace Company; communications involving individuals responsible for various aspects of creating and maintaining the Phony Merchants used to deceive Issuing Banks; communications involving associates of defendant Akhavan's company; and Phony Merchant account application documents and associated communications.

Importantly, as this Court observed in *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018) (Rakoff, J.)—a case relied upon by both defendants—in deciding whether to direct the Government to identify unindicted co-conspirators, "the Court must balance the risk of surprise to the defendant, which is enhanced if 'there are a large number of co-conspirators and a long-running conspiracy' with legitimate law enforcement concerns, such as the 'potential danger to co-conspirators and the risk of compromising continuing investigations.'" *Id.* at 303 (quoting *United States v. Bin Laden*, 92 F.Supp.2d 225, 241 (S.D.N.Y. 2000)).  While this scheme involves the participation of more than the two charged defendants, the risk of surprise to them is substantially mitigated in light of the communications described above and produced in discovery. Moreover, unlike in *Pinto-Thomaz*, where the Government did not oppose the defendant's request for particulars on this point and did not proffer that its investigation was continuing, here the Government's investigation of this scheme and related targets is active and ongoing.  Requiring the Government to identify uncharged co-conspirators would jeopardize the Government's

11

investigation of them yet would not meaningfully benefit the defendants, given the nature and scope of the discovery provided to them in this case.[2]

In short, in light of the disclosures made in this case to date, requiring the Government to specifically identify unindicted co-conspirators is not necessary for the defendants to understand the charges or prepare for trial, and would prejudice the Government's continuing investigation.

### B.   Identification of Specific Misrepresentations

As described above, the bank fraud conspiracy charged in the Indictment involves a scheme by the defendants and others to make and cause to be made misrepresentations to numerous Issuing Banks in the United States regarding the nature of credit and debit transactions facilitated by the defendants.   The defendants both request a bill of particulars identifying the particular misrepresentations made by the defendants in connection with the scheme, including the dates of those misrepresentations.  (*See* Akhavan Req. 7; Weigand Req. 2, 5).

As an initial matter, in the context of a bank fraud conspiracy charge, the Government has no obligation to prove any particular transaction or misrepresentation.  Rather, the Government intends to prove an overall fraud scheme—in which both defendants knowingly participated—that involved concealing the true nature of credit and debit transactions to Issuing Banks that otherwise would not have approved those transactions.  The Indictment explains how each and every one of

---

[2]  Other cases cited by the defendants are similarly distinguishable.  *See, e.g., United States v. Savin*, No. 00 Cr. 45, 2001 WL 243533, at * 5 (S.D.N.Y. Mar. 7, 2001) (granting request for bill of particulars as to names of unindicted co-conspirators; civil actions in relation to charged events proceeding simultaneously without incident, conspiracy spanned up to six years, government did not allege harm to investigation); *Bin Laden*, 92 F. Supp. 2d at 241 (ordering Government to identify co-conspirators, as conspiracy was allegedly still ongoing and had operated for ten years, and many of the co-conspirators used several aliases to conceal their identities; however, Government need not identify co-conspirators if it showed that such identification would expose the co-conspirator to harm or otherwise compromise an investigation).

the transactions that was facilitated through the Online Marijuana Marketplace Company—through the creation of Phony Merchants—represented a misrepresentation made or caused to be made by the Issuing Banks.  In discovery, the Government has produced returns from credit card companies relating to marijuana transactions conducted through and concealed by the Phony Merchants.  Each of these transactions—which as described above, reflects a misrepresentation made or caused to be made to the Issuing Banks—includes, among other things, the date of the transaction, and reveals the identity of the relevant Phony Merchant.  The Indictment's specific allegations, further detailed through discovery, need not be supplemented by a bill of particulars.

As numerous courts have found, where specific examples are offered, as here, the Government need not produce a bill of particulars containing an inventory of every act it plans to prove that constituted part of the fraud.  *See, e.g.*, *Bonventre*, 2013 WL 2303726, at *5-*7 (in case involving largest Ponzi scheme in U.S. history, which spanned decades, denying request for bill of particulars identifying, among other things, all "allegedly false records upon which the Government intends to rely to prove its case," "the specific entries [in specific books and records] that the Government alleges [the defendants] knew were false," "the specific arbitrage trades in which [a defendant] was involved that the Government alleges are fraudulent," the "dates and stock names for all alleged backdated transactions," and "all unnamed clients and allegedly fake trades referred to in" a particular count); *United States v. Levy*, 11 Cr. 62 (PAC), 2013 WL 664712, at *4, 13 (S.D.N.Y. Feb. 25, 2013) (in case charging stock manipulation through false representations by corrupt brokers, request for bill of particulars recounting "each specific misrepresentation and omission alleged" denied as "simply a request to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars") (citation and

13

quotation marks omitted).  In this case, the entire nature of the scheme alleged is such that the defendants facilitated the processing of over one million miscoded transactions, all of which misrepresented the true nature of the goods purchased and the merchants involved.  It is neither practical nor necessary for the Government to provide particulars as to each of these transactions.

### C.  Identification of Victim Banks

Both defendants seek particulars regarding the identities of U.S. banks and financial institutions deceived as a result of the charged bank fraud conspiracy.  (*See* Akhavan Req. 4; Weigand Req. 1).  Detail regarding victim entities is not properly within the scope of a bill of particulars, particularly where, as here, the discovery materials already contain that information. *See, e.g., United States v. Russo*, 483 F. Supp. 2d 301, 311 (S.D.N.Y. 2007) (identification of particular "investors" referenced in the indictment was beyond the scope of a bill of particulars); *United States v. Fea*, No. 10 CR. 708 (PKC), 2011 WL 2119708, at *2 (S.D.N.Y. May 24, 2011) (denying bill of particulars request seeking identities of victims in loansharking case, where discovery materials already contained victim information); *United States v. Gall*, No. 95 Cr. 98 (AHN), 1996 WL 684404, at *7 (D. Conn. Aug. 12, 1996) (denying bill of particulars request demanding identities of insurance fraud victims and "the manner in which the financial statements [the defendant] submitted to insurance companies and state agencies were false").  Notably, the identities of many such Issuing Banks may be readily discerned from discovery materials already produced to the defendants, including Visa and MasterCard records.  Those records reflect Issuing Banks associated with individuals who made purchases from the Online Marijuana Marketplace Company disguised as Phony Merchant transactions.  Moreover, the defendants have received ample notice from the Indictment and other disclosures that all Issuing Banks through which such

14

transactions were processed are victims of the scheme.[3]  Nonetheless, the Government will also

provide a non-exhaustive list of U.S.-based issuing banks to the defendants, including Issuing

Banks located within the Southern District of New York.[4]

### D.  Other Evidentiary Detail

Finally, Akhavan and Weigand seek an order compelling the Government to set forth a

multitude of details concerning their participation and the participation of others in the charged

scheme.  The requested evidentiary detail includes: (1) the identities of all marijuana dispensaries,

offshore acquiring banks, and Phony Merchants associated with the scheme (Akhavan Req. 2, 3,

---

[3] Contrary to Akhavan's suggestion, the decision in *United States v. Orena*, 32 F.3d 704, 714-15 (2d Cir. 1994), does not require the Government to provide particulars concerning victim identities.  In *Orena*, the court rejected the defendant's argument that the indictment was fatally defective for failing to identify intended murder victims.  In so doing, the court determined that the Government's identification of victims in the context of responding to a bill of particulars was sufficient to provide Orena with adequate notice of the charge against him.  *Id.* at 714-715.  In this case, as discussed above, the Government has furnished discovery identifying all victims known to it, and further plans to provide the defendants with a non-exhaustive list of U.S.-based issuing banks.  This is sufficient to provide the defendants with sufficient notice of the charges and enable them to prepare a defense.

[4]  Notably, Weigand's argument concerning the failure of the Indictment to allege that the charged scheme deprived any bank of funds is entirely meritless.  All that must be alleged to satisfy Section 1344(1) or Section 1344(2) is that the defendants engaged in a fraudulent "scheme . . . to obtain money *from* a bank."  *United States v. Nejad*, No. 18-CR-224 (AJN), 2019 WL 6702361, at *14 (S.D.N.Y. Dec. 6, 2019) (emphasis added) (citing *Shaw v. United States*, 137 S. Ct. 462, 466 (2016) ("[F]or purposes of [Section 1344(1) of] the bank fraud statute, a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution.'"); *Loughrin v. United States*, 573 U.S. 351, 355 (2014) (Section 1344(2) "requires that the defendant intend 'to obtain any of the moneys . . . or other property owned by, or under the custody or control of, a financial institution.'")).  Weigand's suggestion that the Supreme Court's recent decision in *Kelly v. United States*, __S. Ct.__, No. 18-1059, 2020 WL 2200833 (May 7, 2020) would in any way affect the outcome of this case is likewise misplaced.  Unlike in *Kelly*, and as described in detail in the Indictment, the scheme to defraud charged here involved an effort to obtain *money* under the custody or control of banks, and not merely "an exercise of regulatory power."  *Id.* at *2.

15

8; Weigand Req. 6);[5] (2) the compensation earned by Weigand in connection with his participation

in the scheme (Weigand Req. 3); (3) the dates Weigand participated in the scheme (Weigand Req.

4); (4) Weigand's use of fraudulent methods, creation of Phony Merchants and websites,

participation in miscoding, opening of merchant bank accounts, and use of strategies to trick

United States banks (Weigand Req. 5, 6); and (5) the dates that various co-conspirators joined the

scheme and the roles that they played (Weigand Req. 9).[6]  These requests seek evidentiary detail

amounting to disclosure of how the Government will attempt to prove the charge at trial and the

exact manner in which the criminal conduct occurred, which is plainly not appropriate.  Moreover,

the discovery materials provided by the Government already contain much of the requested

information.

A bill of particulars "'is not a general investigative tool, a discovery device or a means to

compel the government to disclose evidence or witnesses to be offered at trial.'"  *United States v.*

*Rivera*, No. 16 CR. 175 (LGS), 2017 WL 1843302, at *3 (S.D.N.Y. May 8, 2017) (quoting *United*

*States v. Abakporo*, 959 F. Supp. 2d 382, 389 (S.D.N.Y. 2013)); *United States v. Salazar*, 485 F.2d

---

[5]  Citing to paragraph seven of the Indictment, Akhavan also seeks "[t]he identities of the United States banks and other financial institutions that 'offer[ed] payment processing services directly to merchants,'" and "[t]he identities of the United States banks and other financial institutions that used Independent Sales Organizations or other third parties to process payments."  (Akhavan Req. 5, 6).  Paragraph seven provides background on how credit and debit card transactions are typically processed, and does not purport to describe how such transactions were processed in the course of the charged bank fraud scheme.

[6]  Akhavan additionally requests information regarding "[w]hether the illegal cannabis transactions allegedly involved the distribution of medical marijuana."  (Akhavan Req. 9).  The Government notes that whether the transactions at issue related to medical marijuana is of no moment, given that the charged scheme involves misrepresentations made to banks about the sale of *any kind* of marijuana, medical or not.  Nonetheless, the Government will provide the defendants with information regarding the approximate percentage of transactions involving medical marijuana during different periods in the course of the scheme.

16

1272, 1277-78 (2d Cir. 1973) (not a general investigative tool); *Triana-Mateus*, 2002 WL 562649, at *5 (not a device to compel disclosure of the Government's evidence prior to trial) (citing *Gottlieb*, 493 F.2d at 994). "The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." *Triana-Mateus*, 2002 WL 562649, at *5.

Therefore, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *Trippe*, 171 F. Supp. 2d at 240 (collecting cases); *see, e.g., United States v. Barrera*, 950 F. Supp. 2d 461, 478 (E.D.N.Y. 2013) ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006) (same, denying motion for a bill of particulars as to the dates on which the defendant and his co-conspirators joined the charged conspiracy); *Rivera*, 2017 WL 1843302, at *3 (citing *Torres*, 901 F.2d at 233-34 (affirming denial of bill of particulars about when defendant was "alleged to have joined" the conspiracy, the identities of co-conspirators and the "precise dates and locations" of overt acts)); *United States v. Nachamie*, 91 F. Supp. 2d 565, 575 (S.D.N.Y. 2000) (defendant not entitled to particulars regarding his participation in submission of false Medicare claims, including manner in which he caused such claims to be submitted); *United States v. Mittal*, No. 98 Cr. 1302, 1999 WL 461293, at *9 (S.D.N.Y. July 7, 1999) ("[C]ourts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate.") (citing cases); *United States v. Johnson-Guzman*, No. 98 CR. 350 (RWS), 1998 WL 730327, at *7 (S.D.N.Y. Oct. 16, 1998) ("With respect to conspiracy charges in particular, since the Government

17

is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined the scheme, and as the circumstantial proof on which the government usually relies to prove the existence of a scheme often does not reveal such details, the courts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate."); *United States v. Perez*, 940 F. Supp. 540, 552 (S.D.N.Y. 1996) (government not required to specify particular acts in which defendants alleged to have "participated in, had knowledge of, or are being held responsible for") (citations omitted).

The evidentiary detail sought by the defendants is well outside the scope of a proper request for a bill of particulars.  Rather, in the face of clear case law to the contrary—holding that "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories," *Mitlof*, 165 F. Supp. 2d at 569—the defendants are attempting to commandeer Rule 7(f) as a part of a fishing expedition. Moreover, the defendants already have in their possession much of the information they seek.  The Indictment and Rule 16 discovery materials contain, among other things, a list of marijuana dispensaries served by the Online Marijuana Marketplace Company that are connected to the charged scheme, identities of the Phony Merchants known to the Government, website addresses associated with the Phony Merchants known to the Government (including several screenshots of those websites), and acquiring banks/payment processors associated with the Phony Merchants

known to the Government.[7]   Accordingly, the defendants' request for the evidentiary detail described above should be swiftly denied.

### III.   Contrary to the Defendants' Arguments, the Discovery Produced in This Case Renders Defendants' Requests for Particulars Unnecessary, and Does Not Impermissibly Shift the Burden of Proof

As discussed above in connection with the defendants' specific requests, the Government's disclosures in this case—through Rule 16 and otherwise—combined with the 16-page speaking Indictment, provide sufficient information and detail to permit the defendants to understand the charge against them and defend against it.

The defendants nonetheless complain that the discovery is voluminous, and therefore that particulars should be required.  In fact, the opposite is true.  As an initial matter, comprehensive discovery has often been cited by courts in denying motions for a bill of particulars because the discovery provides defendants with more than sufficient information to prepare for trial.  *See Kazarian,* 2012 WL 1810214, at *25; *Monserrate*, 2011 WL 3480957, at *4; *Samsonov*, 2009 WL 176721, at *4; *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (the "mere existence of a 'mountain of documents' does not entitle" a defendant to a bill of particulars).

While the Government has produced a significant amount of material to the defendants, it is not an unusual quantity of discovery in a fraud case such as this one and, as noted above, the defendants have ample time to review it.  Indeed, while defendant Akhavan points out that the Government produced a one-terabyte drive of discovery, he omits the fact that that the material therein consists of his own emails.  Similarly, the two-terabyte drive recently produced to Weigand

---

[7]  Upon request, the Government will point the defendants to the relevant Rule 16 discovery materials containing this information.

19

contains the contents of his own electronic devices.  Courts in this Circuit have routinely denied motions for a bill of particulars based on the mere fact that discovery is voluminous, especially in situations where the defendants have had (or will have) many months to review it.  *See, e.g.*, *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *21 (S.D.N.Y. Jan. 18, 2017) ("[T]he discovery volume alone simply does not necessitate a bill of particulars."); *Levy*, 2013 WL 664712, at *13 (denying request for bill of particulars based on amount of discovery and noting that "[w]hile the Court may sympathize with counsel's task of reviewing a large quantity of materials that continue to be produced by the Government, the applicable Indictment was filed almost eight months ago, and counsel has had the opportunity to review discovery materials as the Government has produced them").  This case is no different.

Perhaps most significantly, unlike the cases cited by the defendants, this is not a case where the Government intends to prove that only certain discrete transactions were fraudulent but fails to identify such transactions, creating a needle-in-a-haystack problem for the defendants.  Rather, in this case the Government contends that *every* transaction processed through the Phony Merchants—which are named in the Indictment itself and contained in the discovery—constituted a fraudulent event.  Accordingly, the authorities relied upon by the defendants compelling the Government to identify particular transactions or false representations contained in voluminous discovery are inapposite.  For example, both defendants rely on *Bortnovsky*, 820 F.2d at 575, a RICO insurance fraud case in which the Government did not identify before trial which of the fifteen burglaries and four thousand documents were alleged to have been fabricated.  At trial the Government ultimately alleged that only four burglaries and only three of four thousand documents were false.  The Second Circuit found that under these circumstances the burden had impermissibly

20

shifted to the defendants, who were "forced to explain the events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending." *Id.* at 574-75. There is no such risk in this case.

Equally unhelpful to the defendants is *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. 2001), which is also relied upon by both of them.  In *Savin*, the indictment alleged that an investment advisor had misappropriated client funds over a six-year period through "an unspecified series of 'intercompany transfers' without identifying the amounts, dates, means, corporate entities, or co-conspirators involved." *Id.* at *3.  Because the Government had produced voluminous documents evidencing fund transfers without specifying which transfers were alleged to be improper, the court granted in part a bill of particulars request. *Id.* at *2.  Other authorities cited by the defendants are of the same ilk, and thus not on point here. *See, e.g.*, *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (cited by Akhavan) (bill of particulars should have been ordered to identify the companies defendant was alleged to have extorted as part of a RICO scheme, when he was indicted for extortionate schemes directed at one company but confronted at trial with evidence of extortions aimed at entirely different companies).

Simply put, the defendants have before them extensive information about the alleged bank fraud and how it will be proven, including transaction records reflecting miscoded transactions and Phony Merchants, pertinent communications, a list of participating marijuana dispensaries, and Phony Merchant bank applications.  This is well within the quantum of information that courts routinely find is sufficient for defendants to prepare for trial, and the defendants have a substantial amount of time to review it.  In these circumstances, a burdensome bill of particulars effectively seeking disclosure of the Government's trial evidence is neither necessary nor appropriate.

**CONCLUSION**

For the foregoing reasons, the Court should deny the defendants' respective requests for particulars.

Dated: New York, New York
       May 18, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:      _____/s/_____

Christopher J. DiMase/Nicholas Folly/
Tara La Morte
Assistant United States Attorneys
Tel.: (212) 637-2433 / 1060 / 1041

22