```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA            :
                                    :    S3 20-cr-188(JSR)
        -v-                         :
                                    :    MEMORANDUM ORDER
HAMID AKHAVAN & RUBEN WEIGAND       :
                                    :
        Defendants.                 :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

On March 31, 2020, a grand jury returned an S3 superseding indictment against Hamid Akhavan and Ruben Weigand, charging them with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. ECF No. 16. The indictment alleges that, from 2016 through 2019, Akhavan, Weigand, and other, unnamed co-conspirators engaged in a conspiracy, the "Transaction Laundering Scheme," to deceive banks into processing over $100 million of credit and debit card payments to marijuana retailers by disguising the transactions so as to create the false appearance that they were unrelated to the purchase of marijuana. Id. ¶¶ 1, 16.

Akhavan and Weigand are alleged to have been principals of the Online Marijuana Marketplace Company, from whom customers could order marijuana for on-demand delivery, using one of a variety of payment methods including credit or debit card. Id. ¶¶ 1, 3, 4. Many United States banks, however, are unwilling to process electronic payments involving the purchase of marijuana.

1

Id. ¶ 1. To solve this problem, the indictment charges, Akhavan, Weigand, and others worked with third-party payment processors and offshore acquiring banks to create a series of "Phony Merchants," complete with seemingly-legitimate websites advertising non-marijuana-related goods and services, and to open bank accounts in these Merchants' names. Id. ¶¶ 12-13. The members of the conspiracy then applied fraudulent "Merchant Category Codes" to the credit and debit card purchases from the Online Marijuana Marketplace Company in order to create the appearance that these transactions were not for the purchase of marijuana. Id. ¶ 14.

    Both defendants now move for a bill of particulars. Def. Akhavan's Mot. for a Bill of Particulars and Mem. of Law in Supp., ECF No. 34 (May 11, 2020); Def. Ruben Weigand's Mem. of Law in Supp. of His Mot. for a Bill of Particulars, ECF No. 36 (May 14, 2020). They argue that the indictment omits information they need to prepare their defenses, including the names of the other co-conspirators, the identities of the victim banks, and the specific acts that the defendants are alleged to have performed in furtherance of the scheme, among other information. The Government opposes, arguing that the indictment provides the necessary information, and that, in any case, the Government has already produced extensive discovery, see United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). Govt.'s Mem. of

Law in Oppo. to Defs.' Mot. for a Bill of Particulars, ECF No. 37 (May 18, 2020). For the following reasons, after considering all of the parties' arguments, the motions are granted only with respect to the requests for the identities of the co-conspirators, and are otherwise denied.

Fed. R. Crim. P. 7(f) authorizes the Court to direct the Government to file a bill of particulars. Courts in this district read this rule to grant district courts a great deal of discretion in deciding whether a bill of particulars is appropriate. See United States v. Russo, 483 F. Supp. 2d 301, 310 (S.D.N.Y. 2007). But the case law provides some broad guiding principles. "The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense." United States v. Pinto-Thomaz, 352 F. Supp. 3d 287, 301-02 (S.D.N.Y. 2018) (quoting United States v. Mandell, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010)). On the other hand, the Court must balance these interests against the harm to the Government from restricting its proof at trial. Id. at 302 (quoting United States v. Rajaratnam, No. 09-cr-1184 (RJH), 2010 WL 2788168, at *1 (S.D.N.Y. Jul. 13, 2010)).

As to the names of the other co-conspirators (Akhavan's Request 1; Weigand's Requests 7, 9, and 10), the combination of all of the relevant factors weighs in favor of the defendants. In considering whether to grant a request for identification of unnamed co-conspirators, "the Court must balance the risk of surprise to the defendant, which is enhanced if 'there are a large number of co-conspirators and a long-running conspiracy' with legitimate law enforcement concerns, such as the 'potential danger to co-conspirators and the risk of compromising continuing investigations.'" Pinto-Thomaz, 352 F. Supp. 3d at 303 (quoting United States v. Bin Laden, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000)).

This is precisely the type of "conspiracy count cover[ing] a complex series of events over a number of years" where a bill of particulars identifying the co-conspirators is appropriate. United States v. Barnes, 158 F.3d 662, 666 (2d Cir. 1998). The Court notes, first, that the charged conspiracy lasted from 2016 through 2019. S3 Indictment ¶ 1. More significantly, the indictment suggests that the co-conspirators represented several distinct organizations, including the Online Marijuana Marketplace Company, the third-party payment processors, and potentially others. See id. ¶¶ 2, 12-14. The combination of these considerations creates the possibility that different co-conspirators may have been involved at different times. The risk

of surprise to the defendants, Pinto-Thomaz, 352 F. Supp. 3d at 303, is therefore very high.

The Government responds that it has already produced sufficient discovery, including communications between and among the co-conspirators, and that a bill of particulars would jeopardize its ongoing investigation into this scheme. Oppo. at 10-11. But as the defendants argue, see, e.g. Weigand's Mot. at 2, the volume of discovery produced to the defendants is so large that, combined with the complexity of the alleged scheme, it may nonetheless be practically impossible for the defendants to ascertain whom the Government considers a co-conspirator and whom it does not. Moreover, if the Government has already produced communications with other co-conspirators, then it should not be jeopardizing any investigation by expressly listing their names.

As to the identities of the victim banks (Akhavan's Request 4; Weigand's Request 1), however, the motion for a bill of particulars is denied, as they are merely evidentiary detail at best.[1] Not only does the indictment allege a scheme for which the existence of an actual victim is not required, but also the

---

[1] Akhavan argues that the names of the victim banks are necessary for determining whether to contest venue. Akhavan's Mot. at 8. But the Government has obviated this concern by agreeing to provide a non-exhaustive list of victim banks located in the Southern District of New York. Oppo. at 15.

indictment is already quite clear that the goal of the charged conspiracy was not to defraud any bank in particular. Rather, the design of the Transaction Laundering Scheme was to enable the customers of the Online Marijuana Marketplace Company to purchase marijuana through credit and debit card transactions, regardless of the particular banks involved.

Next, the defendants' requests for particulars about the specific actions they are alleged to have performed in furtherance of the scheme — the names of the offshore merchant banks Akhavan and Weigand allegedly worked with (Akhavan's Request 3; Weigand's Request 8), the specific misrepresentations made (Akhavan's Request 7; Weigand's Requests 2 and 5), the dates of such actions (Weigand's Request 4), and the full list of "Phony Merchants" (Akhavan's Request 8; Weigand's Request 6) — are also denied. These requests are simply an attempt to pin the Government to particular evidentiary details. See United States v. Zemlyansky, 945 F. Supp. 2d 438, 485 (S.D.N.Y. 2013). The indictment's description of the Transaction Laundering Scheme, ¶¶ 12-14, is sufficiently clear for the defendants to understand the crime with which the Government accuses them. Among other details, the indictment provides a non-exhaustive list of eight of the Phony Merchants that the defendants allegedly created as part of the scheme, id. ¶ 13, thus placing the defendants on notice and allowing them to prepare a defense.

Finally, the defendants' other requests are also denied as irrelevant. Akhavan's second and ninth requests seek more information about the underlying transactions between the Online Marijuana Marketplace Company and its customers, which are unrelated to the charged crime. Akhavan's fifth and sixth requests reference the portion of the indictment that provides generic background on how electronic payments are processed, making these requests seem of similarly dubious relevance to the preparation of his defense.

Weigand's third request is for a list of payments that he received for his role in the scheme. But compensation is not an element of the crime and is, at best, only tangentially probative of whether he participated knowingly. His eleventh and final request cites the Supreme Court's recent decision in the "Bridgegate" case, Kelly v. United States, 140 S. Ct. 1565, 2020 WL 2200833 (2020), to seek particulars on the money or property the alleged conspiracy sought to obtain from the victim banks. But this case does not raise the issue present in Kelly. There, the Supreme Court held that the federal fraud statutes only prohibit deceptive schemes to deprive a victim of money or property, and that the improper use of regulatory power in that case did not constitute such a deprivation. See id. at *4-7. Here, in contrast, the goal of the alleged fraud was clearly to obtain money from the victim banks, i.e., to induce them to make

payments that they would not otherwise have made to the Phony Merchant bank accounts controlled by the defendants. S3 Indictment at ¶ 14.

The Government is accordingly directed to provide the names of the co-conspirators (Akhavan's Request 1; Weigand's Requests 7, 9, and 10) in a formal bill of particulars, to be filed by no later than June 19, 2020, but with leave to supplement or amend the list up to six weeks prior to trial for good cause shown.

SO ORDERED.

Dated: New York, NY
       May 20, 2020

_____
United States District Judge