**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| vs. | ) | |
| | ) | Case No.: 20-cr-188 (JSR) |
| HAMID AKHAVAN and RUBEN WEIGAND, | ) | |
| Defendants. | ) | |

**DEFENDANT RUBEN WEIGAND'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO COMPEL DISCOVERY</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND .................................................................................................. 4

        A.      The Indictment ...................................................................................... 4

        B.      Procedural History ................................................................................ 5

III.    DISCUSSION ...................................................................................................... 7

        A.      Federal Rule of Criminal Procedure 16(a)(1)(E): Documents and Objects........... 7

        B.      *Brady* Material .................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963)............................................................................................1

*Strickler v. Greene*,
   527 U.S. 263 (1999)..........................................................................................9

*United States v. Giffen*,
   379 F. Supp. 2d 337 (S.D.N.Y. 2004)..............................................................8

*United States v. Rivas*,
   377 F.3d 195 (2d Cir. 2004)..............................................................................9

*United States v. Stevens*,
   985 F.2d 1175 (2d Cir. 1993)............................................................................7

*Youngblood v. West Virginia*,
   547 U.S. 867 (2006)..........................................................................................9

**Other Authorities**

Individual Rules of Practice of the Honorable Jed S. Rakoff
   (Effective Feb. 3, 2020) .................................................................................3, 9

## I.       INTRODUCTION

Defendant Ruben Weigand ("Weigand" or the "Defendant") brings this motion seeking an order compelling the Government to produce certain discovery material to the preparation of his defense, as required by Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and this Court's Individual Rules of Practice.

Weigand requested these categories of discovery by letter dated June 22, 2020 ("Discovery Demand," attached as Exhibit A), but the Government, in its response dated June 24, 2020 (attached as Exhibit B), failed to respond specifically to eight of the nine categories of information requested, to clarify if the requested material is in its possession, custody, or control, or to commit to the prompt production of such discovery.  Ex. B at 1.

The one-count superseding Indictment in this case (the "Indictment") alleges a conspiracy to commit bank fraud by misrepresenting credit and debit card transactions for marijuana as transactions for the sale of other "legitimate goods."  Indictment at ¶ 13.  The Indictment alleges that the defendants conspired to use inaccurate Merchant Category Codes (MCCs) and descriptors to "disguise" marijuana transactions and thereby induce "some" banks in the United States to process transactions in a manner that violated bank and credit card company policies that allegedly "d[id] not support marijuana transactions."  *Id.* at ¶¶ 2, 9.

The deadline for the Government to produce discovery was May 12, 2020.  The Government has provided counsel for Weigand with over 2 terabytes of material.  However, these voluminous materials fail to elucidate essential elements of the alleged scheme.

Significantly, the discovery does not identify which U.S. banks and credit card companies had policies prohibiting marijuana transactions or what those policies were.  A letter from the Government dated June 22, 2020 (attached as Exhibit C) contained a "non-exhaustive," 25-page

list consisting of hundreds of "U.S.-based issuing banks associated with individuals who made purchases from the Online Marijuana Marketplace Company," but failed to identify if those banks actually processed the marijuana transactions at issue in the Indictment, and if they had policies governing the use of MCCs or prohibiting the processing of marijuana transactions. Ex. C at 1. This information is plainly material to the preparation of Weigand's defense.

The Government should be compelled to produce the information requested, identify the Bates ranges for any pertinent discovery already produced, or state if no such discovery is in the Government's possession, custody, or control with regard to the following categories of material:

- **Credit Card Company Materials**: All Credit Card Company contracts, policies, rules, regulations and other evidence relevant to the charge and allegations in the Indictment, including, but not limited to all documents and communications:

   (i) concerning the merchant acquiring banks, issuing banks, payment processors, and other financial institutions referenced in the Indictment;

   (ii) relevant to the merchant category codes ("MCCs") referenced in the Indictment, their use, and any contractual remedies or penalties for the improper use of MCCs;

   (iii) related to whether MCCs in the Credit Card Company networks were recognized, contractually or otherwise, as a basis for approving and rejecting credit and debit card transactions for the sale of marijuana in the United States; and

   (iv) concerning the onboarding of merchants by merchant acquiring banks. Discovery Demand (Ex. A) at 4.

- **Bank Policies and Procedures**:  All policies, procedures, and guidelines used by ███████ ███████████████ Particulars ██████████████████ that concern the processing of marijuana sales, whether for medical or recreational use, and the use of Merchant Category Codes (MCCs). *Id.*

- **Taint Team Protocols**:  Any protocols used by taint teams to review the contents of any electronic devices associated with Weigand, including the seized devices for which the Government obtained a warrant on April 14, 2020. *Id.*  As described in Weigand's "Motion to Suppress Evidence Obtained from the Search of Electronic Devices," the terms of the warrant and the Government's application raise the concern that the Government reviewed vast amounts of data on Weigand's personal devices without any effort to identify and separate privileged communications.

In addition, the Government's June 22 letter informed us for the first time of various exculpatory statements made by co-defendant Ray Akhavan. The Government's letter states that "attorneys representing the Online Marijuana Marketplace Company" described interviews they conducted of employees of the Online Marijuana Marketplace Company. Those employees recalled that Akhavan stated in a meeting in March 2018 that he "does *not* miscode" transactions (emphasis added); used "the closest" applicable MCC code for the transactions processed; that "the Online Marijuana Marketplace Company's marijuana dispensary customers would submit truthful applications to his ISO [independent sales organization] in Germany" for payment processing purposes; and that Visa and MasterCard "were aware as a general matter that marijuana credit and debit transactions were being miscoded," but chose not to "take action" against the practice, except in certain limited circumstances. Ex. C at 1. The Government's June 22 letter did not state whether Weigand was present at this meeting, nor did it clarify whether Akhavan made similar statements at other times.

Weigand is a German citizen who, prior to his arrest in this case, lived in Luxembourg. He is not alleged to have any contact with financial or other institutions in the United States. Accordingly, statements by his co-defendant about the practices of credit card companies, financial institutions and other entities in the United States may constitute critical evidence about Weigand's understanding of such matters.

This Court's Individual Rules of Practice require that "*Brady* Material known to the Government at the time of indictment . . . must be produced to defense counsel no later than <u>two weeks following the date of the filing of the indictment</u>" and that "*Brady* Material . . . that becomes known to the Government following filing of the indictment must be disclosed, absent exceptional circumstances, within <u>two weeks of when it becomes known</u> and, in any event, no later than four

weeks prior to any trial or guilty plea." Rule 13(2) the Individual Rules of Practice of the Honorable Jed S. Rakoff (emphasis added).

We request that all material related to the attorney proffer described in the Government's June 22 letter or any similar statements be produced immediately.

## II.   BACKGROUND

### A.  The Indictment

On March 31, 2020, the Government filed the Indictment against Weigand and his co-defendant Hamid Akhavan alleging a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. The Indictment alleges that from in or about 2016 until 2019, the defendants and their co-conspirators "engaged in a scheme to deceive United States banks and other financial institutions into processing in excess of one hundred million dollars in credit and debit card payments for the purchase and delivery of marijuana products." Indictment at ¶ 1.

The alleged bank fraud conspiracy involved a California-based purveyor of marijuana, referred to in the Indictment as the "Online Marijuana Marketplace Company," which offered on-demand marijuana delivery services to customers through a mobile application. *Id*. at ¶ 3. The Indictment alleges that "at various points" from 2016 through 2019, one of the payment methods offered by the Online Marijuana Marketplace Company was debit and credit cards. *Id*. at ¶ 4. However, according to the Indictment, during that time period, "most banks in the United States were unwilling to process credit and debit card transactions involving marijuana" and would not "extend credit (i.e., approve) transactions" for "the sale of marijuana." *Id*. at ¶¶ 10(d), 12.

The Indictment alleges that the defendants and their co-conspirators "used several strategies to trick United States issuing banks into authorizing marijuana transactions for the Online Marijuana Marketplace Company." *Id*. at ¶ 13. Principally, the Indictment alleges that the

defendants created more than a dozen companies (the alleged "Phony Merchants") "involved in selling legitimate goods, such as carbonated drinks, face cream, dog products, and diving gear." *Id.* They allegedly used those companies to open "offshore bank accounts with [offshore] merchant acquiring banks and to initiate credit card charges for marijuana purchases made through the Online Marijuana Marketplace Company." *Id.* at ¶ 12. The Indictment also alleges that defendants "used merchant codes for other products" and "directed others to apply" those incorrect merchant codes "in order to get around the[ ] rules" of "Credit Card Companies," such as Visa and MasterCard, that "do not support marijuana transactions" and "do not have marijuana merchant codes." *Id.* at ¶¶ 9, 14.

By taking these measures, the defendants were allegedly able to "disguise payments made to the Online Marijuana Marketplace Company for the purchase of marijuana products," to "deceive United States banks about the true nature of the financial transactions they were processing," and thereby "facilitate the approval and processing of marijuana transactions" by issuing banks in the United States, the alleged victims of the scheme. *Id.* at ¶¶ 2, 9, 13.

### B. Procedural History

On June 22, 2020, the undersigned counsel sent a Discovery Demand to the Government requesting the production of the documents and information described above, among other requests—or, as applicable, confirmation of their prior production and corresponding Bates numbers. Ex. A.

Later that day, the Government provided defense counsel a letter that included "a non-exhaustive," 25-page list consisting of hundreds of "U.S.-based issuing banks associated with individuals who made purchases from the Online Marijuana Marketplace Company," without indicating if those banks actually processed the credit and debit card transactions referenced in the

Indictment, or had a policy proscribing the processing of marijuana transactions between 2016 and 2019, when the charged scheme was allegedly implemented. Ex. C.

Further, the Government's June 22 letter identified a percentage breakdown of the marijuana sales referenced in the Indictment that were for medical and recreational purposes, before and after January 1, 2018. However, the letter failed to provide a basis for that breakdown or any substantiating transaction-level information. *Id.* As set forth in detail in Akhavan's "Motion to Compel Discovery and Set Disclosure Deadlines," such information is necessary to determine if the Government has run afoul of the Rohrbacher-Farr Amendment, which precludes the Department of Justice from using appropriated funds to interfere with state laws authorizing the use of medical marijuana. *Consolidated Appropriations Act of 2020*, Pub. L. No. 116-93, § 531, 133 Stat. 2317 (2019)

Finally, the Government's June 22 letter included a critical but incomplete account of exculpatory information from attorneys representing the Online Marijuana Marketplace Company. The letter stated that, at a meeting in Calabasas, California held in or about March 2018, Defendant Akhavan stated, in part, that "he does not miscode; (b) he would use the closest MCC code for what is being processed, and discussed using a medical-related MCC code and a miscellaneous general merchandise MCC code in connection with processing the Online Marijuana Marketplace Company's credit and debit transactions; (c) he had found a European-based bank that was willing to process the Online Marijuana Marketplace Company's credit and debit transactions; (d) the Online Marijuana Marketplace Company's marijuana dispensary customers would submit truthful applications to his ISO in Germany; and (e) Visa and MasterCard were aware as a general matter that marijuana credit and debit transactions were being miscoded, but would not take action absent

specific information that identified merchants were involved in miscoding or that identified transactions were miscoded." Ex. C at 1–2.

On June 24, the Government responded briefly to Weigand's Discovery Demand, but failed to address specifically all but one of Weigand's requests, refusing to return Weigand's seized electronic devices.  Instead, the Government broadly categorized Weigand's eight requests for material discovery as *Brady, Giglio*, or Jencks Act to which Weigand is purportedly not entitled at this time.  Ex. B at 1.

Because the Government's recent correspondence failed to address almost all of the requests in Weigand's Discovery Demand, Weigand files the instant motion to preserve all of his rights, obtain the above-described material from the Government, or, as applicable, obtain the Government's assurance that all responsive materials have been provided, as required by Rule 16 of the Federal Rules of Criminal Procedure and this Court's Individual Rules of Practice.

## III.    DISCUSSION

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), Weigand requests certain "documents and objects" material to preparing his defense, enumerated below.  He also requests the timely production of all *Brady* material currently known to the Government, pursuant to this Court's Individual Rules of Practice.

### A.  Federal Rule of Criminal Procedure 16(a)(1)(E): Documents and Objects.

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the Government must produce any documents if: (i) they are material to preparing the defense, (ii) the Government intends to use them in its case-in-chief, or (iii) they were obtained from or belong to the Defendant.

Evidence "is material if it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).  Further, "[e]vidence is

material if its pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor." *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004).

Because the following categories of information are material to the preparation of Weigand's defense, they should be timely produced on a schedule that permits Weigand to prepare for trial:

***Bank Policies and Procedures:*** The Government's theory of fraud turns on the allegedly improper use of Merchant Category Codes ("MCCs"). Indictment ¶ 9. Yet, the discovery does not appear to include any information[1] about the rules and policies of merchant acquiring banks, issuing banks, and payment processors concerning the appropriate use of MCCs for marijuana transactions.

The Government should be ordered to produce all pertinent bank policies and procedures concerning the use of MCCs for marijuana sales. Such information should be delineated by entity, so that Weigand may determine which entities' policies he allegedly violated and which entities he allegedly conspired to deceive.

***Credit Card Company Materials:*** The discovery received to date is also missing highly pertinent information on the internal rules, policies, and procedures of the Credit Card Companies referenced in the Indictment. Such information is necessary to determine if the alleged Transaction Laundering Scheme ran afoul of Credit Card Company rules and policies, or rather complied with them and with accepted industry practice.

***Taint Protocols:*** As set forth in Weigand's "Motion to Suppress Evidence Obtained from the Search of Electronic Devices," the Government obtained a warrant on April 14, 2020 for the

---

[1] To the extent these materials are contained in the voluminous discovery produced to date, the Government should identify them by Bates number.

search and seizure of three of Weigand's personal electronic devices.  The warrant and the Government's application in support contain no reference to procedures used by the Government to identify and separate attorney-client communications.  Given the vast volume of material seized, the Government must have anticipated that potentially privileged materials would be found on Weigand's personal devices.  Accordingly, the Government should be ordered to provide an explanation of the protocols it implemented to ensure the prosecution team would not be exposed to privileged materials.

### B. *Brady* Material

*Brady* requires that the Government disclose evidence that is "material" and "favorable" to a defendant.  *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004).  Favorable evidence is either exculpatory or impeaching.  *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999).  Evidence becomes material if "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict". *Youngblood v. West Virginia,* 547 U.S. 867, 870 (2006) (quotation marks omitted).

This Court's Individual Rules require that "*Brady* Material known to the Government at the time of indictment . . . be produced to defense counsel no later than two weeks following the date of the filing of the indictment" and that "*Brady* Material . . . that becomes known to the Government following filing of the indictment must be disclosed, absent exceptional circumstances, within two weeks of when it becomes known" and, in no event, "later than four weeks prior to any trial or guilty plea."  Rule 13(2) the Individual Rules of Practice of the Honorable Jed S. Rakoff

The Government's June 22 letter identified exculpatory representations from attorneys of the Online Marijuana Marketplace Company, including statements by co-defendant Akhavan.  The

9

disclosure begs the question of whether the Government has evidence that Akhavan made similar statements in other communications and whether Weigand was present when such statements were made. The Government should be ordered to produce all documents reflecting these or any similar statements.

Weigand hereby requests the prompt production of all information concerning the attorney proffer described in its June 22 letter, along with all outstanding *Brady* material known to the Government at this time, as required by this Court's Individual Rules of Practice.

**CONCLUSION**

For the foregoing reasons, Weigand respectfully requests that this Court compel the production of the discovery requested above. Weigand hereby adopts by reference all applicable arguments in his co-defendant Hamid Akhavan's "Motion to Compel Discovery and Set Disclosure Deadlines."

Dated:  New York, New York
         June 26, 2020

Respectfully Submitted,

DECHERT LLP

By: */s/ Andrew J. Levander*

Andrew J. Levander
Michael J. Gilbert
Shriram Harid
Steven R. Pellechi
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
Andrew.levander@dechert.com
Michael.gilbert@dechert.com
Shriram.harid@dechert.com

Michael H. Artan
Michael H. Artan, Lawyer, A Professional Corporation
1 Wilshire Boulevard, Suite 2200
Los Angeles, CA 90071

10

Michaelartan@yahoo.com

*Attorneys for Defendant*
*Ruben Weigand*