
# Dechert
LLP

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**ANDREW J. LEVANDER**

andrew.levander@dechert.com
+1 212 698 3683  Direct
+1 212 698 0483  Fax

August 18, 2020

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

ORDER ENDORSED

Re:   *United States v. Weigand & Akhavan*, 20 cr. 188

Dear Judge Rakoff:

We represent Ruben Weigand, a defendant in the above-captioned case, who is detained pending trial in the Santa Ana City Jail in the Central District of California. Your Honor has directed that the Order staying Mr. Weigand's removal to the Southern District of New York remain in effect until August 31, 2020. ECF No. 84. However, the Court indicated that it "is unlikely to grant further such extensions beyond August 31, 2020." *Id.* For the reasons set forth below, we respectfully request a further 30-day extension of the Order staying Mr. Weigand's removal to New York. The Government takes no position on this application.

Mr. Weigand's health has recently taken an alarming turn for the worse. On August 6, Mr. Weigand experienced severe stomach pain, which persisted for several days, after which his hands, neck, and other parts of his body developed a yellow hue. He is also experiencing dizziness, itchiness throughout his body, severe exhaustion, and discoloration of his urine. Mr. Weigand had his blood drawn on August 11 and was seen by a doctor, who suspects Mr. Weigand has liver disease. He is awaiting results from blood tests. Publicly available information from the Centers for Disease Control and Prevention indicates that individuals with liver disease are at a higher risk of contracting the coronavirus.[1]

As the Court will recall, Mr. Weigand was also diagnosed in 2018 with the respiratory condition known as "obstructive sleep apnea syndrome," a "significant hypoventilation syndrome with corresponding oxygen depletion." ECF No. 26-2, Ex. A. Mr. Weigand's diagnosed "[s]leep apnea and resistance in [his] upper airway often cause a weakened immune system and Mr. Weigand [has]

---

[1] Centers for Disease Control and Prevention, "What to Know About Liver Disease and COVID-19," May 5, 2020, at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html.



The Honorable Jed R. Rakoff
August 18, 2020
Page 2

presented corresponding severe symptoms." ECF No. 26-2, Ex. B. His doctor has stated that he is at risk of "becom[ing] severely, possibly fatally, ill [if] infected with the coronavirus." *Id.*

The process the Bureau of Prisons ("BOP") uses to transfer inmates poses extraordinary risks to Mr. Weigand, given his health issues. In addition, upon arriving in New York he would be required to quarantine for 14 days, which entails solitary confinement in the Special Housing Unit (the "SHU"). Finally, both the Metropolitan Correctional Center ("MCC") and the Metropolitan Detention Center ("MDC") are still not permitting in-person attorney visits and the conditions in those facilities remain dangerous for inmates with underlying health conditions.

**I.   The Risks of Transfer**

On August 5, the BOP released its "Coronavirus (COVID-19) Phase Nine Action Plan" (BOP Action Plan), its most recent guidance on "the management of the pandemic" at its institutions.[2] The BOP Action Plan addresses the protocol for moving inmates between facilities and acknowledges that transfers can be "a complex, multi-day, multi-institution process" and that "[t]he risk of COVID-19 exposure and transmission increases as the complexity of the move increases."[3]

The Action Plan also contemplates the use of holdover sites or bus hubs to facilitate the transfer of inmates between distant facilities. However, the BOP acknowledges that it is often "not possible or verifiable" to determine if all transferred inmates "have been tested for COVID-19 prior to transport," especially if inmates from BOP facilities are commingled with those from non-BOP facilities, such as the Santa Ana City Jail, which may be "unavoidable."[4] Indeed, recent reports have exposed a dangerous lack of testing by the BOP and the U.S. Marshals Service before inmates are transferred from one facility to another. *See* Keegan Hamilton and Keri Blakinger, "'Con Air' Is Spreading COVID-19 All Over the Federal Prison System," THE MARSHALL PROJECT (Aug. 13, 2020) ("[F]ederal prisoners in Marshals custody are being shipped around the U.S. by plane, van, and bus with no way to know if they are carrying the virus, and exposing other prisoners, staff, and possibly the public along the way."), at https://bit.ly/3g7RtGx.

The conditions, sanitariness, and COVID-readiness of holdover sites have been documented to be "notoriously poor." Liliana Segura, "The Coronavirus Brought Federal Transfers to a Halt. Now People Are Stuck in Limbo," THE INTERCEPT (July 9, 2020),

---

[2] Federal Bureau of Prisons, "Coronavirus (COVID-19) Phase Nine Action Plan," at https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf.

[3] *Id.*

[4] *Id.*



The Honorable Jed R. Rakoff
August 18, 2020
Page 3

https://theintercept.com/2020/07/19/coronavirus-prison-transfers-bop/. The transfer process has been described as "destabilizing and opaque," with "no telling how long a transfer w[ill] take, or how many stops a person in custody w[ill] make along the way. The virus has managed to make it even worse." *Id.* Further, transferred inmates may also be exposed to high-risk holdover sites along the way, including facilities identified by the Attorney General as facing "serious problems," including FCI Danbury, FCI Elkton, and FCI Oakdale. *Id.*[5]

The risks to Mr. Weigand are acute because of his suspected liver disease, his documented respiratory conditions, and his compromised immune system, which place him at risk of "becom[ing] severely, possibly fatally, ill [if] infected with the coronavirus." ECF No. 26-2, Ex. B.

## II. Post-Transfer Quarantine

Under BOP protocol, "[t]ransferred inmates will undergo the same process as a new intake," which includes "new intake quarantine at the final designated facility."[6] The wardens at the MCC and MDC have both stated that new arrivals, including transferred inmates, are "placed in quarantine for fourteen days as a precautionary measure."[7] At the MCC and the MDC, this protocol applies even to "[n]ew arrivals with a temperature of less than 100.4 degrees" and "[t]hose who are asymptomatic."[8]

In practice, this quarantine protocol has meant isolating inmates in the SHU. As Judge Ramos stated in an opinion issued last month, "[t]he SHU is normally used to house inmates being disciplined or who are being protected for some reason, and many [have] inmates expressed trepidation about being sent there for medical isolation, referring to it as 'the box.'" *Fernandez-Rodriguez v. Lincoln-Vitale*, No. 20 Civ. 3315, 2020 WL 36118941, at *6 (S.D.N.Y. July 2, 2020). "SHU cells contain a single concrete slab that functions as a bed, a concrete stool, and a

---

[5] *See also* Memorandum for Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19," April 3, 2020, at
https://www.justice.gov/file/1266661/download.

[6] Federal Bureau of Prisons, "Coronavirus (COVID-19) Phase Nine Action Plan," at
https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf.

[7] "08/11/2020 Report from the Bureau of Prisons regarding the Metropolitan Detention Center and Metropolitan Correctional Center," at
https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200811_025512.pdf.

[8] *Id.*



The Honorable Jed R. Rakoff
August 18, 2020
Page 4

combination sink and toilet" and the MCC warden has acknowledged that "the conditions for the inmates in the SHU are not as favorable as conditions in an ordinary cell." *Id.*[9]

### III. Conditions at the MCC and the MDC

After transfer and quarantine, Mr. Weigand would be confined in the MCC or MDC pending trial. Both institutions have suspended in-person attorney visiting at this time.[10] The Santa Ana City Jail, where Mr. Weigand is currently detained, is not a BOP facility and he has access to counsel, although not without constraints on his ability to communicate freely and easily with counsel.

And, more generally, the conditions at the MCC and MDC for someone with medical conditions are dangerous and pose far more risk to Mr. Weigand than does the Santa Ana facility.

Inmates at the MCC initiated a class action in this Court alleging that the MCC warden and her staff were deliberately indifferent to "conditions that pose[d] an excessive risk to their health and safety" in violation of their rights under the Fifth and Eighth Amendments of the U.S. Constitution. Judge Ramos addressed their claims in a detailed opinion that documented the spread of the virus at the MCC and the failure on the part of "management of the MCC . . . to implement common-sense measures to stop the spread of the virus." *Fernandez-Rodriguez v. Lincoln-Vitale*, 2020 WL 36118941, at *1. Judge Ramos recognized that, following an outbreak at the facility "[i]n March and April, at least five percent of the MCC's inmates fell ill with COVID-19." *Id.* The Court found that "the MCC's response to the pandemic was ad-hoc and overlooked many gaps in its scheme to identify and isolate infected inmates . . . ." *Id.* at *2.

Indeed, management at the MCC admitted to a litany of failures of oversight, management, and safety. *Id.* at *20. These "material failings in the MCC's system for identifying infected inmates and ensuring their prompt isolation . . . especially . . . medically vulnerable inmates" prompted the Court to find last month that "the MCC's inmates faced a substantial risk to their health . . . ." *Id.* at *21. Further, the Court found "[t]he conditions facing the MCC [to be] worse" than those facing

---

[9] *See also* Chris Villani, "Ex-PIMCO CEO Rips Solitary Quarantine in Admissions Case," LAW360 (Aug. 6, 2020) (describing solitary confinement in "a 77-square-foot prison cell for nearly 24 hours per day due to the COVID-19 pandemic"), at https://www.law360.com/articles/1299156/ex-pimco-ceo-rips-solitary-quarantine-in-admissions-case.

[10] "BOP Implementing Modified Operations," at
https://www.bop.gov/coronavirus/covid19_status.jsp#:~:text=MODIFIED%20OPERATIONS%3A%20BO P%20is%20implementing,gathering%20and%20maximize%20social%20distancing.



comparable correctional facilities, including facilities identified by the Attorney General as those "most affected by COVID-19," including FCI Danbury, FCI Elkton, and FCI Oakdale. *Id.*[11]

These dangerous conditions and failures of management have not abated at the MCC. As Judge Ramos acknowledged, "[e]ven [in early July], after the peak of the outbreak at the MCC, a handful of inmates continue[d] to test positive for the disease." *Id.* at *1. Indeed, according to the MCC's own numbers, an additional 20 MCC inmates tested positive for COVID-19 between July 7, 2020 and August 11, 2020.[12] Because of the limited testing at the facility, those official figures in all likelihood understate the severity of the problem at the MCC.[13]

The MDC has not fared much better. Indeed, conditions at that institution also sparked litigation by inmates against the MDC warden on the ground that "MDC officials' response to the pandemic has been so deficient as to violate the Eighth Amendment." *Chunn v. Edge*, No. 20 civ. 1590, 2020 WL 3055669, at *1 (E.D.N.Y. June 9, 2020). Both courts in this District and the Eastern District of New York have recognized the risks posed by conditions at the MDC and granted applications for compassionate release on that basis. *See, e.g., United States v. Kissi*, No. 13 cr. 51, 2020 WL 3723055, at *1 (E.D.N.Y. June 26, 2020) (granting motion for compassionate release based in part on "the medical risks presented by the conditions at the Metropolitan Detention Center"); *see also United States v. Lopez*, 16 cr. 317, 2020 WL 3100462, at *2 (S.D.N.Y. June 10, 2020) (recognizing that "the crowded nature of federal detention centers such as the MDC presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.").

As of August 11, 2020, according to official BOP figures, 14 inmates and 44 staff members had tested positive at the MDC, compared to 29 inmates and 47 staff at the MCC.[14]

---

[11] *See also* Memorandum for Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19," April 3, 2020, at https://www.justice.gov/file/1266661/download.

[12] *See* "07/07/2020 Report from the Bureau of Prisons regarding the Metropolitan Detention Center and Metropolitan Correctional Center," at https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200709_033921.pdf; "08/11/2020 Report from the Bureau of Prisons regarding the Metropolitan Detention Center and Metropolitan Correctional Center," at https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200811_025512.pdf.

[13] Josh Gerstein, "U.S. prisons' virus-related release policies prompt confusion," POLITICO (April 12, 2020), at https://www.politico.com/news/2020/04/10/us-prisons-virus-related-release-policies-prompt-confusion-178691.

[14] *See* "08/11/2020 Report from the Bureau of Prisons regarding the Metropolitan Detention Center and Metropolitan Correctional Center," at https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200811_025512.pdf.


Dechert
LLP

The Honorable Jed R. Rakoff
August 18, 2020
Page 6

Accordingly, the unsafe conditions at the MCC and the MDC, Mr. Weigand's specific health concerns, and the likely limits on his access to counsel at those facilities favor extending his detention in California and postponing his transfer to New York.

**IV.    Conclusion**

For the reasons above, we respectfully request that the Court extend the stay of Mr. Weigand's removal to New York by an additional 30 days. We also respectfully reserve our right to make another bail application based in part on the concerns identified herein. In the event the Court declines to postpone Mr. Weigand's transfer to New York, we respectfully request that the Court recommend to the BOP that he be transferred by plane, not by bus.

Respectfully submitted,

*/s/ Andrew J. Levander*

Andrew J. Levander

CC (via ECF):   AUSA Christopher J. DiMase
                AUSA Nicholas S. Folly
                AUSA Tara LaMorte

SO ORDERED

*[signature]*
USDJ
8-19-20