

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 28, 2020

**BY ECF / EMAIL**

Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
New York, New York 10007

    Re:    *United States v. Ruben Weigand*, S3 20 Cr. 188 (JSR)

Dear Judge Rakoff:

    The Government submits this letter in response to the defendant's second motion for reconsideration of bail, dated September 24, 2020, which seeks reconsideration of the Court's March 17, 2020 Order detaining Ruben Weigand pending trial on December 1, 2020, in this case. (*See* Dkt. No. 98-1, the "Second Reconsideration Mot."). Weigand's Second Reconsideration Motion relies heavily on arguments that he has already raised and which were rejected by this Court. As the Court has previously found, Weigand, who is a German citizen and cannot be extradited from Germany to the United States, "has an obvious motive to flee, has the wherewithal to flee, has a particularly strong reason to flee in light of the no extradition situation" and therefore "no set of conditions could reasonably assure that he is not a substantial flight risk." (March 17, 2020 Bail Hearing Transcript ("Tr.") at 27-28). Given the defendant's failure to raise any new arguments that warrant reconsideration of the Court's prior findings, the Court should deny the defendant's Second Reconsideration Motion and order that the defendant remain detained pending trial in this case.

**A.**    **The Charges**

    On or about March 9, 2020, a grand jury empaneled in the Southern District of New York returned a superseding indictment, S3 20 Cr. 188 (JSR) (the "Indictment"), charging Ruben Weigand and Hamid Akhavan, a/k/a "Ray Akhavan" ("Akhavan"), with conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349, from in or around 2016, through at least in or around 2019. (Dkt No. 16). The Government assumes the Court's familiarity with the charged scheme based on prior filings in this case and has therefore not restated the allegations herein.

Honorable Jed S. Rakoff
September 28, 2020

**B.     The Defendant**

Weigand is a German citizen and resides in Luxemburg.   Weigand has no family in the United States, no property or assets in the United States, and no permanent legal status in the United States.   The defendant travels to the United States infrequently—when the defendant was arrested at Los Angeles International Airport on March 9, 2020, the defendant was only in the United States on a layover in transit from Zurich, Switzerland, to San Jose, Costa Rica.   The defendant appears to have significant personal wealth, owning a home in Luxemburg that is purportedly worth in excess of $ 3 million.   (Reconsideration Mot. at 3).

According to the defendant, he has resided in Luxemburg with his girlfriend of ten years. Before that, Weigand resided in Molsberg, Germany, where he was born and raised.   Weigand's parents and his siblings all reside in Germany.   He has no close family in the United States.

**C.     Procedural History**

As noted above, Weigand was arrested on March 9, 2020, at Los Angeles International Airport.   Weigand was presented in the Central District of California ("CDCA") the following day, on or about March 10, 2020.   A bail hearing was held in front of Magistrate Judge Patrick J. Walsh in CDCA on or about March 13, 2020, who ordered the defendant released on a set of bail conditions.   Judge Walsh also ordered that Weigand remain detained until his conditions were satisfied.

March 17 Bail Argument

The Government appealed Judge Walsh's bail decision to Your Honor, and a telephonic bail review hearing was held on or about March 17, 2020 (the "March 17 Bail Argument").   At the conclusion of the March 17 Bail Argument, the Court overruled the magistrate judge and ordered that Weigand remain detained.   In so ruling, the Court explained:

> [T]his defendant has an obvious motive to flee, has the wherewithal to flee, has a particularly strong reason to flee in light of the no extradition situation, and that coupled with all the other comments I've made convinces me that no set of conditions could reasonably assure that he is not a substantial flight risk.   So I overrule the magistrate judge and Mr. Weigand will be detained.

Tr. 27-28.

First Reconsideration Motion

On April 22, 2020, the defendant filed a motion for reconsideration of the Court's March 17 detention order (the "First Reconsideration Motion").   (Dkt. No. 26-1).   In his First Reconsideration Motion, Weigand sought bail based primarily on his claim that the COVID-19 pandemic and his medical condition (specifically, obstructive sleep apnea) constituted exceptional circumstances warranting release.   The defendant also argued that his proposed bail package, consisting of a $4 million personal recognizance bond, secured by Weigand's home in Luxembourg, which was purportedly worth in excess of $3 million, $1,000,000 in cash provided

2

Honorable Jed S. Rakoff
September 28, 2020

by Weigand's friends, three co-signers, strict pre-trial supervision with electronic/GPS monitoring, and a condition of house arrest, would assure the defendant's appearance at trial. (First Reconsideration Motion at 3, 9).

### April 27 Detention Order

After hearing oral argument on April 24, 2020, the Court denied the defendant's First Reconsideration Motion, in an order dated April 27, 2020 ("April 27 Order"). In its order, the Court found that as to strength of the evidence, "the Court continues to conclude that the Government has a substantial case that the defendant knowingly participated in the charged conspiracy." (April 27 Order at 2-3). On the issue of risk of flight, the Court found that:

> As to the risk of flight, the Court continues to deem Weigand a substantial flight risk. The strength of the Government's case against the defendant gives him an obvious incentive to flee. Further, he has very few ties to the United States, if any. He is a citizen of Germany — under whose laws Weigand does not qualify for extradition — and a resident of Luxembourg, where he owns a home and where his partner resides. Further still, he has substantial personal wealth, giving him the means and wherewithal to flee the jurisdiction in spite of the usual obstacles such as having his passport confiscated or being electronically monitored.

(April 27 Order at 4). The Court was "also unconvinced that Weigand's proposed bail package would assure his appearance." (*Id.*). In addition, although the Court recognized "the plight that the [coronavirus] outbreak poses for all incarcerated persons, including Weigand, who has presented evidence that he suffers from sleep apnea," the Court found that those considerations were insufficient to warrant release. (*Id.* at 5). Finally, although the Court was "sympathetic to the difficulties that defense counsel (in this and other cases) are experiencing in arranging visits with incarcerated clients," the Court concluded that was not a basis for release under 18 U.S.C. § 3142(i).

As a result of repeated applications by the defendant to the Court requesting that he remain at the Santa Ana Jail in California, the defendant has not been transferred to a detention facility in New York. Instead, Weigand has remained incarcerated at the Santa Ana Jail since his arrest. (*See* Dkt. Nos. 41, 57, 81, 87).

### Second Reconsideration Motion

On September 24, 2020, the defendant filed the Second Reconsideration Motion, again seeking reconsideration of the Court's April 27 Order. In his Second Reconsideration Motion, the defendant raises arguments that are substantially similar to those raised in his First Reconsideration Motion. Specifically, the defendant claims that he should be released on bail pending trial based on the following: (1) if he is not released, it will impair his access to counsel; (2) he is no longer a flight risk; (3) his health issues warrant release on bail; and (4) his proposed bail package would alleviate any concerns about risk of flight. As set forth below, Weigand's arguments are largely repetitive of those he raised before, which were already rejected by this Court.

3

Honorable Jed S. Rakoff
September 28, 2020

### D. Weigand's Recent Medical History

Weigand's Santa Ana Jail medical records, attached to the Second Reconsideration Motion as Exhibit C ("Ex. C"), show that in or about August 2020, he was admitted to the hospital complaining of right upper quadrant pain and jaundice. *See* Ex. C at 8. Following an ERCP (short for "endoscopic retrograde cholangiopancreatography"), a procedure used to diagnose gallbladder, biliary system, pancreas, and liver problems, Weigand was diagnosed with obstructive jaundice, caused by cholelithiasis—the presence of gallstones in the gallbladder—and choledocholithiasis—the presence of gallstones in the common bile duct. *See id.* at 8, 81. Following a sphincterotomy gallstone removal and the placement of a biliary stent—a tube specially designed to hold the bile duct open, when the duct has been blocked or partially blocked—Weigand reported feeling better and denied abdominal pain. *See id.* at 89. Thereafter, treating physicians advised him to have his gallbladder and any gallstones therein removed to prevent future complications. *See id.* at 22. Weigand agreed, and on August 22, 2020, Weigand underwent a laparoscopic cholecystectomy, a laparoscopic surgical procedure to remove the gallbladder. *See id.* at 8, 81.

As a result of the procedure, Weigand's obstructive jaundice began to resolve. *See id.* at 81. As of August 24, 2020, a treating gastroenterologist confirmed that Weigand was "stable from a GI standpoint for discharge." *See id.* at 81. Moreover, Weigand's liver function tests, including his total bilirubin, AST, ALT, and alkaline phosphate levels, uniformly improved. *Id.* at 119 ("liver tests trending down"). Indeed, as of the last available blood tests, taken on September 13, 2020, Weigand's AST, ALT, and alkaline phosphate levels had all returned to the normal range, and his total bilirubin level had decreased from a high point of 14.4 mg/dL on August 16, 2020 (the date of his admission to the hospital), down to 1.7 mg/dL as of the last available blood tests on September 13, 2020, only slightly elevated above the normal upper limit of 1.2 mg/dL. *See id.* at 15, 140.

### E. Applicable Law

Title 18, United States Code, Section 3142(e) provides that if a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the officer shall order the defendant detained pending trial. 18 U.S.C. § 3142(e). In seeking detention, the Government bears the burden of establishing risk of flight by a preponderance of the evidence or dangerousness by clear and convincing evidence. *Id.* § 3142(f). The Government is not bound by the rules of evidence in discharging its burden, *see id.*, and may proceed by proffer, *see, e.g.*, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). In considering the defendant's application for bail, the Court must consider (1) the nature and circumstances of the offenses charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).[1]

---

[1] A bail hearing may only be reopened "if the judicial officer finds that information exists that was *not known to the movant* at the time of the hearing and that has a *material* bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such

4

### F. Discussion

As described above and during the March 17 Bail Argument, Weigand is a wealthy German citizen, with no current (or even recent) ties to the United States, no property or other assets in the United States, the means to flee, the incentive to flee, and close ties to foreign individuals, including his family. Weigand presents a severe risk of flight. As both Pretrial Services recommended and Your Honor already found (twice), Weigand should be detained. Nothing in his Second Reconsideration Motion warrants overruling the Court's prior detention order.

*First*, Weigand's arguments regarding his access to counsel in order to prepare for trial were already raised by Weigand and rejected by this Court. (*See* First Reconsideration Motion at 11-12; April 27 Order at 5-6).[2] There is no changed circumstance that warrants revisiting those arguments now. Remarkably, after repeatedly asking this Court to stay his transfer to this district, Weigand now argues that it is too late for the BOP to transfer him here because he would be unable to consult with counsel while being transferred, and he would also be subject to quarantine upon his arrival. The Court should reject this argument. If Weigand is transferred promptly to this district, it will still allow him sufficient time to meet with his counsel and prepare for trial as many incarcerated defendants routinely do in this district.

*Second*, Weigand's assertion that he is no longer a flight risk makes no sense. In his motion, Weigand asserts that he "has likely already served a significant portion of the sentence he would face if he was convicted at trial, diminishing his incentive to flee." (Second Reconsideration Motion at 3). This self-serving assertion was already raised by Weigand and rejected by this Court. Specifically, in the Court's April 27 Order, the Court stated:

> Despite the interesting discussion at oral argument as to what the Sentencing Guidelines range might be if Weigand were convicted, Mr. Weigand (who was present telephonically at the oral argument) surely understands that, given the size and sophistication of the alleged fraud, he faces the possibility of a substantial sentence if convicted.

(April 27 Order at footnote 1). If anything, given that Weigand has now lost his pre-trial motions in this case, and has had the experience of spending several months in prison, he would have a greater incentive to flee than he did several months ago.

*Third*, the defendant's proposed bail package is substantially similar to his prior proposal and will not reasonably assure his appearance. As this Court already found, "there is '*no* condition or combination of conditions [that] will reasonably assure [Weigand's] appearance.' 18 U.S.C. § 3142(e)(1)." (April 27 Order at 5) (emphasis added). Furthermore, the defendant's proposed bail package is less robust than the bail package already rejected by this Court. Although both proposed bail packages include a $3 million personal recognizance bond,

---

person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added).

[2] Although Weigand notes that there was a recent incident that resulted in the seizure of Weigand's notes, including work product connected to this case, he offers no explanation for why this incident would warrant the drastic remedy he now seeks, i.e., his release on bail pending trial.

Honorable Jed S. Rakoff
September 28, 2020

Weigand's friends were previously willing to post $1 million in cash to secure the bond, but now are only willing to post $470,000 in cash to secure the bond. The remaining conditions remain largely the same, with the lone exception that Weigand now offers seven co-signers instead of three.[3] The Court already considered the adequacy of these conditions and rejected them. (*Id.* at 4-5). Weigand offers no basis to revisit that decision now.

*Fourth*, Weigand's recent medical issues do not warrant his release on bail. As detailed above, Weigand's medical records appear to show that Weigand's health has improved greatly following the August 22 laparoscopic surgical procedure to remove his gallbladder. Among other things, the procedure appears to have been successful, and to have resolved the jaundice, abdominal pain, and elevated liver function tests that brought Weigand to the hospital in the first place.[4]

Perhaps more critically, the obstructive jaundice caused by gallstones, and the resulting removal of Weigand's gallbladder, do not represent risk factors for COVID-19 under prevailing CDC guidance.[5] While CDC guidance notes that people with liver disease, among other conditions, "might be at an increased risk for severe illness from COVID-19," Weigand's medical records make clear that his elevated liver function tests stemmed from a gallbladder problem, and not liver disease, and that in any event, his gallbladder problem has been resolved through laparoscopic surgery.[6]

Furthermore, Weigand's alleged sleep apnea condition, which he relies on in his Second Reconsideration Motion, was already considered by the Court as part of the First Reconsideration Motion, but was insufficient to justify release. (April 27 Order at 5).[7] Notably, like the removal

---

[3] It is unclear whether these co-signers reside in the United States and therefore whether the Government could successfully collect on the bond if Weigand were released on bail and were to flee.

[4] Although Weigand's medical records indicate that he was to have a repeat ERCP and to have his biliary stent removed in approximately 3-4 weeks, *see id.* at 81, it is not clear from the records whether or not he has yet returned to the hospital for that follow-up care.

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] Notably, according to guidance from the Mayo Clinic, laparoscopic gallbladder removal is a "common surgery," carrying "only a small risk of complications, and most patients are able to be released from the hospital within one day of the surgery and can expect to fully recover (and even return to work) in a week, without further digestive problems. *See* https://www.mayoclinic.org/tests-procedures/cholecystectomy/about/pac-20384818.

[7] As noted in the Government's response to the First Reconsideration Motion, according to the Pretrial Services Report, Weigand did not report this condition to Pretrial Services when he was asked about his health. Instead, he reported that he was "in good physical health." The Santa Ana Jail medical records that Weigand attaches as Exhibit C to the Second Reconsideration Motion also fail to provide any support for Weigand's claim. Nowhere in those medical records—which detail the above-described gallbladder surgery and requests made by Weigand related to his eyeglass and contact preferences—does there appear to be any mention of the sleep apnea condition. Indeed, at one point, the records report that Weigand had "no known medical hx." *See* Ex. C at 48.

Honorable Jed S. Rakoff
September 28, 2020

of his gallbladder, sleep apnea is not listed by the CDC as a medical condition that places affected individuals at increased risk of severe illness from COVID-19.

The available medical evidence therefore does not bear out Weigand's claim that his "underlying health conditions leave him in great jeopardy if he were to contract COVID-19." (Second Reconsideration Motion at 5). Based on his own reports to doctors and Pretrial Services, aside from his recent gallbladder surgery, Weigand appears to be a healthy 38-year-old man. Weigand's mildly elevated hemoglobin and hematocrit levels, based on blood tests taken on August 15, 2020, (*see* Ex. C at 26, 86), do not appear to have caused any concern among treating physicians at the hospital, as those test results do not appear to be remarked upon at all in the medical records. Moreover, those hemoglobin and hematocrit levels returned to levels within the normal reference range, based on subsequent blood tests conducted on August 16 and August 23, 2020. *See* Ex. C at 13, 34.[8] And Weigand's quickly normalizing liver function tests appear to undermine any claim that Weigand suffers from broader liver problems, as opposed to a gallbladder issue, as a doctor from Germany who has not personally examined Weigand suggests. *See* Ex. D ("the ongoing recovery does not mean that the cause of the choledocholithiasis had been remedy [sic]").[9] Weigand's gallbladder issues appear to be largely resolved as a result of the laparoscopic surgery,[10] and his sleep apnea under control so much so that he saw no need to report it to his doctors. Finally, as noted above, as per CDC guidance, neither of these conditions represents a high risk factor for severe illness from COVID-19.

Finally, it is not clear that Weigand's private travel from California to New York would be any safer than a transfer provided by the U.S. Marshals. And records related to COVID-19 infections at MCC and MDC, where Weigand would likely be housed upon his arrival in New York, show that the policies and procedures in place at those two facilities have been effective in combatting the spread of COVID-19 among inmates. While both facilities currently have several positive staff members, neither are currently reporting any positive inmates, with all 14 positive inmates at MDC fully recovered, all 27 positive inmates at MCC fully recovered, and no COVID-related inmate or staff deaths at either facility.[11]

---

[8] In addition, all of Weigand's reported globulin levels, between 1.9 and 2.4 g/dL (*see* Ex. C at 15, 85, 105, and 143), appear to fall within the normal reference range of 1.7-3.7 g/dL used by one of the two labs responsible for Weigand's bloodwork analysis (*see id.* at 143).

[9] Notably, Weigand's second doctor's letter, from another German doctor who has not personally examined him, opines that "the condition was caused by gallstones in his gallbladder, which was chronically inflamed, and in the common bile duct." *See* Ex. E. Neither doctor provides any specific basis for their statements that Weigand remains in an immune-compromised state over a month after his laparoscopic gallbladder surgery, and those statements appear to be contradicted by the Mayo Clinic guidance discussed in footnote three.

[10] Neither doctor provides any specific basis for their statements that Weigand remains in an immune-compromised state over a month after his laparoscopic gallbladder surgery, and those statements appear to be contradicted by the Mayo Clinic guidance discussed in footnote three. In any event, CDC guidance does not list "immunocompromised state" secondary to laparoscopic gallbladder surgery as a risk factor for COVID-19.

[11] This data is sourced from the BOP's COVID-19 website, https://www.bop.gov/coronavirus/, and is current as of September 28, 2020.

Honorable Jed S. Rakoff
September 28, 2020

## **CONCLUSION**

For the foregoing reasons, no condition or combination of conditions can reasonably assure Weigand's appearance in Court.  As Your Honor has already twice found, Weigand should therefore remain detained.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:     /s/
Christopher J. DiMase / Nicholas Folly/
Tara LaMorte
Assistant United States Attorneys
(212) 637-2433 / (212) 637-1060