# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>HAMID AKHAVAN and RUBEN WEIGAND | Criminal Action No.  1:20-cr-00188 |

## NON-PARTY CIRCLE INTERNET FINANCIAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH DEFENDANT RUBEN WEIGAND'S SUBPOENA *DUCES TECUM*

Dated: February 5, 2021

NELSON MULLINS RILEY &
SCARBOROUGH LLP
Matthew G. Lindenbaum *(pro hac pending)*
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Telephone: (617) 217-4700

Robert L. Lindholm
280 Park Avenue
15th Floor, West
New York, New York 10017
Telephone: (646) 428-2600

*Attorneys for Non-Party Circle Internet
Financial, LLC*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ..........................................................6, 12

*In Matter of Application of Frates*, No. M8-85, 1985 WL 2752 (S.D.N.Y. Sept. 25, 1985) ...................................................................................................................................12, 13

*United States v. Barnes*, No. S9 04 CR 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ...............................................................................................................................6, 7

*United States v. Biaggi*, 674 F. Supp. 1034 (S.D.N.Y. 1987) ..........................................................8

*United States v. Buck*, No. 84 cv. 220-CSH, 1986 WL 14970 (S.D.N.Y. Dec. 15, 1986) .................................................................................................................................7

*United States v. Carroll*, No. 19 CR 545 (CM), 2019 WL 6647871 (S.D.N.Y. Nov. 8, 2019) .................................................................................................................................6

*United States v. Cherry*, 876 F. Supp. 547 (S.D.N.Y. 1995) ..................................................6, 7, 10

*United States v. Cognetta*, 18 CR 14 (VM), 2019 WL 4198544 (S.D.N.Y. Aug. 13, 2019) .................................................................................................................................8

*United States v. Cuthbertson*, 630 F.2d 139 (3rd Cir. 1980) ..........................................................9

*United States v. Jabar*, No. 9-CR-170V, 2016 WL 8671207 (W.D.N.Y. July 22, 2016) .................................................................................................................................11

*United States v. Jenkins*, No. 02 CR. 1384 (RCC), 2003 WL 1461477 (S.D.N.Y. Mar. 21, 2003) .................................................................................................................9

*United States v. Leaver*, 358 F. Supp. 2d 273 (S.D.N.Y. 2005) ..................................................11

*United States v. Marchisio*, 344 F.2d 653 (2d Cir. 1965) ..........................................................8

*United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511 (S.D.N.Y. 2013) ........................11, 12

*United States v. Murray*, 297 F.2d 812 (2d Cir. 1962) ..................................................6

*United States v. Nektalov*, No. S203 CR. 828 (PKL), 2004 WL 1574721 (S.D.N.Y. July 14, 2004) .............................................................................................................8, 10

*United States v. Nixon*, 418 U.S. 683 (1974) ..........................................................6, 7, 8, 9, 10, 11

*United States v. Rich*, No. S 83 CR. 579 (SWK), 1984 WL 845 (S.D.N.Y. Sept. 7, 1984) ...................................................................................................................9

*United States v. Skelos*, 15-CR-317 (KMW), 2018 WL 2254538 (S.D.N.Y. May 17, 2018) ........................................................................................................7, 10, 12

*United States v. Treacy*, No. 08-cr-366, 2008 WL 5082884 (S.D.N.Y. Dec. 1, 2008) .................................................................................................................10

*United States v. Weissman*, No. 01 CR. 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) .........................................................................................................11

*United States v. Yian*, No. 94 CR. 719 (DLC), 1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) ...................................................................................................................7

*United States v. Yudong Zhu*, No. 13 CR. 761, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014) ...................................................................................................................9

**Rules**

Fed. R. Crim. P. 16 ..............................................................................................6, 7

Fed. R. Crim. P. 16(a)(1) .....................................................................................6, 7

Fed. R. Crim. P. 16(a)(1)(A) ....................................................................................6

Fed. R. Crim. P. 16(a)(2) ...........................................................................................7

Fed. R. Crim. P. 17 .......................................................................................6, 12, 13

Fed. R. Crim. P. 17(c) .......................................................2, 3, 4, 5, 6, 7, 8, 9, 10, 12

Fed. R. Crim. P. 17(c)(2) ...................................................................................1, 7, 8

Fed. R. Crim. P. 17(c)(3) ...........................................................................................8

**Other Authorities**

Fed. R. Evid. 402 ......................................................................................................9

Pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, non-party Circle Internet Financial, LLC[1] ("Circle"), by and through its attorneys, Nelson Mullins Riley & Scarborough LLP, hereby respectfully submits this memorandum of law in support of its motion to quash the Rule 17(c) subpoena (the "Subpoena") served on it by Defendant Ruben Weigand.[2] Together with this memorandum of law, Circle also submits the Affidavit of Jeremy Allaire, sworn to February 5, 2021, attached hereto as Exhibit B (the "Allaire Affidavit").

This Court should quash the Subpoena because it seeks irrelevant, inadmissible, and non-specific documents for a six-year time period from Circle, a non-party to this case that has had no involvement in the underlying criminal proceeding, no involvement with the defendants Weigand or Hamid Akhavan, and did not even begin its relationship with non-party Eaze Technologies, Inc. ("Eaze")—who Circle understands to be the "Online Marijuana Marketplace Company" referenced in the Superseding Indictment—until after the relevant 2016 to 2019 time period in the Superseding Indictment.  Moreover, disclosure of the documents and information requested in the Subpoena would needlessly harm Circle by forcing it to release confidential and commercially sensitive documents into the public sphere, concerning Circle's innovative new business.

## PRELIMINARY STATEMENT

The law is clear:  Subpoenas issued under Federal Rule of Criminal Procedure 17(c) are not a discovery device in criminal cases and cannot be used as fishing expeditions in the hope of

---

[1] Effective January 1, 2021, non-party Circle Internet Financial, Inc., became known as Circle Internet Financial, LLC.

[2] The Subpoena is attached hereto as Exhibit A.

finding documents that *might* advance a criminal defendant's case.  Yet that is exactly what Defendant Weigand has done here.

Weigand and his co-defendant Akhavan are charged with one count of conspiracy to commit bank fraud for their role in an alleged scheme from 2016 to 2019 to deceive banks and other financial institutions into processing over $100 million in credit and debit card payments for the purchase and delivery of marijuana products for an online marijuana company, which Circle understands to be non-party Eaze.  *See generally* Exhibit C, Superseding Indictment.  To accomplish that, the Government alleges that Weigand and his co-conspirators created phony companies and websites to disguise the payments made to marijuana dispensaries as payments made for goods other than marijuana.  *Id.* at ¶ 2.  Non-party Circle, an enterprise technology company, offers clients a payments and treasury infrastructure whereby online companies can take card and bank transfer payments for goods or services and receive settlement in USD Coin ("USDC"), a regulated and fully reserved digital dollar stablecoin pegged to the U.S. dollar 1:1.[3] *See* Exhibit B, Allaire Affidavit at ¶ 3.  Circle's purported relation to this case appears to be that it currently processes payments for Eaze, which it started doing in July 2020—after the time period of the alleged scheme.  *See id.* at ¶ 7; Exhibit C, Superseding Indictment at ¶ 1.  Circle has never worked with Weigand.  *See* Exhibit B, Allaire Affidavit at ¶ 8.

Now, Weigand has thrown a Hail Mary pass by subpoenaing non-party Circle for eight categories of irrelevant documents apparently on the basis that Circle currently processes payments for Eaze, despite the fact that Circle had no relationship with Eaze in the relevant 2016

---

[3] A stablecoin is a type of cryptocurrency whose value is tied to an outside asset, such as the U.S. dollar or gold, to stabilize the price.  *See* Exhibit B, Allaire Affidavit at ¶ 4.  Stablecoins try to tackle price fluctuations by tying the value of the cryptocurrencies to other more stable assets, usually fiat.  *See id.*

to 2019 time period in the Superseding Indictment and absolutely no connection with Weigand or his co-defendant Akhavan. This Subpoena is a fishing expedition prohibited by Federal Rule 17(c) because the documents sought are irrelevant to the case, inadmissible, and non-specific.

*First*, the documents requested are irrelevant because Circle is a non-party that has had no involvement in the underlying criminal proceeding, no involvement with Weigand or Akhavan, and did not even begin its relationship with Eaze until 2020, a year after the relevant 2016 to 2019 time period in the Superseding Indictment. Circle's relationship with Eaze in 2020 has absolutely nothing to do with the alleged scheme by Weigand and his co-conspirators years before that. *Second*, the Subpoena seeks inadmissible documents because the documents it seeks are irrelevant and many would be inadmissible on hearsay grounds. *Third*, Rule 17(c) subpoenas must be focused on finding *particular* documents that are relevant and admissible. Here, Weigand does nothing of the sort. He instead seeks all communications for a six-year period between Circle and Eaze, Circle and *any* marijuana dispensaries, and Circle and *any* financial institution concerning payments facilitated for Eaze. *Finally*, production of the requested materials would result in the disclosure of confidential and proprietary information related to Circle's new and innovative business venture, which could cause Circle competitive harm in the marketplace. Because none of these documents are relevant or admissible, and the unlimited "all documents" nature of the request is not particularized, this harm to Circle is needless and therefore unreasonable. This Court should quash the Subpoena to Circle because it seeks irrelevant, inadmissible, and non-specific documents in contravention of Rule 17(c).

## **BACKGROUND**

Weigand and his co-Defendant Akhavan have been indicted on one count of conspiracy to commit bank fraud arising out of an alleged scheme to disguise the true nature of transactions

involving marijuana sales from U.S. financial institutions by creating and using phony online merchants and non-marijuana businesses.  *See generally* Exhibit C, Superseding Indictment, No. S3 20 Cr. 188, March 31, 2020, Dkt. No. 16 (the "Superseding Indictment").  The government alleges that from 2016 through 2019, because banks in the United States were reluctant to provide credit for marijuana transactions, Weigand and his co-conspirators "arranged for the money received from Eaze's customers to be disguised as payments to over a dozen phony merchants and other non-marijuana businesses (the 'Phony Merchants'), including transactions that appeared to be for stenographic services, music stores/pianos, and cosmetic stores."  *Id.* ¶ 2.

The Superseding Indictment alleges that "[w]hen customers made purchases by credit cards or debit cards, those purchases would appear on the customers' card statements as though they were from merchants other than" Eaze.  *Id.* ¶ 5.  To accomplish this, Weigand and his co-conspirators allegedly relied on third party payment processors "to create phony offshore corporations and websites (i.e., the Phony Merchants) and open offshore merchant bank accounts."  *Id.*  The Superseding Indictment does not reference Circle or allege that Circle had any connection to or involvement with any of this.  Nor did it.  *See generally id.*

Circle is an enterprise technology company that, among other things, helps businesses and developers harness the power of digital dollar stablecoins for payments and internet commerce worldwide.  *See* Exhibit B, Allaire Affidavit at ¶¶ 3, 5.  One of Circle's products provides a payments processing solution whereby online companies can take card and bank transfer payments for goods or services and receive settlement in USDC, a regulated and fully reserved digital dollar stablecoin pegged to the U.S. dollar 1:1.  *See id.* at ¶ 3.  One of Circle's clients is Eaze, which owns and operates an online platform that provides delivery of marijuana products in

the state of California.  *See id.* at ¶ 6.  Circle first began working with Eaze in facilitating

payments between Eaze's customers and Eaze in  July 2020.  *See id.* at ¶ 7.

On December 24, 2020, Weigand served a Rule 17(c) Subpoena on non-party Circle

demanding that Circle produce documents responding to eight wide-ranging requests (the

"Requests").  *See* Exhibit A, Subpoena.[4]  The Subpoena requests that Circle produce, for a period

of six years (2015 through the present), all communications, contracts, and agreements between

Circle and Eaze, all communications between Circle and any marijuana dispensaries including

contracts and agreements, communications between Circle and any financial institutions

concerning transactions facilitated for Eaze, all documents concerning transactions facilitated for

Eaze or any other marijuana dispensary, and all documents and communications between Circle

and Visa or MasterCard relating to Eaze.  *See id.*  The breadth of these Requests evidences this is

nothing more than a fishing expedition specifically prohibited by Rule 17(c).  The requested

discovery has no relation at all to any claim or defense of any party in the underlying criminal

proceeding and this Court should accordingly quash the Subpoena.

## LEGAL STANDARD

Rule 17(c) governs the issuance of trial subpoenas that seek the production of documents

and other items in criminal cases.  *See* Fed. R. Crim. P. 17(c).  Rule 17(c), however, ***does not***

***provide a means of gathering discovery***.  *See Bowman Dairy Co. v. United States*, 341 U.S. 214,

220 (1951); *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995).  Instead, Rule 17(c)

---

[4] The Subpoena requested that Circle comply with the document requests on or before January 8, 2021.  Due to internal delays relating to the holidays, Circle's in-house legal team did not receive the Subpoena until January 7, 2021.  On January 8, 2021, the undersigned spoke with Defendant Weigand's counsel who agreed to extend the Subpoena's deadline by 30 days.

may be used only to obtain evidentiary materials. *See, e.g., United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (subpoenaed materials must themselves be admissible evidence).

The Supreme Court has long held that "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co.*, 341 U.S. at 220. Since then, courts have routinely held that Rule 17(c) cannot be utilized as a discovery device to circumvent the limited discovery scheme provided for in Rule 16.[5] *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 698–99 (1974) (Rule 17(c) is "not intended to provide a means of discovery for criminal cases"); *United States v. Carroll*, No. 19 CR 545 (CM), 2019 WL 6647871, at *1 (S.D.N.Y. Nov. 8, 2019) ("Rule 17 does not broaden the limited discovery available in criminal cases.").

"[I]f the item is not discoverable under Rule 16 [which controls pre-trial discovery in criminal cases and identifies the types of evidence the Government must turn over to a criminal defendant], a party cannot make it discoverable simply by subpoenaing it under Rule 17." *United States v. Barnes*, No. S9 04 CR 186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008). Accordingly, "[c]ourts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule 16]." *Cherry*, 876 F. Supp. at 552 (citation omitted). The "discoverability of items under Rule 16 determines whether those items are subject to a Rule 17(c) subpoena," not vice versa. *United States v. Buck*, No. 84 cv. 220-CSH, 1986 WL 14970, at *1 (S.D.N.Y. Dec. 15, 1986); *see United States v. Yian*, No. 94 CR 719 (DLC), 1995 WL 614563, at *1 (S.D.N.Y. Oct. 19, 1995) ("Having

---

[5] Rule 16(a)(1) identifies five types of evidence the Government must disclose upon the defendant's request: defendants' statements; defendants' criminal records; documents and tangible objects that: (i) are material to the defense, (ii) the Government intends to use in their case-in-chief, or (iii) were obtained from the defendant; reports of examinations and tests; and expert witnesses' opinions. Fed. R. Crim. P. 16(a)(1)(A) – (E).

received the benefits of Rule 16(a)(1), further discovery is barred by Rule 16(a)(2), and that bar cannot be circumvented by the service of a Rule 17(c) subpoena.").

Accordingly, because Rule 17(c) subpoenas are not a substitute for discovery, when they are appropriate, they are subject to strict limitations in terms of what they may seek.  In *United States v. Nixon*, the Supreme Court explained that the party seeking production must show "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may tend to unreasonably delay the trial, and (4) that the application is made in good faith and not intended as a general 'fishing expedition.'"  *Nixon*, 418 U.S. at 699–700; *see United States v. Skelos*, 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) (same).  In short, the proponent of a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Nixon*, 418 U.S. at 700; *see Barnes*, 2008 WL 9359654 at *2 ("This test [requiring relevancy, admissibility, and specificity] is the hallmark of [the] Rule 17(c)(2) analysis, and courts in this jurisdiction and elsewhere have repeatedly and consistently applied it to determine whether third-party subpoenas served by defendants must be quashed as unreasonable or oppressive.").  The proponent of the Rule 17(c) subpoena bears the burden of showing these factors are satisfied.  *See, e.g., United States v. Biaggi*, 674 F. Supp. 1034, 1036 (S.D.N.Y. 1987) ("party seeking production has the burden of proof of showing that production would not be unreasonable or oppressive.").

Fed. R. Crim. P. 17(c)(2) permits a court to quash a subpoena "if compliance would be unreasonable or oppressive."  Fed. R. Civ. P. 17(c)(2).

7

## ARGUMENT

It would be unreasonable and oppressive to require Circle, a non-party, to produce the wide range of documents Weigand seeks here because the requests seek documents that are irrelevant to his criminal case, inadmissible at trial, and are overly broad and not specific.  *See United States v. Cognetta*, 18 CR 14 (VM), 2019 WL 4198544, at *4 (S.D.N.Y. Aug. 13, 2019) (Rule 17(c)(3)'s provision authorizing a court to quash a subpoena functions to impose "a reasonableness standard.").  As such, Weigand's Subpoena to Circle should be quashed.

**I.      The Subpoena Requests Irrelevant and Inadmissible Documents.**

The Subpoena requests that non-party Circle produce eight wide-ranging categories of documents for a six-year period that by definition are irrelevant to the underlying criminal proceeding.  Under the *Nixon* test, the materials sought cannot be potentially relevant or admissible, they must meet the test of relevancy and admissibility at the time they are sought.  *See United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965); *see also United States v. Nektalov*, No. S203 CR. 828 (PKL), 2004 WL 1574721, at *3 (S.D.N.Y. July 14, 2004) ("anticipation" that documents "might advance his case" do not make them relevant).  Thus, a "'mere hope that the documents, if produced, may contain evidence favorable to the defendant's case will not suffice.' Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation."  *United States v. Rich*, No. S 83 CR. 579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) (internal citation omitted); *see United States v. Cuthbertson*, 630 F.2d 139, 146 (3rd Cir. 1980) ("broad request" for documents "based solely on the mere hope that some exculpatory material might turn up" does not justify enforcement of Rule 17(c) subpoena); *United States v. Jenkins*, No. 02 CR. 1384 (RCC), 2003 WL

1461477, at \*5 (S.D.N.Y. Mar. 21, 2003) (internal citation omitted) ("a showing of *potential* relevance . . . is not sufficient." ).

Circle is not a party to and has not been involved in the underlying criminal proceeding in any way.  Furthermore, Circle has no relationship with Weigand or his co-defendant and never has.  *See* Exhibit B, Allaire Affidavit at ¶¶ 2, 8.  The only relationship Circle has to anything whatsoever in the underlying criminal proceeding is that Circle happens to be a *current* payments processor for Eaze.  *See id.* at ¶¶ 6, 8; *see generally* Exhibit C, Superseding Indictment.

But that relationship between Circle and Eaze did not even begin until after the 2016 to 2019 conduct alleged in the Superseding Indictment.  *See* Exhibit C, Superseding Indictment at ¶ 1.  Weigand appears to recognize that and seeks documents from 2015 to *the present*, but that does not make the Subpoena any more relevant.  *See United States v. Yudong Zhu*, No. 13 CR. 761, 2014 WL 5366107, at \*5 (S.D.N.Y. Oct. 14, 2014) (noting that request sought communications from years before the time period of criminal conduct alleged, and thus was overly broad).  In short, any documents Circle may have are by definition irrelevant to the criminal proceeding.

The Subpoena's lack of relevance goes hand in hand with the second factor in the *Nixon* standard: admissibility.  *See Nixon*, 418 U.S. at 699–700.  Of course, it is *ipso facto* that irrelevant materials are not admissible at trial.  *See* Fed. R. Evid. 402.  Because "Rule 17(c) may be used to obtain only evidentiary materials . . . in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence."  *See Cherry*, 876 F. Supp. at 552.  Because the requested documents are not relevant, as set forth above, those materials are not admissible.  *See Nektalov*, 2004 WL 1574721 at \*3 (quashing a subpoena where "defendant ha[d] not shown that the documents [were] relevant.").

9

Several of the categories of documents Weigand seeks here are also inadmissible on hearsay grounds. *See Skelos*, 2018 WL 2254538 at *2 ("Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be 'inadmissible as evidence at trial.'"); *Cherry*, 876 F. Supp. at 553 (S.D.N.Y. 1995) (quashing a subpoena where the sought documents were hearsay and thus not admissible.).[6] For example, Requests 3, 5, and 8 in the Subpoena seek communications between Circle and third parties such as "any Marijuana Dispensaries," "any Financial Institution," and Visa/MasterCard. Where, as here, the proponent of a Rule 17(c) subpoena cannot demonstrate admissibility when the documents are sought, the court should quash the subpoena. *See United States v. Treacy*, No. 08-cr-366, 2008 WL 5082884, at *2 (S.D.N.Y. Dec. 1, 2008) (quashing a subpoena request for defendant's "fail[ure] to meet the requirement of admissibility . . ." because [the defendant's] "argument that the documents 'will likely be admissible' does not establish that they have evidentiary value").

## II.      The Subpoena Requests Are Not Sufficiently Specific.

Weigand's Requests also do not satisfy the specificity requirement under *Nixon*. The Subpoena is the quintessential "fishing expedition." Courts do not hesitate to quash subpoenas where they request "'any and all' materials, without mention of 'specific admissible evidence', justify[ing] the inference that [he] is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (internal

---

[6] Other showings the Supreme Court referenced in *Nixon* are also not present here. For instance, Weigand cannot show that the only way he can obtain such materials is through Circle because he could just as easily go to the financial institutions that are the alleged victims of his alleged bank fraud—or that he cannot properly prepare for trial without the business records he seeks from Circle. *See Nixon*, 418 U.S. at 699–700.

citation omitted); *see United States v. Jabar*, No. 9-CR-170V, 2016 WL 8671207, at *4 (W.D.N.Y. July 22, 2016) ("when, as here, the defendant asks for 'any' and 'all' documents, and otherwise describes the subpoenaed materials in general terms, the defendant likely is using the subpoena to fish for discovery."). "'If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought *but merely hopes something useful will turn up*, the requirement of specificity will not have been met.'" *United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) (citing to *United States v. Weissman*, No. 01 CR. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002)) (emphasis added).

Here, the Subpoena does not seek *specific* documents, but instead seeks *broad categories* of communications and agreements between numerous, and sometimes unknown, third party entities *across a six-year period*. *See* Exhibit A, Subpoena at Requests 1–8. Weigand's Requests boil down to requests for either (1) general communications between Circle and various known and unknown third parties or (2) contracts/agreements related to those same third parties. *See id.* Weigand seeks communications between Circle and other third parties, but does not identify which marijuana dispensaries, which financial institutions, any specific individuals involved, or any specific dates such communications allegedly took place. *See id.* This is *per se* improper because Rule 17(c) "[s]ubpoena requests must be focused on finding *particular* documents that are relevant and admissible." *Skelos*, 2018 WL 2254538 at *3 (emphasis added). Weigand's Requests lack any "focus" identifying discrete documents, or information contained therein, and are therefore inappropriate. *See generally* Exhibit A, Subpoena; *see Mendinueta-Ibarro*, 956 F. Supp. 2d at 513 ("[W]hen considering whether a Rule 17(c) subpoena is sufficiently specific, the

onus lies on the court 'to cull the good from the bad' by modifying or quashing the subpoena, not

on the party served.") (citing to *Bowman Dairy Co*., 341 U.S. at 220).

It follows from these broad, non-specific requests that Weigand cannot possibly know the

relevance (or scope) of such documents, let alone show their admissibility at trial. *See Skelos*,

2018 WL 2254538 at *3 ("[b]ecause Defendants do not know the universe of documents they are

requesting, they cannot meet their burden of showing that these documents would be admissible

at trial.").

## III. Disclosure of the Requested Materials Would Needlessly Expose Circle to a Serious Risk of Substantial Commercial Harm.

Not only did Weigand fail to meet his burden under the Rule 17 factors, but the disclosure

of such documents poses the risk of harming Circle because the requested materials contain

Circle's proprietary and commercially sensitive business information which Circle does not

disclose to the public. *See* Exhibit B, Allaire Affidavit at ¶ 10.  This further renders these requests

unreasonable and weighs in favor of quashing.  *See In Matter of Application of Frates*, No. M8-

85, 1985 WL 2752, at *1 (S.D.N.Y. Sept. 25, 1985) (it is improper to allow requests that have the

aim of "gaining access to proprietary, confidential business information from third parties who

have no interest in the litigation") (citation omitted).

Weigand's requests seek documents that would contain highly confidential information

and commercially sensitive business information related to Circle's technology and payment

processes.  *See* Exhibit B, Allaire Affidavit at ¶ 11.  In particular, the Subpoena seeks

communications with Eaze and any other marijuana dispensaries that if produced would reveal,

among other things, sensitive client information, confidential financial transactions, and how

Circle conducts its innovative business including, but not limited to, the process in which it

conducts payment transactions using stablecoins.  *See id.*  That process is at the center of Circle's

business model and Circle has expended significant time and energy to develop it.  *See id.* at ¶ 12. Production of the requested documents would place Circle at a competitive disadvantage in this burgeoning industry.  *See id.* at ¶¶ 13-14.

Accordingly, even if the Subpoena was proper under Rule 17—which it is not—requiring Circle to produce irrelevant and inadmissible documents that pose a clear risk of leading to economic and competitive harm is patently unreasonable and Circle's motion to quash should be granted.  *See In Matter of Application of Frates*, 1985 WL 2752 at *1 (granting motion to quash civil subpoena where the information sought was not relevant to the lawsuit and the "proprietary nature of the information sought . . . renders [the] requests unreasonable.").

[*Remainder of page intentionally left blank*]

## **CONCLUSION**

Circle respectfully requests that this Court quash Weigand's Subpoena because it seeks the production of irrelevant, inadmissible, and non-specific documents from Circle, a non-party to the case, and disclosure of such private and proprietary business materials would needlessly harm Circle.

Respectfully submitted,

/s/ *Matthew G. Lindenbaum*
Matthew G. Lindenbaum (*pro hac pending*)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Telephone: (617) 217-4700
matthew.lindenbaum@nelsonmullins.com

Robert L. Lindholm
NELSON MULLINS RILEY &
SCARBOROUGH LLP
280 Park Avenue
15th Floor, West
New York, New York 10017
Telephone: (646) 428-2600
robert.lindholm@nelsonmullins.com

*Attorneys for Non-Party Circle Internet*
*Financial, LLC*

February 5, 2021