# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|                                          |                                       |
|------------------------------------------|---------------------------------------|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>HAMID AKHAVAN and RUBEN WEIGAND | Criminal Action No. 1:20-cr-00188 |

## NON-PARTY CIRCLE FINANCIAL LLC'S REPLY TO DEFENDANTS HAMID AKHAVAN AND RUBEN WEIGAND'S OPPOSITION TO CIRCLE FINANCIAL LLC'S MOTION TO QUASH

Dated: February 11, 2021

NELSON MULLINS RILEY &
SCARBOROUGH LLP
Matthew G. Lindenbaum (*pro hac pending*)
One Financial Center, Suite 3500
Boston, Massachusetts 02111
Telephone: (617) 217-4700

Robert L. Lindholm
280 Park Avenue
15th Floor, West
New York, New York 10017
Telephone: (646) 428-2600

*Attorneys for Non-Party
Circle Internet Financial LLC*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Barnes*,
 No. S9 04 CR 186 (SCR), 2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) ............................ 2, 3

*United States v. Bergstein*,
 16-cr-746 (PKC), 2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) ............................................ 3

*United States v. Bergstein*,
 788 Fed. Appx. 742 (2d Cir. 2019) ...................................................................................... 3

*United States v. Cherry*,
 876 F. Supp. 547 (S.D.N.Y. 1995) ...................................................................................... 5

*United States v. Cuthbertson*,
 651 F.2d 189 (3d Cir. 1981) ................................................................................................ 5

*United States v. Fields*,
 663 F.2d 880 (9th Cir. 1981) ............................................................................................... 5

*United States v. Nixon*
 418 U.S. 683 (1974) .................................................................................................... 1, 2, 3

*United States v. Pena*,
 No. 15 cr 551 (AJN), 2016 WL 8735699 ............................................................................ 3

*United States v. Skelos*,
 No. 1-CR-317 (KMW), 2018 WL 225453 (S.D.N.Y. May 17, 2018) ................................... 2

*United States v. Tucker*,
 249 F.R.D. 58 (S.D.N.Y. 2008) ........................................................................................... 2

*United States v. Weissman*,
 No. 01 CR. 529 (BSJ), 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) .............................. 5

**Other Authorities**

Rule 17 ...................................................................................................................................... 2, 4

Rule 17(c) ........................................................................................................................... 1, 2, 3, 4, 5

## INTRODUCTION

In Defendant Ruben Weigand and Hamid Akhavan's Oppositions to Circle Internet Financial, LLC's Motion to Quash, they argue that Circle's documents related to their business relationship with Eaze Technologies, Inc. will demonstrate that the alleged "material misrepresentations" the government charged in the Superseding Indictment were not "material" at all, because the financial institutions at issue did not truly "care" if they were processing payments for marijuana purchases.

This is a false comparison. The defendants' alleged false statements are *not* that customers purchase marijuana and the financial institutions knew (or did not know), but that Weigand and Akhavan falsely and deliberately characterized fake transactions designed to deliberately deceive the financial institutions through the use of fictious companies. The Circle transactions with the financial institutions were not for the purchase of marijuana, but for the purchase of USDC. The USDC was then used for marijuana purchases—not the financial institutions' fiat currency. These transactions have no relevance to the defendants' alleged scheme of deceiving the financial institutions by creating phony transactions with fake companies for non-existent goods and services (such as pet supplies), when the transactions they facilitated were, in fact, with a marijuana dispensary.

Circle's lawful digital payment processing system separates the financial institutions from the marijuana transactions, through the intermediate and disclosed purchase of USDC. It has nothing to do with the defendants' alleged scheme.

Defendants' additional arguments are wrong. *Nixon* provides the correct standard here. Rule 17(c) is not an appropriate method for obtaining impeachment materials. And the Third

Party Protective Order (the "Protective Order") does not apply to trial materials and would not protect Circle's documents from disclosure at trial.

**I.     *Nixon* is the Controlling Standard for a Rule 17 Subpoena in the Second Circuit.**

The standard applied by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974) requiring the proponent of a Rule 17(c) subpoena to show (1) relevance, (2) admissibility, and (3) specificity is controlling here. *See* ECF No. 137, Non-Party Circle Internet Financial, LLC's Memorandum of Law in Support of its Motion to Quash Defendants Ruben Weigand's Subpoena *Duces Tecum* ("Circle Mem.") at 7; *see, e.g., United States v. Barnes*, No. S9 04 CR 186 (SCR), 2008 WL 9359654, at *2 (S.D.N.Y. Apr. 2, 2008). Weigand and Akhavan respond that *Nixon's* test should not be applied to the Subpoena to non-party Circle and instead this Court should apply the more lenient standard set forth in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008).[1] *See* ECF No. 141, Defendants Ruben Weigand's Opposition to Circle Internet Financial, LLC'S Motion to Quash the Rule 17 Subpoena ("Weigand Opp.") at p. 5-6; ECF No. 139, Memorandum of Law in Opposition to Circle Internet Financial LLC's Motion to Quash ("Akhavan Opp.") at p. 2-3.

Their arguments, however, rely on the minority position applied by a few district courts in this jurisdiction—expressly rejected by most—and which the Second Circuit has declined to apply. "[C]ourts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties," and defendants' contention otherwise misconstrues precedent. *See United States v. Skelos*, No. 1-CR-317 (KMW), 2018 WL 225453, at *1 (S.D.N.Y. May 17,

---

[1] Weigand's Opposition also claims that Circle "does not seriously contend" that producing the requested materials would be "burdensome." Weigand Opp. at 1. Circle did not address the burden, however, because that is not the applicable standard for a Rule 17 subpoena; the three hurdles are relevancy, admissibility, and specificity. *Nixon*, 418 U.S. at 700.

2

2018; *United States v. Bergstein*, 16-cr-746 (PKC), 2017 WL 6887596, at *4-5 (S.D.N.Y. Dec. 28, 2017) (same) (*citing to United States v. Pena*, No. 15 cr 551 (AJN), 2016 WL 8735699, at *4 (S.D.N.Y. Feb. 12, 2016); *United States v. Barnes*, No. S9 04 CR 186 (SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) (same).

When defendants' very argument was raised in *United States v. Bergstein*, the Second Circuit, although not deciding the question, noted that "[w]e have however, applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant as have district courts in this Circuit." *Bergstein*, 788 Fed. Appx. 742, 746 (2d Cir. 2019) (internal cites omitted). Thus, *Nixon's* relevance, admissibility, and specificity test remains the law.

## II. The Requested Documents Are Not Relevant Or Material.

Regardless of which legal standard applies, the requested documents must be relevant or material for their production to be required. Here they are neither. Weigand and Akhavan argue the materials are relevant to their defenses because they anticipate the Circle documents will demonstrate that the financial institutions have routinely approved transactions involving marijuana purchases and that is evidence that any alleged misrepresentation by defendants as to the true nature of their transactions was not "material." *See* Weigand Opp. at p. 6; Akhavan Opp. at p. 4. Under the defendants' theory, the financial institutions would have processed defendants' transactions even if they had known that the transactions were for marijuana, and therefore defendants' misstatements in executing the scheme cannot be deemed material. *See* Weigand Opp. at p. 6; Akhavan Opp. at 4.

But defendants misconstrue what is material here. As Weigand notes in his Opposition, "the Government must prove that the defendant made or conspired to make material misrepresentations to the victim-bank." Weigand Opp. at 6. As alleged in the Superseding Indictment, the alleged material misrepresentations are that Weigand and Akhavan intentionally

3

used improper merchant codes—codes used to categorize, track, and restrict certain transactions—associated with sham businesses, which included "phony online merchants purportedly selling dog products, dive gear, carbonated drinks, green tea, and face creams[,]" in order to create a false appearance that the transactions were for goods or services other marijuana, thus tricking banks to approve the marijuana transactions under false pretenses. *Id*. ¶¶ 9, 12-13. The defendants' alleged false statements, therefore, are *not* that marijuana was purchased and the financial institutions knew (or did not know), but that Weigand and Akhavan falsely characterized fake transactions designed to deliberately deceive the financial institutions through the use of fictious companies. *See* Exhibit C to Circle Mem., the Superseding Indictment, at ¶¶ 1-2.

Defendants appear to argue that no matter how fraudulent the merchant descriptors and MCCs were, if they can find evidence that the victim-banks would accept non-fraudulent purchases of USDC subsequently used to purchase marijuana, then that somehow is relevant or material to their case. But it is not. Circle merely offers a payments and treasury infrastructure whereby online companies can take card and bank transfer payments for goods or services and receive settlement in USDC—a stablecoin pegged 1:1 to the US dollar, and a lawful digital asset. No one is misled, deceived, or lied to in any way. Circle's payment infrastructure has no bearing one way or the other on whether the defendants made material misrepresentations.

### III. Rule 17 Is Not a Tool to Obtain Impeachment Materials.

Weigand also argues that even if the Court were to find that the requested documents are not admissible as direct evidence, Circle should still be required to produce them for impeachment purposes. *See* Weigand Opp. at p. 13. This overstates the purpose and reach of Rule 17(c). In fact, "several cases articulate an *absolute prohibition* on the use of a Rule 17(c)

4

subpoena solely for impeachment purposes." *United States v. Weissman*, No. 01 CR. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (emphasis added) (*citing to United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981); *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981). Therefore, it is improper to require Circle to produce potential impeachment materials to defendants by way of a Rule 17(c) subpoena.

## IV. **The Protective Order Does Not Apply to Trial Materials.**

Disclosure of any of the requested documents poses a significant risk of economic and competitive harm to Circle. Defendants argue that this Court's Protective Order remedies any such harm, but the Protective Order "does not prevent the disclosure of any Third Party Discovery Material, including any designated as Highly Confidential, *in any hearing or trial held in this action . . .*" ECF No. 126 at ¶ 10 (emphasis added). In other words, the Protective Order does not protect Circle from having its proprietary and confidential business information *publicly disclosed at trial*.

Defendants next argue that disclosure of confidential information "is not sufficient grounds for quashing the subpoena." Weigand Opp. at p. 12. If that was the only reason for quashing the subpoena, defendants' argument would be stronger; but here, the subpoenaed material is neither material, admissible, nor specific. For those reasons—*and* for the competitive harm disclosure would cause Circle—the Court should quash the Subpoena.

## **CONCLUSION**

Accordingly, based on the arguments set forth herein and in its Memorandum of Law, Circle respectfully requests that this Court quash the Subpoena.

5

Dated: February 11, 2021					Respectfully submitted,


							/s/ *Matthew G. Lindenbaum*
							Matthew G. Lindenbaum (*pro hac pending*)
							NELSON MULLINS RILEY &
							SCARBOROUGH LLP
							One Financial Center, Suite 3500
							Boston, Massachusetts 02111
							Telephone: (617) 217-4700
							matthew.lindenbaum@nelsonmullins.com

							Robert L. Lindholm
							NELSON MULLINS RILEY &
							SCARBOROUGH LLP
							280 Park Avenue
							15th Floor, West
							New York, New York 10017
							Telephone: (646) 428-2600
							robert.lindholm@nelsonmullins.com

							*Attorneys for Non-Party*
							*Circle Internet Financial, LLC*