UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    - against -

HAMID "RAY" AKHAVAN, and
RUBEN WEIGAND,

    Defendants.

20-CR-188-JSR

**DEFENDANT HAMID ("RAY") AKHAVAN'S SUR-REPLY
MEMORANDUM OF LAW IN FURTHER OPPOSITION
TO CIRCLE INTERNET FINANCIAL LLC'S MOTION TO QUASH**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT............................................................................................................................2

I.      *TUCKER* SUPPLIES THE RELEVANT LEGAL STANDARD .....................................2

II.     THE SUBPOENA SEEKS RELEVANT EVIDENCE TENDING TO DISPROVE
        THE *BONA FIDES* OF THE SUPPOSED BANK "POLICIES" UNDERLYING
        THE GOVERNMENT'S CASE........................................................................................3

III.    THE SUBPOENA SEEKS RELEVANT EVIDENCE TENDING TO DISPROVE
        MATERIALITY ...........................................................................................................5

CONCLUSION.........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Silvercreek Mgmt. v. Citigroup, Inc.*, 346 F. Supp. 3d 492 (S.D.N.Y. 2018)................................. 5

*United States v. Crisci*, 273 F.3d 235 (2d Cir. 2001)....................................................................... 3

*United States v. Miller*, 953 F.3d 1095 (9th Cir. 2020) ................................................................. 3

*United States v. Nixon*, 418 U.S. 683 (1974) .............................................................................. 2, 8

*United States v. Perez-Ceballos*, 907 F.3d 863 (5th Cir. 2018)....................................................... 4

*United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008)............................................................ 2, 3

No table of authorities entries found.

Defendant Hamid ("Ray") Akhavan respectfully submits this sur-reply memorandum of law in further opposition to non-party Circle Internet Financial LLC's ("Circle's") motion to quash the third-party subpoena served upon it (the "Circle Subpoena") and specifically to the government's memorandum in support.

## PRELIMINARY STATEMENT

In supporting Circle's motion to quash, the government tries to exclude third-party evidence that would undermine core premises of this prosecution.  As clear as it is that responsive materials would be problematic for the government's case, it is equally clear that the government lacks any valid basis for opposing discovery of this evidence.

Notably, the government acknowledges that defendants may properly "challenge materiality in this case," while adding its gloss that, to do so successfully, "the defendants would have to show that the Government's identified victim financial institutions, which had policies prohibiting them from authorizing certain marijuana transactions, *knew* that certain transactions they were processing were for marijuana and yet that knowledge has [sic] no capability to influence their business decisions."  Government Memorandum of Law in Support of Circle's Motion to Quash ("Gov't Mem."), ECF No. 147, at 10 (emphasis in original).  At the very least, therefore, it should be common ground that defendants can properly defeat the government's case upon showing that banks as a rule are glad to process the sort of "marijuana transactions" at issue, with knowledge of the same, without "their business decisions" being influenced as a result.  That is precisely what defendants seek to establish via the Circle Subpoena, which the government steadfastly opposes in a naked effort to deny the defendants the benefit of exculpatory evidence otherwise available from a third party.

Further still, documents responsive to the Circle Subpoena would disprove a foundational premise of the government's whole case—the very notion that U.S. banks maintain "policies"

1

prohibiting marijuana-related transactions.  According to the government, defendants seek only to show that the policies at issue admit of gaps that can be exploited:  "[T]he defendants contend that the victim banks have not and cannot diligently police their policies prohibiting them from conducting business involving certain marijuana transactions."  Gov't Mem. at 6.  But that self-serving account elides the more fundamental import of the material now at issue:  That banks are *continuing* to process—not as an exception but as a rule—*innumerable* Eaze transactions that announce themselves as marijuana-related constitutes powerful evidence that banks do not, in fact, maintain policies as alleged.  In this sense, materials responsive to the Circle Subpoena may be fatal to this prosecution.

At bottom, the government's instant opposition confirms that it fears Circle's evidence as a substantive matter, without suggesting that the government has any good ground for opposing this evidence as a legal matter.  Circle's motion to quash should be denied and the Circle Subpoena should be enforced.

<u>**ARGUMENT**</u>

**I.      *TUCKER* SUPPLIES THE RELEVANT LEGAL STANDARD**

Circle renews its argument that *United States v. Nixon*'s (418 U.S. 683 (1974)) standard should apply to its subpoena, disparaging *United States v. Tucker*'s (249 F.R.D. 58 (S.D.N.Y. 2008))'s standard as a "minority position applied by a few district courts in this jurisdiction."  Circle's Reply in Support of Its Motion to Quash ("Circle Rep."), ECF No. 149, at 2.  Regardless, that minority includes this Court.  *See* Defendant Akhavan's Memorandum of Law in Opposition to Circle's Motion to Quash ("Akhavan Opp."), ECF No. 139, at 2–3 (citing, among others, November 9, 2020 Order (the "Order") at 2).  And the Court has good reason to stake out the position it has:  *Nixon* creates an "imbalance" and "'should not be unnecessarily

expanded'" to situations like this one.  Order at 2 (quoting *Tucker*, 249 F.R.D. at 66.  This Court

should apply *Tucker* here.

## II.     THE SUBPOENA SEEKS RELEVANT EVIDENCE TENDING TO DISPROVE THE *BONA FIDES* OF THE SUPPOSED BANK "POLICIES" UNDERLYING THE GOVERNMENT'S CASE

For most of its opposition, the government attacks a straw-person by arguing that

negligence is not a defense to fraud.  *See* Gov't Mem. at 6–12; *see also* Circle Rep. at 3–4.

Contrary to the government's account, however, the defense does not argue that the issuing

banks were merely "dilatory or lackadaisical," or that banks "should have or could have

discovered" that they were processing marijuana transactions.  Gov't Mem. at 10–11.  Instead,

the defense (which is best positioned to speak for itself as to its contentions) is preparing to show

at trial that the issuing banks were perfectly content to process marijuana-related transactions

while knowing full well they were doing so.  In other words, the supposed bank "policies" upon

which the government's case depends amount to mere fictions—fictions contrived to appease the

government and to toe its desired line in this case, without otherwise having any real existence or

import.  The government does not deny that its case fails if the defense disproves the *bona fides*

of the bank policies purporting to prohibit marijuana-related transactions.   Nor does the

government refute that the Circle Subpoena is calculated to serve this important purpose.

To state the obvious, there could be no "scheme to defraud" the banks if the banks were

alert yet indifferent to the alleged fraud.  *United States v. Crisci*, 273 F.3d 235, 240 (2d Cir.

2001) ("The government must prove that a bank was an actual or intended victim of defendant's

scheme."); *cf. United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020) ("[T]he government

can[not] escape the burden of showing that some actual harm or injury [to the victim's money or

property] was contemplated by the schemer.").[1]  At a minimum, a scheme to defraud requires

deception.  *United States v. Perez-Ceballos*, 907 F.3d 863, 868 (5th Cir. 2018) ("[A] scheme to

defraud … includes fraudulent pretenses or representations intended to deceive others.").

Consistent with these authorities, the defense will endeavor to establish, including via any fruits

of the Circle Subpoena, that banks have always been quite glad to process what they know to be

marijuana-related transactions, and that any contrary "policies" they may identify are mere

shams.  While accepting that a "victim's" negligence is not a defense to bank fraud, the defense

intends to put at issue whether the banks were in fact willing, informed participants in the

transactions at issue, rather than fraud victims.

The Circle Subpoena seeks evidence that would help prove the banks' eagerness to

process what they know to be marijuana transactions.  To this day, and fully aware of this case

and the allegations the government has raised, the issuing banks continue to process Circle-

enabled marijuana transactions that list Eaze in the descriptor.  This "two-step" process

effectively flags that it involves marijuana-related transactions, as even the government seems to

acknowledge.  *See* Gov't Mem. at 12 ("Of course, Circle's use of 'financial institutions'-related

MCC codes certainly obfuscates that the underlying transaction might involve the purchase of

marijuana.").  Evidence sought by the Circle Subpoena will show that the banks are still

processing Circle-enabled transactions—with eyes wide open to the government's allegations in

this case and equipped to see through any allegedly inaccurate MCC codes.

A reasonable juror could thus conclude that the banks have actual knowledge that their

customers are using their cards for marijuana transactions, and are processing those transactions

anyway.  And if the banks are doing so today, then a reasonable juror could disbelieve the banks'

---

[1]    Unless otherwise noted, we have omitted internal citations, quotation marks, and

government-pleasing proclamations about their "policies" and instead conclude that the banks were likewise willing to process marijuana-related transactions during the period charged by the indictment. In sum, the Circle Subpoena seeks "at the very least relevant circumstantial evidence from which a jury could infer actual knowledge." *Silvercreek Mgmt. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 492 (S.D.N.Y. 2018). Such knowledge refutes a bedrock premise of the government's bank-fraud case, and evidence of it should be available to the defense at trial.

## III.   THE SUBPOENA SEEKS RELEVANT EVIDENCE TENDING TO DISPROVE MATERIALITY

The evidence sought by the Circle Subpoena would also tend to disprove materiality. Again, the government expressly acknowledges that "materiality" is an essential element of its case and subject to "challenge" by the defense. Gov't Mem. at 10. Yet the government lacks any reason why the Circle Subpoena is not a rightful, important tool for the defense to mount its materiality challenge in front of the jury. Understanding that materiality will be hotly contested at trial, and the prosecution and the defense will advance competing contentions and proof specifically around it, it would be unfair to deny the defense readily-available evidence that would assist its side of this pivotal dispute. And the Circle Subpoena is calculated to yield evidence that the defendants' alleged misrepresentations were incapable of influencing—and in fact did not influence—the "victim" banks' decision to process these transactions.

That is because the banks made a conscious—and objectively reasonable—choice to process marijuana transactions. The banks profited off these transactions, after all, and they knew that their customers would bristle at any refusal to process what customers naturally understood to be lawful, legitimate transactions involving customers' own funds, at customers' own volition. Moreover, to the extent materiality must be assessed purely as an "objective"

---

alterations from citations in this brief.

matter, per the government's view, Gov't Mem. at 9 & n.4, the consistent, demonstrated, persisting willingness of mainstream banks to continue processing the same sort of transactions at issue without blinking, even in the wake of the government's allegations, is probative of what an objectively-reasonable bank would do.   Indeed, the materials responsive to the Circle Subpoena may leave the government hard-pressed to show that *any* bank is in fact doing what the government contends *all* banks should objectively be expected to do—namely, refuse to process what banks know to be marijuana-related transactions.  Defendants plan to prove at trial that the banks were objectively reasonable in processing marijuana-related transactions consistent with federal guidance, such as the Cole Memorandum, indicating that banks would not be prosecuted for doing so in states that specifically elected to legalize these transactions.  And the Circle Subpoena stands to turn up evidence that banks today are operating just as defendants contend objectively reasonable banks always have and always would under the relevant circumstances.

To be sure, banks may maintain plausible deniability by purporting to maintain "policies" against processing such transactions.  But the "policies" had no substance (beyond providing cover for banks) and were seldom, if ever, adhered to in practice.  In any event, however, the bottom line that matters to materiality is whether it was reasonable for banks to process marijuana-related transactions, and the Circle Subpoena will shine obvious and important light on that question by showing what a raft of banks are in fact doing as they continue to process marijuana-related transactions with eyes wide open.

The government misconstrues the defense's arguments as to materiality.  The cases cited by the government (Gov't Mem. at 9–10 & n.4) stand for the proposition that the government need not show that a *particular* bank actually relied on a misrepresentation to prove materiality.

6

But the Circle Subpoena does not seek evidence that a *particular* bank has failed to act on the knowledge that it is processing Circle-enabled marijuana transactions.  It instead seeks evidence that the *vast majority* (if not all) of the "victim" banks continue to do so.  Unless all of these banks are deemed unreasonable before any evidence is presented, the evidence sought by the Circle Subpoena is relevant to show the jury that an objectively reasonable bank might well (indeed, as a rule, does) choose to continue processing marijuana transactions, with full knowledge that the transactions are for marijuana.  And if that is so, then the jury might well conclude that the alleged misrepresentations by the defendants were immaterial.[2]

The government's other arguments are similarly unavailing.  The government argues that the defense "merely assume[s]" that the banks "understood that they were approving prohibited transactions."  Gov't Mem. at 11.  But the defense seeks to enforce the Circle Subpoena in order to *prove* that the banks knew that they were processing marijuana transactions.  That theory is far from speculative, given that the legal cannabis industry does more than $6 billion in sales per year[3] and continues to grow, common knowledge that banks offer services to that industry under the protection of non-prosecution assurances by the government,[4] and the fact that banks apparently approve transactions with the word "Eaze" in the descriptor on a routine daily basis.

---

[2]   It is worth noting that the Court need not agree with the defense's theory to deny Circle's motion to quash.  Materiality is a question for the jury, and it suffices to note that the jury should have the benefit of evidence from both sides before answering the question.

[3]   *See, e.g.*, Pat Evans, *8 incredible facts about the booming US marijuana industry*, Business Insider (May 7, 2019), https://markets.businessinsider.com/news/stocks/weed-us-marijuana-industry-facts-2019-5-1028177375.

[4]   *See, e.g.*, Danielle Douglas, *Obama administration clears banks to accept funds from legal marijuana dealers*, Wash. Post (Feb. 14, 2014), https://www.washingtonpost.com/business/economy/obama-administration-clears-banks-to-accept-funds-from-legal-marijuana-dealers/2014/02/14/55127b04-9599-11e3-9616-d367fa6ea99b_story.html ("The Obama administration on Friday gave the banking industry the green light to finance and do business with legal marijuana sellers.").

Especially considering that the relevant standard, even under *Nixon*, turns on whether the evidence sought is relevant, it cannot fairly be expected or demanded that defendants at this stage (where they are seeking simply to enforce a pre-trial subpoena) have *already* proved their case.[5]

Relatedly, the government asserts that the defense erroneously "assumes that the victim banks understand what Eaze is." Gov't Mem. at 11. Again, however, the government ignores the governing legal standard. Eaze was and is a popular cannabis distribution company that advertised itself as "Uber for weed."[6] A reasonable juror could easily infer that the issuing banks knew what Eaze was. Indeed, it would be difficult not to so infer. Yet the government effectively asks this Court to deny the jury any chance to draw that inference simply because the jury *might* infer otherwise. It should suffice to note that the jury deserves the benefit of all relevant evidence, and that the evidence at issue amply satisfies that standard.

The government also argues that the defense will have to show a particular "transaction was a prohibited one, *i.e.* that it involved the sale of marijuana products, as opposed to legal CBD products."[7] Gov't Mem. at 11. Not so. Provided the banks were processing *thousands* of Eaze transactions, it is implausible that they believed *none* of those transactions involved cannabis. Nor will the defense struggle to show the banks *knew* that consumers were ordering

---

[5]   Because the government and Circle do not contest that the Circle Subpoena satisfies *Nixon*'s other prongs (admissibility and specificity) in their most recent submissions, this sur-reply discusses only relevance. *See generally* Gov't Mem. (contesting relevance but failing to contest admissibility or specificity); Circle Rep. (dropping arguments that the Circle Subpoena fails on admissibility or specificity grounds).

[6]   Max Cherney, *Yes, There Is an "Uber for Weed"*, Vice (Aug. 1, 2014), https://www.vice.com/en/article/d73x4j/finally-there-is-an-uber-for-weed.

[7]   This theory is particularly suspect as the defense is not aware of any evidence the government has produced showing that any individual Eaze-related transaction it seeks to use against the defendants involved illegal marijuana rather than, for example, entirely legal rolling papers. If the government nonetheless presupposes the illegality of those transactions, it has no principled basis for characterizing these transactions any differently.

marijuana through Eaze.  Lest there be any doubt, evidence to this effect has already been provided to the government and listed on the defense exhibit lists.

The government's final argument is that the evidence sought by the Circle Subpoena is irrelevant because Circle-enabled marijuana transactions are processed differently from other marijuana transactions that the banks process.  Gov't Mem. at 12.  Again, however, the government misses the point.  The point is not that the banks process Circle-enabled marijuana transactions in the same way as other marijuana transactions.  Rather, the evidence sought by the Circle Subpoena will tend to prove that the issuing banks *know and do not care* that they are processing marijuana transactions.

For its part, Circle argues that when consumers use its platform to purchase marijuana, "[n]o one is misled, deceived, or lied to in any way."  Circle Rep. at 4.  We agree.  The issuing banks know that consumers are using Circle to purchase marijuana no less than they knew that consumers were using their credit and debit cards to purchase marijuana during the period at issue in the indictment.  Circle's argument that the issuing banks have actual knowledge of this arrangement while nonetheless continuing to process these transactions only confirms the potency of this evidence in proving that issuing banks do not, did not, and would not, as a rule, hesitate to process marijuana-related transactions.  It follows that this evidence is relevant, to say the least, to the materiality element and therefore the worthy object of a subpoena.

## CONCLUSION

For the foregoing reasons, Circle's motion to quash should be denied.

Dated: February 16, 2021

ROTHKEN LAW FIRM
*/s/ Ira Rothken*
Ira Rothken
Jared Smith
3 Hamilton Landing
Suite 280
Novato, CA 94949
Telephone: (415) 924-0425
Email: ira@techfirm.net
Email: jared@techfirm.net

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*/s/ William A. Burck*
William A. Burck
Derek L. Shaffer
777 6th Street NW 11th floor
Washington, DC 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
Email: williamburck@quinnemanuel.com
Email: derekshaffer@quinnemauel.com

Christopher Tayback
Mari F. Henderson
865 S Figueroa Street 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
Email: christayback@quinnemanuel.com
Email: marihenderson@quinnemanuel.com

Sara C. Clark
711 Louisiana St., Ste. 500
Houston, Texas 77002
Telephone: (713) 221-7000
Fax: (713) 221-7100
Email: saraclark@quinnemanuel.com