UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>HAMID "RAY" AKHAVAN, and RUBEN WEIGAND,<br><br>Defendants. | 20-CR-188-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF HAMID ("RAY") AKHAVAN'S MOTION *IN LIMINE* #2: TO EXCLUDE QUANTUM SOLUTIONS AND MASTERCARD DOCUMENTS PRODUCED IN RESPONSE TO THE GRAND JURY SUBPOENA**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

I. THE COURT SHOULD EXCLUDE EVIDENCE OF DOCUMENTS RECEIVED IN RESPONSE TO THE GRAND JURY SUBPOENAS .............................3

II. QUANTUM SOLUTIONS DOCUMENTS WERE NOT ONLY IMPROPERLY OBTAINED, THEY ARE INADMISSIBLE DUE TO LACK OF FOUNDATION ..........................................................................................................5

CONCLUSION .................................................................................................................................7

i

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Hampson v. State Farm Mut. Auto Ins. Co.*,
  2015 WL 12733388 (N.D.N.Y. Oct. 22, 2015) ............................................................... 5, 6

*In re Grand Jury Proceedings (Diamante)*,
  814 F.2d 61 (1st Cir. 1987) ................................................................................................ 3

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*,
  767 F.2d 26 (2d Cir. 1985) ................................................................................................ 3

*In re Lyondell Chem. Co.*,
  2016 WL 6108526 (Bankr. S.D.N.Y. Oct. 19, 2016) ........................................................ 6

*New World Trading Co. v. 2 Feet Prods., Inc.*,
  2014 WL 988475 (S.D.N.Y. Mar. 13, 2014) ..................................................................... 6

*Park W. Radiology v. CareCore Nat. LLC*,
  675 F. Supp. 2d 314 (S.D.N.Y. 2009) ............................................................................... 6

*Penberg v. HealthBridge Mgmt.*,
  823 F. Supp. 2d 166 (E.D.N.Y. 2011) ............................................................................... 5

*United States v. Flemmi*,
  108 F. Supp. 2d 39 (D. Mass. 2000), *rev'd* 245 F.3d 24 (1st Cir. 2001) .......................... 4

*United States v. Punn*,
  737 F.3d 1 (2d Cir. 2013) .................................................................................................. 4

*United States v. Dardi*,
  330 F.2d 316 (2d Cir. 1964) ........................................................................................... 3, 5

*United States v. Doe (Application of Ellsberg)*,
  455 F.2d 1270 (1st Cir. 1972) ............................................................................................ 5

*United States v. Dyer*,
  722 F.2d 174 (5th Cir. 1983) ............................................................................................. 5

*United States v. Jones*,
  129 F.3d 718 (2d Cir. 1997) .............................................................................................. 3

*United States v. Vanwort*,
  887 F.2d 375 (2d Cir. 1989) .............................................................................................. 3

### **Rules**

Fed. R. Evid. 803(6)(B) .............................................................................................................. 5

Defendant Hamid ("Ray") Akhavan respectfully submits this memorandum of law in support of his motion *in limine* to exclude documents produced by Quantum Solutions and MasterCard in response to grand jury subpoenas.

## PRELIMINARY STATEMENT

On March 11, 2020 the government issued a grand jury subpoena to Quantum Solutions Inc.—a company affiliated with Mr. Akhavan—for documents. Thereafter, on March 27, 2020, Mr. Akhavan was indicted on a charge of conspiracy to commit bank fraud and his co-defendant, Ruben Weigand, was charged in the same count in a superseding indictment on March 31, 2020. To date, no other superseding or separate indictment has been filed.

On April 1, 2020, the government issued a grand jury subpoena to MasterCard International Incorporated. Some of these documents, produced on May 5, 2020, are now listed as trial exhibits (2301-2309), and include transaction lists, compliance records, merchant spreadsheets and email correspondence related to an investigation.

Quantum Solutions also produced documents in response to the grand jury subpoena that the government now seeks to use against Mr. Akhavan at trial. Namely, the government intends to introduce 27 exhibits (901-927), briefly described below:

- 901-902: 8/9/16 Correspondence between Guy Mizrachi and Craig and Cameron Wald regarding a credit card processing agreement and factoring agreement.
- 903: 11/1/16 Automated correspondence from Clearsettle to Medhat Mourid regarding creation of the merchant Eaze.
- 904: 9/2/17 Correspondence from Keith McCarty to Tanya Wilkins regarding setting up a meeting between Mr. Akhavan, Jim Patterson and John Wang from Eaze.
- 905: 12/13/16 Correspondence from Jim Patterson to Medhat Mourid regarding billing descriptors.
- 906: 6/15/17 Correspondence from Kat Cruz to Mr. Akhavan listing domains registered by Eaze.

1

- 907: 7/19/2017 Correspondence from Medhat Mourid to Markou Markos regarding Eaze site names and descriptors.
- 908: 9/12/17 Correspondence from Koen Vanpreat to Tanya Wilkins, Guy Mizrachi and Medhat Mourid requesting a call to discuss his solution for Eaze processing.
- 909: 9/14/17 Correspondence between Medhat Mourid and Rory regarding sites, URLs and descriptors.
- 910: Notice of Grant of Stock Option between Eaze Solutions CEO James Patterson and Green Pasture Holding, LLC Manager Hamid Akhavan.
- 911: 17-page word document draft of Eaze Meal Plan and Eaze Workout Plan
- 912: 10/30/17 Calendar notification for a meeting organized by Tanya Wilkins for Keith McCarty and Roie Edery.
- 913: 12/22/17 Correspondence between Guy Mizrachi and Daniel Wallace from Clearsettle regarding settlement reports for Eaze Merchants.
- 914: 1/2/18 Correspondence between Guy Mizrachi and Medhat Mourid regarding Eaze billing descriptor.
- 915: 1/4/18 Calendar notification for a meeting between Keith McCarty, Tanya Wilkins, Jim Patterson and Ray Akhavan.
- 916: 8/23/16 Correspondence between Mr. Akhavan, Guy Mizrachi, Ozan Ozerk, and Anil Uzun regarding fee charges to clients.
- 917: 9/2/16 Correspondence between Mr. Akhavan, Jim Patterson, and Medhat Mourid regarding aliases for domains.
- 918: 9/19/16 Correspondence between Mr. Akhavan, Jim Patterson, and Dan Erickson regarding the correct domain to use for credit card collections.
- 919: 11/16/16 Correspondence from Guy Mizrachi to Medhat Mourid regarding language to Eaze website users about charges to appear on their credit card statements.
- 920: 6/15/17 Correspondence from Kat Cruz to Mr. Akhavan listing domains registered by Eaze.
- 921: 8/14/17 Correspondence from Kat Cruz to Guy Mizrachi regarding the status of issuing merchant IDs.

- <u>922</u>: 8/17/17 Correspondence between Kat Cruz and Jolanta Narmontaite regarding companies, URLs, and descriptors.
- <u>923</u>: 8/18/17 Correspondence between Kat Cruz, Michael Burtscher, Ulrikke Skov Kejser, and Birgitte Bjerregaard Jensen regarding additional accounts for Eaze.
- <u>924</u>: 10/12/17 Correspondence from Kat Cruz to Mr. Akhavan listing corporations submitted to Kalixa.
- <u>925</u>: 12/13/17 Correspondence between Koen Vanpraet, Oliver Hargreaves, Medhat Mourid, Kat Cruz, and Guy Mizrachi regarding Eaze processing history data.
- <u>926</u>: 11/16/16 Correspondence from Guy Mizrachi to Medhat Mourid regarding language to Eaze website users about charges to appear on their credit card statements.
- <u>927</u>: 8/9/16 Processing Contract between Genc & Er Bilism Ltd. and Sweetwood Patients' Cooperative, Inc.

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE EVIDENCE OF DOCUMENTS RECEIVED IN RESPONSE TO THE GRAND JURY SUBPOENAS

The law is settled that "[i]t is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir. 1964); *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997); *United States v. Vanwort*, 887 F.2d 375, 387 (2d Cir. 1989).[1] This rule "is the application of a legal standard designed to ensure that the grand jury, a body operating peculiarly under court supervision is not misused by the prosecutor for trial preparation." *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985).

While a trial prosecutor "may use evidence *incidentally* gained from a grand jury primarily investigating *other crimes*," the prosecutor cannot use the grand jury to obtain evidence for use at trial. *In re Grand Jury Proceedings (Diamante)*, 814 F.2d 61, 70 (1st Cir. 1987)

---

[1] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.

(emphasis added). "It is … essential that (1) the government be genuinely investigating another crime, rather than the crime charged in the pending indictment, and (2) the evidence at issue be obtained incident[al]ly in that investigation." *United States v. Flemmi*, 108 F. Supp. 2d 39, 44 (D. Mass. 2000), *rev'd* 245 F.3d 24 (1st Cir. 2001).

Here, there is no evidence that the government may be developing a superseding or separate indictment charging another person with an offense already alleged in the existing indictment. Likewise, there is no evidence that Mr. Akhavan will be charged with other crimes by this District. Thus, it appears that the "sole or dominant purpose" of the issuance of the Quantum Solutions grand jury subpoena was to prepare for Mr. Akhavan's trial and that these documents were *primarily* gained from the grand jury for the purpose of using them against Mr. Akhavan at trial. As a result, the Quantum Solutions grand jury subpoena was used for an improper purpose and the appropriate remedy would be to exclude such evidence at trial.

Similarly, the timing of the grand jury subpoena to MasterCard shows that the "sole or dominant purpose" of its' issuance was to prepare for Mr. Akhavan's trial, rather than as part of a grand jury investigation. The subpoena was issued one day *after* the second superseding indictment in the case. Accordingly, MasterCard documents received in response to this subpoena which the government seeks to introduce at trial should also be excluded.

When a grand jury subpoena has been issued for an improper purpose, courts have excluded the evidence gathered in violation of the rule at trial. "[M]otions that allege improper use of the grand jury for trial preparation ultimately seek to prevent trial prejudice. Any improper acquisition of evidence by the government through such abuse can thus be dealt with at trial by excluding such evidence." *United States v. Punn*, 737 F.3d 1, 10 (2d Cir. 2013).

In several cases, the rule against using a grand jury subpoena predominantly for trial preparation has been enforced by barring use at trial of evidence obtained pursuant to the subpoena, thereby leaving the grand jury's access to the evidence unimpaired. *See United States v. Dyer*, 722 F.2d 174, 178–79 (5th Cir. 1983) (A court should allow evidence at trial "only after it is convinced that the government effort to obtain and use the evidence was in good faith and was not an abuse of the grand jury."); *United States v. Doe (Application of Ellsberg)*, 455 F.2d 1270, 1276 (1st Cir. 1972) (The court could "proscribe the calling of a witness whose testimony" before the grand jury "appeared to have been elicited chiefly for its contribution to the trial."); *Dardi*, 330 F.2d at 336 (In considering suppression of evidence, the court looked to whether the grand jury subpoena constituted "the use of a Grand Jury as a subterfuge to elicit testimony for use at this trial.").

## II.   QUANTUM SOLUTIONS DOCUMENTS WERE NOT ONLY IMPROPERLY OBTAINED, THEY ARE INADMISSIBLE DUE TO LACK OF FOUNDATION

The government seeks to admit the 27 exhibits described above as business records and issued a trial subpoena for a custodian of records to lay the foundation for these documents. However, these documents were not records kept in the course of a regularly conducted activity of a business, as required under Federal Rule of Evidence 803(6)(B).  As a result, while a custodian of records can testify these emails came from the Quantum server, the witness would not be able to establish each of these communications meets the business records exception to the hearsay rule.  "The argument that emails are kept as a regular operation of the business is simply insufficient on that basis alone to establish a foundation for admission under Rule 803(6)(B)."  *Hampson v. State Farm Mut. Auto Ins. Co.*, 2015 WL 12733388, at *7 (N.D.N.Y. Oct. 22, 2015).  No Quantum witness is able to testify that it was the regular business practice for the employee to share the type of information in these emails and that it was the employee's duty

5

to email clients with that type of information. *See Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 188–89 (E.D.N.Y. 2011).

Rather, emails that "contain unique and sporadic communications" are not a record of regularly conducted business activity. *New World Trading Co. v. 2 Feet Prods., Inc.*, 2014 WL 988475, at *1 (S.D.N.Y. Mar. 13, 2014). These dozen emails were sent over the course of 18 months to and from various non-Quantum recipients regarding a range of topics from descriptors to domains to settlement reports. Some of these emails were simply requests to meet or calendar notifications regarding one-off meetings that were not regularly scheduled business meetings. They were not emails sending a weekly report or recording the agenda of a regularly-occurring meeting. *See In re Lyondell Chem. Co.*, 2016 WL 6108526, at *3–4 (Bankr. S.D.N.Y. Oct. 19, 2016).

These emails were "more akin to telephone calls than to records of a regularly conducted activity." *Hampson*, 2015 WL 12733388, at *8 (Emails at issue were not admissible as business records because they were "simply the sort of sentiments which coworkers may, but are not obligated to, exchange from time to time."). Quantum "employees were not under an obligation to create the emails as a record of regularly conducted business activity," so they aren't admissible as business records. *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 333 (S.D.N.Y. 2009).

In this Court's order on the government's letter motion *in limine* regarding business records, it recognized that email records from Eaze do not automatically qualify as business records for these very reasons. *See* Memorandum Order on Government Letter Motion *in Limine*, ECF No. 151. As this Court stated, "[t]he mere fact that Eaze requires its employees to send and receive emails, in general, does not mean that every Eaze employee email is self

6

authenticating.  Put differently, Rule 803(6) speaks not of the medium by which a record is recorded (*e.g.*, email) but rather the content of the record itself."  *Id*.

Other than email communications, the government also seeks to admit a grant of Eaze stock options to Mr. Akhavan, a draft of an Eaze meal and workout plan and an Eaze processing contract as Quantum business records.  These three discrete documents, related to *Eaze*, cannot be established as records kept in the course of regularly conducted activity at *Quantum*.  Nor can a Quantum custodian of records lay the foundation for these documents.

The Quantum Solutions documents also present a concern under the Confrontation Clause, just as the Court recognized with regard to the Eaze emails.  If the "primary purpose" of an email, or document, "is to establish or prove past events potentially relevant to later criminal prosecution," that evidence is testimonial.  *Davis v. Washington*, 547 U.S. 813, 822 (2006).  The defendant must be permitted to cross-examine the declarant of testimonial evidence.  Thus, the government cannot simply rely on testimony from a custodian of records about the Quantum Solutions documents because doing so would raise serious Confrontation Clause concerns.

Accordingly, even if the Court finds these documents were properly obtained through a grand jury subpoena, these exhibits should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should exclude all evidence obtained in response to the March 11, 2020 grand jury subpoena to Quantum Solutions, Inc., including Exhibits 900-927, and the April 1, 2020 grand jury subpoena to MasterCard, including Exhibits 2301-2309.

Dated: February 16, 2021

| ROTHKEN LAW FIRM | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| */s/ Ira Rothken* | */s/ William A. Burck* |
| Ira Rothken | William A. Burck |
| Jared Smith | Derek L. Shaffer |
| 3 Hamilton Landing | 777 6th Street NW 11th floor |
| Suite 280 | Washington, DC 20005 |
| Novato, CA 94949 | Telephone: (202) 538-8000 |
| Telephone: (415) 924-0425 | Fax: (202) 538-8100 |
| Email: ira@techfirm.net | Email: williamburck@quinnemanuel.com |
| Email: jared@techfirm.net | Email: derekshaffer@quinnemauel.com |

Christopher Tayback
Mari F. Henderson
865 S Figueroa Street 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
Email: christayback@quinnemanuel.com
Email: marihenderson@quinnemanuel.com

Sara C. Clark
711 Louisiana St., Ste. 500
Houston, Texas 77002
Telephone: (713) 221-7000
Fax: (713) 221-7100
Email: saraclark@quinnemanuel.com