UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    - against -

HAMID "RAY" AKHAVAN, and
RUBEN WEIGAND,

      Defendants.

20-CR-188-JSR

 

**MEMORANDUM OF LAW IN SUPPORT OF HAMID ("RAY") AKHAVAN'S MOTION
*IN LIMINE* #4: TO PRECLUDE THE GOVERNMENT FROM ELICITING
DISGUISED EXPERT TESTIMONY FROM CERTAIN WITNESSES**

# TABLE OF CONTENTS

**Page**

ARGUMENT .......................................................................................................................1

THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ELICITING DISGUISED EXPERT TESTIMONY ............................................................................1

CONCLUSION...................................................................................................................6

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bank of China v. NBM LLC*,
   359 F.3d 171 (2d Cir. 2004) ........................................................................... 4

*Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*,
   716 F. App'x 5 (2d Cir. 2017) ...................................................................... 5

*United States v. Barnwell*,
   2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017) ................................................ 2, 6

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005) ...................................................................... 2, 5

## Rules

Fed. R. Evid. 701 ............................................................................................. 2, 4

Fed. R. Evid. 701(c) ........................................................................................... 1

Fed. R. Evid. 702 ......................................................................................... 1, 2, 5

Defendant Hamid ("Ray") Akhavan respectfully submits this memorandum of law in support of his motion *in limine* to preclude the government from eliciting disguised expert testimony from the following witnesses: (1) a representative from Citibank; (2) Richard Clow from Bank of America; (3) a representative from JP Morgan Chase; (4) a representative from Wells Fargo; (5) Martin Elliot from Visa; (6) John Verdeschi from MasterCard; (7) James Patterson; and; (8) John Wang.

**ARGUMENT**

**THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ELICITING DISGUISED EXPERT TESTIMONY**

The Court should not permit the government to introduce expert testimony through the mouths of bank and credit card industry professionals and Eaze executives, all of whom it purportedly intends to call as fact witnesses.

All eight individuals appear on the government's witness list, and based on the government's Jencks Act disclosures produced to date, it appears the government will seek to introduce detailed testimony regarding rules, regulations, policies and procedures related to risk monitoring and compliance from issuing bank and credit card industry professionals, as well as payment processing procedures from Eaze executives. These topics are well outside the scope of permissible testimony under Federal Rule of Evidence 701. *See* Fed. R. Evid. 701(c) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is[] not based on scientific, technical, or other specialized knowledge within the scope of Rule 702".); *see also* Fed. R. Evid. 702 (establishing requirements for expert testimony). But the government never noticed an expert in this case, nor provided the required disclosures, and the Court-ordered deadline for doing so was November 3, 2020, more than three months ago. The Court should limit these witnesses' testimony strictly to what they observed and preclude them

from offering their views on the meaning of relevant transaction monitoring and compliance principles or the propriety of Eaze's payment processing practices. Moreover, the Court should order the government to disclose a summary of what they intend to elicit from these witnesses in light of the "risk that … [the] non-expert summary witness testimony will be used as an end-run around the government's expert witness disclosure obligations." *United States v. Barnwell*, 2017 WL 1063457, at *3 (S.D.N.Y. Mar. 20, 2017).[1]

Knowledge of transaction monitoring and compliance and payment processing systems is precisely the type of "technical[] or other specialized knowledge" the "admissibility [of which] must be determined by reference to Rule 702, not Rule 701." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Here, the government appears primed to go beyond what Rule 701 authorizes from a non-expert witness.

The government's Jencks Act disclosures for Charles Lisanti, Citi's Global Head of AML Compliance and Risk Management, and Rosemary Stack, Bank of America's Senior Vice President on Card Payments Strategy, for example, contain discussions about how they monitor marijuana transactions.[2] The notes reflect a discourse on algorithms and test transactions, bank policies, rules and regulations regarding marijuana and the relationships, roles and responsibilities between issuing banks, acquiring banks, card networks and third party payment processors. Mr. Akhavan presumes the government's unnamed witnesses from Wells Fargo and

---

[1] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.

[2] To date, the government has not produced updated 3500 statements from the unnamed witness they intend to call from Citi, nor has the government provided a 3500 statement from Mr. Clow. However, it is our understanding each witness will testify to the same, or similar, subject matter as what is contained in these earlier 3500 statements from other representatives at the same banks.

JP Morgan Chase, who appear on the witness list as simply "witness," will likewise testify regarding their specialized knowledge of risk monitoring and compliance.[3]

Similarly, on two separate occasions, Mr. Elliot, Visa's Global Vice President of Franchise Risk Management, apparently walked the government through Visa's fraud dispute and brand protection programs, describing what they consist of, how they are executed, and what the purpose of these programs are. Meanwhile, Mr. Verdeschi, a Senior Vice President at MasterCard, explained to the government how MasterCard's Business Risk Assessment Mitigation ("BRAM") program works and described how the card network detects and reports illegal transactions.

The government's disclosures of notes of interviews with James Patterson and John Wang contain their descriptions of how Eaze's credit card processing purportedly works, including the role of gateways, independent sales operators (ISOs), and merchant banks. This material includes the opinions of Mr. Patterson and Mr. Wang regarding the selection of merchant category codes and merchant descriptors, as well as statements regarding policies of banks, Visa and MasterCard vis-à-vis cannabis businesses. Based on this material, the defense expects that Mr. Patterson would testify that banks would do business with only a select number of cannabis-related customers because such business impose a heavier compliance burden. The defense expects that Mr. Wang would testify that he believed that Visa and MasterCard might shop on descriptor websites and attempt to call customer service numbers to verify that they are genuine.

---

[3]   The government recently updated its witness list naming a "JP Morgan Chase witness" to a "JP Morgan Chase records custodian witness." To the extent this witness testifies regarding risk monitoring and compliance, or other specialized knowledge, we seek to exclude such testimony.

This material suggests the government may attempt to elicit testimony from Mr. Patterson and Mr. Wang regarding their specialized knowledge of credit card processing, and the roles of various entities therein.

The government cannot offer this testimony under Rule 701. The Jencks material makes clear that the government intends for issuing bank and credit card network witnesses to testify about the meaning and purpose of certain bank and card network policies and risk monitoring practices and then to offer their view on how marijuana transactions *should* have been accounted for under the relevant bank and credit card network rules and regulations. Moreover, the relevant policies, rules and regulations are open to interpretation, as the defense experts will testify. The 3500 materials suggest that the government intends to use Mr. Patterson and Mr. Wang to explain how credit card processing works from a merchant perspective, and to opine on what processing activity was and was not permitted under applicable banking and Visa and MasterCard regulations. While Mr. Akhavan cannot know for sure what these witnesses' opinions will be by the time they finish cross-examination, it is clear that, as of now, the relevant monitoring and compliance principles and alleged policy prohibitions on marijuana are very much in dispute.

In these circumstances, the Court should preclude the government from offering undisclosed "expert[s] in lay witness clothing." *Bank of China v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004) (quoting Fed. R. Evid. 701 advisory committee's note). Mr. Clow, Mr. Elliot, Mr. Verdeschi and witnesses from Citi, Wells Fargo, and JPMorgan Chase should not be allowed to draw on specialized knowledge that is neither "based on [their] perceptions" nor "a product of [their] investigation[s]" to opine on the relevant bank and card network rules or their application. *Id.* at 181–82 (witness's "explanations regarding typical international banking transactions [and]

definitions of banking terms, and any conclusions that he made that were not a result of his investigation, were improperly admitted"); *see also Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 11 (2d Cir. 2017) (where "a witness who has personal familiarity with the facts of a case nevertheless bases his opinions as to those facts on specialized or technical knowledge extrinsic to that personal, relevant experience—i.e. reasoning processes unfamiliar to average persons—then a district court does not necessarily abuse its discretion in finding the opinions to be expert"); *Garcia*, 413 F.3d at 216–17 (district court erred by admitting case agent's testimony about roles of conspirators' and meaning of code words because it was based on "considerable specialized training and experience in narcotics trafficking"). Nor should Eaze witnesses be allowed to draw on specialized knowledge regarding credit card processing at Eaze to opine on the applicable policies, rules and regulations governing banking relationships with marijuana-related businesses or processing of marijuana on credit card networks. The government chose not to notice any expert testimony under Rule 702. It may not now bring it in through the backdoor.

Accordingly, the Court should issue a pre-trial order precluding Mr. Clow, Mr. Elliot, Mr. Verdeschi and witnesses from Citi, Wells Fargo and JPMorgan Chase from opining on the relevant monitoring and compliance rules, alleged policy prohibitions and how the transactions at issue should have been treated under them unless they are properly designated as expert witnesses. The Court should also preclude Mr. Patterson and Mr. Wang from opining on the specifics of credit card processing, and the rules governing either the banking of marijuana related businesses or the processing of marijuana related credit card transactions by Visa or MasterCard. Just as the defense did for their expert witnesses, the Court should order the government to disclose a summary of each of these witnesses testimony in light of the "risk that

… [the] non-expert summary witness testimony will be used as an end-run around the Government's expert witness disclosure obligations." *Barnwell*, 2017 WL 1063457, at *3.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should preclude the government from eliciting disguised expert testimony from issuing bank, card network and Eaze witnesses.

Dated: February 16, 2021

ROTHKEN LAW FIRM
*/s/ Ira Rothken*
Ira Rothken
Jared Smith
3 Hamilton Landing
Suite 280
Novato, CA 94949
Telephone: (415) 924-0425
Email: ira@techfirm.net
Email: jared@techfirm.net

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*/s/ William A. Burck*
William A. Burck
Derek L. Shaffer
777 6th Street NW 11th floor
Washington, DC 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
Email: williamburck@quinnemanuel.com
Email: derekshaffer@quinnemauel.com

Christopher Tayback
Mari F. Henderson
865 S Figueroa Street 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
Email: christayback@quinnemanuel.com
Email: marihenderson@quinnemanuel.com

Sara C. Clark
711 Louisiana St., Ste. 500
Houston, Texas 77002
Telephone: (713) 221-7000
Fax: (713) 221-7100
Email: saraclark@quinnemanuel.com