UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>HAMID "RAY" AKHAVAN, and<br>RUBEN WEIGAND,<br><br>Defendants. | 20-CR-188-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF HAMID ("RAY") AKHAVAN'S MOTION
*IN LIMINE* #5: TO PRECLUDE EVIDENCE REGARDING TRANSACTION
VOLUMES AND COMMERCIAL SETTLEMENT ACCOUNTS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1
ARGUMENT................................................................................................................................2
I.     THE COURT SHOULD EXCLUDE ARGUMENT REGARDING OR
REFERENCE TO TOTAL TRANSACTION VOLUME AS "LOSS" OR
"HARM" TO ISSUING BANKS, OR AS PROFIT TO THE DEFENDANTS ..................2
   A.   There Is No Evidence That the $100 Million Is Related to Loss, Harm or Illicit Profit, and It Is Thus Irrelevant................................................................................................... 2
   B.   Reference to Loss, Harm, or Profit Is Likely To Confuse the Jury and Is More Prejudicial Than Probative ........................................................................................... 2
II.    THE COURT SHOULD EXCLUDE ANY TESTIMONY BY FINANCIAL
INSTITUTIONS REGARDING THE SETTLEMENT TRANSACTIONS.......................3
   A.   The Settlement Transactions Are Irrelevant ....................................................... 4
   B.   Even if Relevant, the Settlement Transactions Should Be Excluded Under Rule 403....... 5
CONCLUSION.............................................................................................................................7

# TABLE OF AUTHORITIES

### Cases

*Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421 (S.D.N.Y. July 14, 2005) .................. 5

*United States v. Altman*, 48 F.3d 96 (2d Cir. 1995) ........................................................................ 4

*United States v. Birney*, 686 F.2d 102 (2d Cir. 1982) ..................................................................... 5

*United States v. Dowtin*, 2012 WL 7679552 (E.D.N.Y. Nov. 20, 2012) ........................................ 3

*United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008) ............................................................... 4

*United States v. Schatzle*, 901 F.2d 252 (2d Cir. 1990) .................................................................. 6

*United States v. Sterling*, 2017 WL 2304024 (S.D.N.Y. May 24, 2017) ........................................ 6

### Rules

Fed. R. Evid. 401 ............................................................................................................................. 2

Fed. R. Evid. 402 ............................................................................................................................. 2

Fed. R. Evid. 403 ........................................................................................................................ 2, 5

Defendant Hamid ("Ray") Akhavan respectfully submits this memorandum of law in support of his motion *in limine* to preclude the government from presenting evidence regarding total transaction volume or evidence intended solely to show transactions associated with commercial settlement accounts.

## PRELIMINARY STATEMENT

Both in the Indictment and subsequent filings, the government has made repeated reference to its allegation that this is a $100 million fraud case because, allegedly, $100 million in transactions were conducted during the relevant time period in which credit or debit card users purchased cannabis products with their Visa or MasterCard branded cards. On its exhibit list, the government has also disclosed that it intends to offer into evidence thousands of pages of documents regarding commercial or business accounts held by marijuana dispensaries or related entities (the "Business Account Evidence"). These documents purport to show, among other things, that the dispensaries, or related entities, received certain deposits related to their business conducted through Eaze (the "Settlement Transactions").

Mr. Akhavan moves to exclude references to the $100 million, and to exclude documents and testimony regarding deposits into commercial accounts from the seven witnesses the government intends to call regarding these documents: (1) Bank of America, (2) Citibank, (3) Wells Fargo, (4) Bank of the West, (5) Union Bank, (6) JP Morgan Chase, and (7) U.S. Bank.[1] Calling these witnesses and introducing this voluminous evidence would mislead and confuse the issues for the jury and will be a waste of time given that such evidence neither proves nor negates any element of the crime charged.

---

[1] Specifically, Mr. Akhavan moves to exclude GX2406, GX2417–20 (Bank of America), GX2509 (Citibank), GX2601–08, 2610 (Wells Fargo), GX 3002–03 (Bank of the West), GX3301 (Union Bank), GX3402–04 (JP Morgan Chase), and GX3503–04 (U.S. Bank).

**ARGUMENT**

I. **THE COURT SHOULD EXCLUDE ARGUMENT REGARDING OR REFERENCE TO TOTAL TRANSACTION VOLUME AS "LOSS" OR "HARM" TO ISSUING BANKS, OR AS PROFIT TO THE DEFENDANTS**

   A. **There Is No Evidence That the $100 Million Is Related to Loss, Harm or Illicit Profit, and It Is Thus Irrelevant**

The government has alleged in the Indictment that over $100 million in transactions were processed, and has shown a propensity in its filings to highlight that number—a characterization that is at best misleading in a case where no one lost any money. That number remains untethered to any purported, alleged, or even inferential suggestion that any of the issuing banks—or anyone else in the scheme—lost any money at all. The "$100 million" is also uncorrelated to any gains (because there were none) by Mr. Akhavan—the Indictment does not allege, and there is no evidence to support, that Mr. Akhavan profited from the charged conduct in any way.[2] The "$100 million" is nothing more than the government's eye catching headline, and is irrelevant to any element of the charged bank fraud conspiracy. It is irrelevant and should be excluded. *See* Fed. R. Evid. 401–02 (only relevant evidence is admissible).

   B. **Reference to Loss, Harm, or Profit Is Likely To Confuse the Jury and Is More Prejudicial Than Probative**

Even if marginally relevant, the Court should exclude evidence of the transaction volumes because it is likely to confuse the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

---

[2] The government purports to use as an exhibit an unexecuted draft stock options grant to Mr. Akhavan. GX 910, EZSC1_003371. The Defense disputes that any stock option was ever exercised. That document, if admissible, is of limited probative value, and should be the only instance in which the government can refer to Mr. Akhavan's financial interests.

Reference to and argument regarding loss, harm, or profit, if admitted, is only likely to confuse the jury. Even if such testimony is minimally relevant, there is a substantial risk the jury will infer from references to the $100 million that the transaction volume is intended to represent either harm or loss to a bank, or gain to the defendant—a conclusion entirely unsupported by any evidence in this case. *United States v. Dowtin*, 2012 WL 7679552, at *5 (E.D.N.Y. Nov. 20, 2012) ("[C]ourts must be scrupulous to avoid the specter of . . . guilt by confusion.").[3]

Accordingly, the government should be precluded from arguing that this is a "$100 million fraud," or suggesting any "loss," "harm," or other negative economic effect on any financial institution in this case. It should likewise be precluded from suggesting any profit by the defendant, or using references to the total transaction volume to suggest any correlation between that total transaction value and harm or loss by any financial institution, or gain to any defendant.

## II. THE COURT SHOULD EXCLUDE ANY TESTIMONY BY FINANCIAL INSTITUTIONS REGARDING THE SETTLEMENT TRANSACTIONS

The government has disclosed that it intends to offer into evidence thousands of pages of documents regarding commercial or business accounts held by marijuana dispensaries or related entities. These documents purport to show that the dispensaries, or related entities, received certain payments that may be related to their business with Eaze—the Settlement Transactions. Mr. Akhavan moves to exclude documents and testimony regarding the Settlement Transactions to the extent such documents and testimony are offered for the sole purposes of evidencing Settlement Transaction volumes. Calling these witnesses for this purpose is unnecessary, and introducing this voluminous evidence would likely mislead and confuse the issues for the jury and will be a waste of time given that such evidence neither proves or negates any element of the crime charged.

---

[3] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.

### A. The Settlement Transactions Are Irrelevant

The Settlement Transactions are inadmissible because they are irrelevant to any element of the crime the government has charged. The documents disclosed by the government purportedly show that marijuana dispensaries, or related entities (the "Dispensaries") received deposits from *acquiring* banks. *See* Opinion and Order, ECF No. 91, at 2 (distinguishing between acquiring banks and issuing banks); S3 Superseding Indictment, ECF No. 16, ¶ 10 (same). Those deposits are irrelevant to whether the credit card issuing banks—the purported victims in this case—were defrauded or parted with funds in their custody or control based on any alleged misrepresentations about the nature of the transactions. Based on the government's theory of this case, any alleged crime was completed the moment the issuing banks released funds within their custody or control to process credit card transactions. Whether the Dispensaries were paid by acquiring banks at some point *after* the issuing banks released those funds is therefore irrelevant. *See, e.g.*, *United States v. Redcorn*, 528 F.3d 727, 739 (10th Cir. 2008) (McConnell, J.) (reversing wire fraud conviction because trial court erroneously admitted irrelevant evidence about how defendants used unlawfully obtained money after fraudulent scheme was completed); *United States v. Altman*, 48 F.3d 96, 103 (2d Cir. 1995) (similar as to mail fraud conviction).

Indeed, this evidence does not tend to prove *anything* about the defendants. It does not reflect enrichment of either defendant, and therefore cannot offer even circumstantial evidence of their motivation. It shows only that the Dispensaries had commercial accounts at these banks and received deposits into those accounts.

This evidence also does not show that the issuing banks lost any money. While the government has alleged transactions totaling over $100 million, evidence of such transactions would be reflected in the *cardholder's* transaction history, not the Settlement Transactions. The government apparently intends to call three witnesses from cardholders' banks—Capital One,

Actors Federal Credit Union and NYU Federal Credit Union, from which it can elicit information regarding the transactions.

> B. **Even if Relevant, the Settlement Transactions Should Be Excluded Under Rule 403**

Even if this evidence were somehow relevant, there are multiple grounds to exclude it under Rule 403.

*First*, evidence of these transfers risk misleading the jury and confusing the issues. If the government is permitted to introduce this evidence, jurors may be misled into believing that whether the acquiring banks transmitted payment to marijuana dispensaries is somehow relevant to whether the defendants committed the charged offense—an offense that has nothing to do with the funds once the issuing banks part with them. Even excluding these documents, the government intends to introduce thousands of pages of financial records reflecting the transactions at issue. There is no good reason that the government should be permitted to add to that load thousands more pages of documents that are at best tangentially relevant and are designed only to impress upon the jury the magnitude of funds received by dispensaries—funds that no one argues reflect either harm to the issuing banks, or gain to the defendants.

*Second*, the Settlement Transactions are substantially more prejudicial than probative. Jurors may be tempted to infer from the Settlement Transactions that Mr. Akhavan and Mr. Weigand profited directly from these payments, when, in fact, they did not. That insinuation carries a substantial risk of prejudice. *Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421, at *2 (S.D.N.Y. July 14, 2005) (granting motion *in limine* to preclude jurors from "basing their conclusions on the relative wealth of the parties") (citing Fed. R. Evid. 403; *United States v. Birney*, 686 F.2d 102, 106 (2d Cir. 1982)). There is also substantial risk that the jury, endeavoring to understand why the government is offering this irrelevant evidence, incorrectly conflates these

5

settlement transactions with losses by the issuing banks. On the other side of the balance, the probative value of this evidence is so low as to be virtually nonexistent, as discussed above. The risk of prejudice from this evidence substantially outweighs its probative value.

*Third,* allowing the government to present this evidence would waste the jury's—and this Court's—time and cause undue delay. As explained above, the Settlement Transactions are entirely irrelevant, and the presentation of irrelevant evidence is a waste of time. *See United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) (district court properly precluded evidence and argument that would have required a "mini trial" and would have "focus[ed] the jury upon the wrong event"); *United States v. Sterling*, 2017 WL 2304024, at *6 (S.D.N.Y. May 24, 2017) (precluding evidence that "could only have caused further irrelevant distraction"). What is more, the government apparently intends to offer *thousands* of pages of documents related to these commercial accounts. Further, many of the dispensaries received settlements into accounts bearing the names of a parent or holding entity, rather than the dispensary's business name (or "DBA"). This perfectly legal practice, in the context of this prosecution, will necessitate additional time examining witnesses to explain to the jury how commercial banking accounts differ from credit and debit card-related processing accounts to ensure the jury does not confuse the issue of the commercial account names with the rest of the alleged scheme.

If the government insists on offering this evidence, the defense will be required to spend time explaining what the Business Account Evidence, including the Settlement Transactions, actually reflects, and how it is irrelevant to the defendants and the charges against them. This is time that could be saved if the evidence is excluded in the first instance. Any minimal probative value the government may derive from this evidence is substantially outweighed by the amount of time it will require for the government to present this evidence.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the government from presenting evidence of or argument related to (1) the $100 million in transactions as either loss or harm to any Issuing Bank or profit to the defendants; and (2) the Settlement Transactions.

Dated: February 16, 2021

| ROTHKEN LAW FIRM | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| */s/ Ira Rothken* | */s/ William A. Burck* |
| Ira Rothken | William A. Burck |
| Jared Smith | Derek L. Shaffer |
| 3 Hamilton Landing | 777 6th Street NW 11th floor |
| Suite 280 | Washington, DC 20005 |
| Novato, CA 94949 | Telephone: (202) 538-8000 |
| Telephone: (415) 924-0425 | Fax: (202) 538-8100 |
| Email: ira@techfirm.net | Email: williamburck@quinnemanuel.com |
| Email: jared@techfirm.net | Email: derekshaffer@quinnemauel.com |

Christopher Tayback
Mari F. Henderson
865 S Figueroa Street 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
Email: christayback@quinnemanuel.com
Email: marihenderson@quinnemanuel.com

Sara C. Clark
711 Louisiana St., Ste. 500
Houston, Texas 77002
Telephone: (713) 221-7000
Fax: (713) 221-7100
Email: saraclark@quinnemanuel.com