# Arnold & Porter

Marcus A. Asner
+1 212.836.7222 Direct
Marcus.Asner@arnoldporter.com

February 17, 2021

**VIA ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street, Room 1340
New York, New York 10007

      Re:    *United States v. Akhavan et uno*, 20-cr-0188 (JSR)

Dear Judge Rakoff:

      We write respectfully on behalf of third parties Visa Inc. ("Visa") and Martin Elliott, pursuant to Rule 2 of Your Honor's Individual Rules of Practice, to request that Mr. Elliott be allowed to testify at trial via live two-way video from a federal courthouse in the Northern District of California. The parties have discussed this request with chambers. Defendants Akhavan and Weigand object to the request, while the Government takes no position. Set forth below are Mr. Elliott's personal circumstances, the risks posed by the ongoing COVID-19 pandemic, and the relevant law that we believe together demonstrate that Mr. Elliott should be allowed to testify via live two-way video.

**Mr. Elliott's Relationship to the Case and Personal Circumstances**

      Visa and Mr. Elliott have been served with two subpoenas pertinent to this motion—one by the Government and one by Defendant Akhavan—which together require Mr. Elliott and Visa to testify at trial. *See attached* Gov't Subpoena to Martin Elliott (Feb. 17, 2021); Akhavan Subpoena to Visa (Feb. 11, 2021). Mr. Elliott was Visa's Global Head of Franchise Risk Management during the time period relevant to the indictment. As such, he is the individual at Visa who has the necessary experience to testify about the full range of required topics outlined. Mr. Elliott has no firsthand knowledge of the specific transactions at issue in this case. Rather, he is expected to provide process-type testimony about the workings of the Visa payment network.

      Mr. Elliott resides in the San Francisco Bay area. *See* Elliott Decl. ¶ 2. He is 57 years-old and has a number of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* at ¶ 3. Mr. Elliott and his wife are the primary caretakers of his 83-year-old mother-in-law. *See* Elliott Decl. ¶ 2. His wife is 55 years-old and ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* at ¶ 4. No one in his household has contracted COVID-19, nor been vaccinated for it. *See id.* at ¶ 5.

Arnold & Porter Kaye Scholer LLP
250 West 55th Street | New York, NY 10019-9710 | www.arnoldporter.com

**Arnold & Porter**

The Honorable Jed S. Rakoff
February 17, 2021
Page 2

**The Present State of the COVID-19 Pandemic**

According to the Centers for Disease Control and Prevention ("CDC"), more than 27 million Americans so far have contracted COVID-19 and, as of the drafting of this motion, more than 486,000 have died from it. *See United States COVID-19 Cases and Deaths by State,* CDC COVID DATA TRACKER, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100k (last visited Feb. 17, 2021). New York and California are two of the states that have suffered the most from this deadly pandemic, and they continue to do so. California recently surpassed New York for the most deaths due to COVID-19—47,510 casualties to New York's 46,141. *See California,* JOHNS HOPKINS UNIV. CORONAVIRUS RES. CTR., https://coronavirus.jhu.edu/region/us/california (last visited Feb. 17, 2021); *New York,* JOHNS HOPKINS UNIV. CORONAVIRUS RES. CTR., https://coronavirus.jhu.edu/region/us/new-york (last visited Feb. 17, 2021).

The risk is even more dire for people in vulnerable health and age categories. Adults 50–64 years old are four times more likely to be hospitalized—and 30 times more likely to die—from contracting COVID than those aged 18–20. *See Older Adults*, CDC COVID-19 (Feb. 17, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. A number of preexisting conditions put a person at "increased risk for severe illness" from COVID-19, including "hospitalization, admission to the ICU, intubation or mechanical ventilation, or death." *People with Certain Medical Conditions*, CDC COVID-19 (Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. These include ███████ ████████████████████. *See id.*

Travel increases a person's risk of contracting COVID-19 and the CDC has explicitly warned against individuals travelling at this time. *See Travel During COVID-19*, CDC COVID-19 (Feb. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html. In fact, the CDC website states in bold letters: "**COVID-19 Alert: Cases are Extremely High. Avoid Travel**." *Id.*

In New York, out-of-state travelers entering the state (with limited exceptions for travelers from nearby states) must first obtain a negative COVID-19 test no more than three days prior to reaching the state. *COVID-19 Travel Advisory*, N.Y. DEP'T. OF HEALTH, https://coronavirus.health.ny.gov/covid-19-travel-advisory (last visited Feb. 17, 2021). They must then quarantine for a minimum of three days, after which they must take another COVID-19 test. *See id.* Mr. Elliott would need to take even further steps to testify. Before entering the courthouse in the Southern District of New York, out-of-state travelers must "t[ake] a COVID PCR diagnostic test within three days prior to departure from the state of embarkation, (2) t[ake] another COVID PCR diagnostic test on day 5

Arnold & Porter

The Honorable Jed S. Rakoff
February 17, 2021
Page 3

after arrival in New York, and (3) receive[] negative results from both tests." *Entry Into SDNY Courthouses*, S.D.N.Y. OFFICE OF DIST. CT. EXEC. (Nov. 12, 2020).

These measures are crucial to protecting those who work at and visit the courthouse. That said, none of the Court's well-designed measures serves to protect people from contracting the virus while traveling to the courthouse or while traveling back to their home states following a court appearance. In fact, the Court's measures in part appear to reflect the reality that people traveling from out of state are at a higher risk of contracting COVID and bringing it into the courthouse. And none of these measures addresses the CDC's strong message that individuals at this time should "**Avoid Travel**."

**Mr. Elliot Satisfies the Prerequisites for Live Two-Way Video Testimony**

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

The right to face-to-face confrontation is not absolute. *Id.* at 850. Under Federal Rule of Criminal Procedure 15, for example, a prospective witness may be deposed prior to trial under "exceptional circumstances" and in the "interest[s] of justice." FED. R. CRIM. P. 15(a)(1). That deposition testimony may then be used at trial "as substantive evidence if the witness is unavailable." *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (citing FED. R. CRIM. P. 15); *see also* FED. R. EVID. 804.

Presenting testimony in criminal trials by way of live two-way video is permissible upon the same showing required for Rule 15 depositions. *See Id.* at 81; *United States v. Donziger*, No. 11-CV-691 (LAK), 2020 WL 5152162, at *2 (S.D.N.Y. Aug. 31, 2020), *reconsideration denied*, No. 11-CV-691 (LAK), 2020 WL 8465435 (S.D.N.Y. Oct. 23, 2020). Live two-way video serves to "preserve[] the face-to-face confrontation" required by the Sixth Amendment. *Gigante*, 166 F.3d at 81. To allow testimony via live two-way video, a movant must show that (1) the witness's testimony is material, (2) the witness is "unavailable" within the meaning of the case law, and (3) testimony by live two-way video "furthers the interests of justice." *United States v. Mostafa*, 14 F. Supp. 3d 515, 521 (S.D.N.Y. 2014). Here, all three factors are satisfied.

First, Mr. Elliott's testimony is material. "Anticipated testimony is 'material' within the meaning of Rule 15 if it is 'highly relevant to a central issue in the case.'" *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *24 (S.D.N.Y. Jan. 18,

**Arnold & Porter**

The Honorable Jed S. Rakoff
February 17, 2021
Page 4

2017) (quoting *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008)). But material testimony need not involve firsthand knowledge of the facts underlying the allegations. *See Mostafa*, 14 F. Supp. 3d at 522. The Government here alleges (among other things) a conspiracy to deceive banks into authorizing prohibited cannabis transactions through payment networks such as Visa's. *See* Superseding Indictment 10–12. Mr. Elliott's testimony is material because, without it, it will be more difficult for the jury to understand the underlying payment network system and rules at issue and to analyze whether the defendants violated the law. *See Mostafa*, 14 F. Supp. 3d at 522.

Second, Mr. Elliott is unavailable. This Court and others have recognized that the definition of unavailability under Rule 15 includes individuals with heightened COVID-19 risks. For example, in *Donziger*, the court found that a witness living in Texas was unavailable to testify in person in New York because of his age (72 years-old) and the "concomitant health risk posed by COVID-19 if he were forced to travel and stay in New York for a prolonged period of time." *Donziger*, 2020 WL 5152162, at *3. Other courts have found witnesses unavailable to testify during the pandemic because testifying in person would require them to fly across the country to do so. *See United States v. Davis*, No. 19-101-LPS, 2020 WL 6196741, at *4 (D. Del. Oct. 22, 2020).

Mr. Elliott is similarly unavailable due to his personal circumstances and the current state of the pandemic. As noted, Mr. Elliott is 57 years-old, an age that makes him significantly more vulnerable to COVID-19. *See* Elliott Decl. ¶ 2; *Older Adults*, *supra*. In addition, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ on top of the risks already posed by his age. *See* Elliott Decl. ¶ 3; *People with Certain Medical Conditions*, *supra*.

To testify in person, Mr. Elliott would have to spend approximately six hours in a plane each way with fellow travelers from New York City and San Francisco. He may have to spend up to a week or more in a hotel in New York City and will have to quarantine again when he returns to California. And if Mr. Elliott does contract COVID-19 before testifying, he would have to stay here longer and potentially be hospitalized away from his family. This is a needless risk and burden for Mr. Elliott to endure and one that directly contravenes CDC guidance. *See Travel During COVID-19*, *supra*.

Mr. Elliott's situation is unlike the witness's in *United States v. LaGuardia*, who used the pandemic as a cover to avoid the inconvenience of traveling to testify. *See* Memo. in Opp'n. to Mot. in Limine, at 4–11, United States v. LaGuardia, No. 19-CR-0893 (Oct. 17, 2020), ECF No. 64. Mr. Elliott has not left California since the beginning of the pandemic. *See* Elliott Decl. ¶ 6. He has taken care to heed the CDC's guidance because of his genuine fear that either he or someone else living with him will suffer

# Arnold & Porter

The Honorable Jed S. Rakoff
February 17, 2021
Page 5

severe illness if they contract COVID-19.  *See id.*  It would be unfair and dangerous to subject Mr. Elliott to the exact risks that he has sought to avoid merely because he is knowledgeable about the payment-network systems at issue in this case.

Finally, allowing Mr. Elliott to testify via live two-way video furthers the interests of justice because it helps the parties "present the material and relevant evidence in [their] search for truth" and "furthers the process of a fair trial." *Mostafa*, 14 F. Supp. 3d at 524.  As noted, Mr. Elliott is in the best position to testify about all of the subjects outlined in trial subpoenas served by the Government and Mr. Akhavan.  Thus, his testimony will help the jury understand and analyze whether the defendants violated the law, thus "further[ing] the process of a fair trial."  *Id.*; *see Donziger*, 2020 WL 5152162 at *3.  Accordingly, his specific testimony furthers the interests of justice and the Court should find it as such.  *See Mostafa*, 14 F. Supp. 3d at 522, 524.

While Mr. Elliott's request to testify remotely must only satisfy the Rule 15 factors, *Gigante*, 166 F.3d at 81, his request is also justified under the higher *Craig* standard.  Under *Craig*, an exception for face-to-face confrontation requires an important public policy and an assurance of the testimony's reliability.  *See Craig*, 497 U.S. at 850.  First, "there is no question that limiting the spread of COVID-19 and protecting at-risk individuals from exposure to the virus are critically important public policies." *Donziger*, 2020 WL 5152162 at *2.  As noted, the CDC has warned against traveling, especially for at-risk persons, for this very reason. *See Travel During COVID-19*, *supra*.  Second, having Mr. Elliott testify via live two-way video assures all of the Confrontation Clause's guarantees of reliability because  the key qualities of face-to-face confrontation are met: "(1) the giving of testimony under oath,  (2) the opportunity for cross-examination, (3) the ability of the fact-finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence." *Gigante*, 166 F.3d at 81.

For the reasons set forth above, we respectfully request that this Court allow Mr. Elliott to testify via live two-way video from the Northern District of California.

Respectfully,

*/s/ Marcus A. Asner*
Marcus A. Asner

cc:     All counsel of record (via ECF)