UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    - against -

RUBEN WEIGAND and
HAMID "RAY" AKHAVAN,

      Defendants.

20-CR-188-JSR

---

# OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................4

I.    WHETHER THE DEFENDANTS' ALLEGED MISREPRESENTATIONS WERE CAPABLE OF INFLUENCING AN OBJECTIVELY REASONABLE BANK IS THE KEY ISSUE IN THE MATERIALITY ANALYSIS (GOVERNMENT MOTION *IN LIMINE* #4) ........................................................................................................4

II.    EVIDENCE THAT THE BANKS MADE A PROFIT ON MARIJUANA TRANSACTIONS IS HIGHLY RELEVANT TO MULTIPLE ELEMENTS OF THE CHARGED OFFENSE (GOVERNMENT MOTION *IN LIMINE* #1) ..........................................9

    A.    The Profit Evidence Is Relevant to Proving that the Defendants' Alleged Misstatements Were Immaterial ..........................................................10

    B.    The Profit Evidence Is Relevant to Proving that the Defendants Did Not Intend To Defraud the Banks ................................................................11

    C.    The Court Should Not Exclude the Profit Evidence Under Rule 403 ..................14

III.    THE BANKS' FAILURE TO TAKE EVEN RUDIMENTARY STEPS TO CATCH PURPORTEDLY PROHIBITED MARIJUANA TRANSACTIONS IS RELEVANT TO MULTIPLE ELEMENTS OF THE OFFENSE (GOVERNMENT MOTION IN LIMINE #3) .......................................................................................14

IV.    THE DEFENSE SHOULD BE PERMITTED TO EXPLAIN THE RELATIONSHIP BETWEEN MARIJUANA'S LEGAL STATUS AND RELEVANT BANKS' POLICIES AND PROCEDURES (GOVERNMENT MOTION *IN LIMINE* #2) ........16

    A.    Evidence Regarding the Federal Government's Enforcement of Laws Prohibiting Possession, Distribution, and Use of Marijuana Is Relevant .............17

    B.    Evidence Regarding Laws Permitting the Sale or Recreational Use of Marijuana in States Other than California and Oregon and Internationally Is Relevant ..........................................................................................19

V.    THE DEFENDANTS SHOULD NOT BE PRECLUDED FROM INTRODUCING EVIDENCE THAT COUNSEL WAS PRESENT OR INVOLVED IN CERTAIN COMMUNICATIONS (GOVERNMENT MOTION *IN LIMINE* #6) ......................20

VI.    THE COURT SHOULD NOT ADMIT EVIDENCE OF MR. AKHAVAN'S ADULT CONTENT BUSINESS OR EVIDENCE OF THREATS (GOVERNMENT MOTION *IN LIMINE* #8) ................................................................................22

      A.     The Court Should Not Admit Evidence of Mr. Akhavan's Adult Content Processing Business .................................................................................................22

      B.     The Court Should Not Admit Documents or Testimony Regarding Alleged "Threatening" Conduct by Mr. Akhavan ...............................................................27

VII.   THE COURT SHOULD PERMIT THE DEFENSE TO INQUIRE INTO WITNESS BIAS, SHOULD THE ISSUE ARISE AT TRIAL (GOVERNMENT MOTION *IN LIMINE* #9) ...........................................................................................29

VIII.  MR. AKHAVAN JOINS IN DEFENDANT WEIGAND'S OBJECTIONS TO GOVERNMENT'S MOTIONS *IN LIMINE* #5 AND #7 ...........................................30

CONCLUSION ...................................................................................................................30

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*United States v. Ali*,
    68 F.3d 1468 (2d Cir. 1995) ................................................................. 5

*United States v. Autuori*,
    212 F.3d 105 (2d Cir. 2000) ................................................................ 11

*United States v. Binday*,
    804 F.3d 558 (2d Cir. 2015) ................................................................ 12

*United States v. Calderon*,
    944 F.3d 72 (2d Cir. 2019) ................................................................. 11

*United States v. Carboni*,
    204 F.3d 39 (2d Cir. 2000) ................................................................. 23

*United States v. Curley*,
    639 F.3d 50 (2d Cir. 2011) ................................................................. 26

*United States v. D'Amato*,
    39 F.3d 1249 (2d Cir. 1994) ............................................................... 11

*United States v. Davis*,
    2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017) .................................... 11, 12

*United States v. Dinome*,
    86 F.3d 277 (2d Cir. 1996) ................................................................. 11

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980) ............................................................... 27

*United States v. Finazzo*,
    850 F.3d 94 (2d Cir. 2017) ................................................................. 12

*United States v. Innis*,
    2019 WL 6999912 (E.D.N.Y. Dec. 20, 2019) .................................... 23

*United States v. Jabar*,
    2017 WL 4276652 (W.D.N.Y. Sept. 27, 2017) ................................. 11

*United States v. Kaiser*,
    609 F. 3d 556 (2d Cir. 2010) .......................................................... 22, 23

*United States v. Litvak*,
    2013 WL 5740891 (D. Conn. Oct. 21, 2013) ................................... 5

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015) ............................................................... 5

*Loughrin v. United States*,
  573 U.S. 351 (2014)......................................................................................... 13

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  643 F. Supp. 2d 471 (S.D.N.Y. 2009) ............................................................. 30

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020) ........................................................................ 11

*Neder v. United States*,
  527 U.S. 1 (1999)....................................................................................... 5, 17

*United States v. Nejad*,
  2020 WL 883500 (S.D.N.Y. Feb. 24, 2020)................................................... 10

*United States v. Novak*,
  443 F.3d 150 (2d Cir. 2006) ........................................................................... 12

*Old Chief v. United States*,
  519 U.S. 172 (1997)....................................................................................... 28

*United States v. Ozsusamlar*,
  428 F. Supp. 2d 161 (S.D.N.Y. 2006) ............................................................ 28

*United States v. Pizano*,
  421 F.3d 707 (8th Cir. 2005) ........................................................................... 6

*United States v. Regent Office Supply Co.*,
  421 F.2d 1174 (2d Cir. 1970) ......................................................................... 12

*United States v. Rigas*,
  490 F.3d at 208 (2d Cir. 2007).............................................................. 5, 17, 23

*United States v. Robinson*,
  702 F.3d 22 (2d Cir. 2012) ............................................................................. 24

*United States v. Roldan-Zapata*,
  916 F.2d 795 (2d Cir. 1990) ..................................................................... 23, 24

*S.E.C. v. Lek. Securities. Corp.*,
  2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019)................................................... 20

*S.E.C. v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013) .................................................. 19, 20, 21

*United States v. Scully*,
  877 F. 3d 464 (2d Cir. 2017) .......................................................................... 20

*Shaw v. United States*,
  137 S. Ct. 462 (2016).................................................................................... 13

*United States v. Shellef*,
  507 F.3d 82 (2d Cir. 2007) ...................................................................... 12, 13

*United States v. Starr*,
  816 F.2d 94 (2d Cir. 1987) ................................................................... 12

*Washington v. Recuenco*,
  548 U.S. 212 (2006) .............................................................................. 5

*United States v. Weigand*,
  2020 WL 5105481 (S.D.N.Y. Aug. 31, 2020), as corrected (Sept. 2, 2020) .................... 11, 13

*Wilder v. World of Boxing LLC*,
  220 F. Supp. 3d 473 (S.D.N.Y. 2016) ...................................................... 10, 11, 30

*United States v. Hsu*,
  702 F.3d 22 (2d Cir. 2012) .................................................................. 23

**Statutes**

18 U.S.C. § 1344 ................................................................................ 10, 12

**Rules**

Fed. R. Evid. 401 ............................................................................... 13

Fed. R. Evid. 403 ..................................................................... 13, 14, 27, 29

Fed. R. Evid. 404(b) ................................................................... 22, 25

Defendant Hamid ("Ray") Akhavan respectfully submits this memorandum of law in opposition to the government's motions *in limine* (ECF No. 170) to (1) preclude the defense from arguing or offering evidence that the defendants' alleged misstatements would not have affected a reasonable Issuing Bank's[1] decision to process marijuana transactions (government motion *in limine* #4), (2) preclude the defense from arguing or offering evidence that the banks profited from processing marijuana transactions (government motion *in limine* #1); (3) preclude the defense from arguing or offering evidence that the banks failed to conduct even rudimentary due diligence to catch "prohibited" marijuana transactions (government motion *in limine* #3); (4) preclude the defense from arguing or offering evidence that the legal landscape of the marijuana industry is relevant to banks' policies and enforcement thereof (government motion *in limine* #2); (5) preclude the defense from arguing or offering evidence that counsel was present on any document or participated in any communication (government motion *in limine* #6); (6) permit the government to offer evidence of Mr. Akhavan's unrelated adult content processing business (government motion *in limine* #8); and (7) preclude the defense from cross examining certain witnesses about particular topics (government motion *in limine* #9).[2]

## **PRELIMINARY STATEMENT**

The Court should deny the government's motions *in limine*.[3]

---

[1]  We refer to the credit and debit card issuing banks that are the supposed "victims" in this case as the "Issuing Banks."

[2]   Mr. Akhavan joins fully the arguments of Mr. Weigand in opposition to the government's motions to preclude (1) evidence of additional portions of Mr. Weigand's defense statement and (2) evidence of non-fraudulent business dealings by Mr. Weigand.

[3]  The government's motion *in limine* labeled as #4 in the body of its brief ("to preclude the defense from arguing whether it was 'reasonable' for banks to process marijuana-related transactions") does not appear in the brief's table of contents.  Thus, the defense's numbering of the government's motions *in limine* in its oppositions is based on the numbers in the body of the brief.  The government's brief also does not have page numbers, so page number citations to the government's motions *in limine* refer to the ECF pagination.

1

*First*, the defense intends to present a straightforward materiality defense at trial.  The defense will argue that an objectively reasonable bank would have processed the disputed marijuana transactions even if the defendants had not "miscoded" the marijuana transactions and had listed Eaze in the billing descriptor instead of the "fake websites."  If an objectively reasonable issuing bank would not have done anything differently—even if the defendants had not "misrepresented" any facts—then it is black letter law that those misrepresentations were immaterial.  In short, the defense "intend[s] to argue not that banks are lackadaisical in their enforcement, but rather that banks *do not care* about whether their cardholders are purchasing marijuana (at least in states where that is legal)."  Opinion Regarding Circle Subpoena, ECF No. 177, at 10.

In opposition to this simple argument, the government struggles (and ultimately fails) to articulate a coherent view of what materiality means.  In one breath, the government says that the defense is wrong to "define materiality based on whether it was reasonable for banks to process marijuana-related transactions."  ECF No. 170, at 23 (Gov't MIL #4).[4]  But in the next breath, the government argues that a material fact is one that would "be of concern to a reasonable and prudent" bank.  *Id.* at 23.  But these two definitions of materiality are logically equivalent. Arguing that it was reasonable for the banks to process marijuana transactions is the same as arguing that a reasonable bank would have processed those transactions.  Suffice it to say, the government's contradictory arguments are not persuasive, and the defense should be permitted to contest materiality at trial.

*Second*, evidence that the banks made a profit on the marijuana transactions is highly relevant to multiple elements of the offense.  This evidence is relevant to materiality because it

---

[4]    Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.

shows that the banks had an economic incentive to process these transactions, which makes it more likely that an objectively reasonable bank would have processed them.  Evidence that the banks turned a profit on marijuana transactions is also relevant to showing that the defendants did not have an intent to defraud the banks, as the government is required to show under subsection 1 of the bank fraud statute.[5]  The Court should not exclude this relevant evidence.

*Third*, evidence that the banks did virtually nothing to ferret out purportedly "prohibited" marijuana transactions is also relevant to multiple elements of the offense.  That the banks failed to conduct even rudimentary diligence suggests that they were not actually interested in prohibiting consumers from using their cards to purchase marijuana.  And from the fact that the banks did not actually *care* if their customers used their cards to purchase marijuana, the jury could conclude that an objectively reasonable bank would not have done anything differently even if it had known that the disputed transactions were for marijuana.  Evidence that the banks conducted virtually no due diligence also supports the defense's theory that the banks' purported "policies" against processing marijuana transactions that are central to the government's case were pretextual.  The jury should have the benefit of this relevant evidence.

*Fourth*, evidence regarding marijuana's legal status and the lack of federal enforcement of laws against marijuana is directly relevant to Mr. Akhavan's defense.  U.S.-based financial institutions were aware of and reasonably relied on the government's position vis-à-vis marijuana enforcement in determining their policies toward marijuana-related transactions, and their enforcement of the same.  The jury is entitled to understand these industry policies and the logic behind them.

*Fifth*, despite the defense's consistent position that it does not intend to raise an advice of

---

[5]   Intent to defraud is also required under subsection 2, but because it is indisputably required under subsection 2, the defense does not argue the point on this motion.

counsel defense, the government seems to aim to preclude evidence that lawyers were ever involved or included in any matter or on any communication.  This argument is both premature and an overreach—the defense should be permitted to note the presence of counsel on communications, including to show the sophistication of various parties and that the defendants were not the ones making certain decisions.

*Sixth*, the government should not be able to introduce evidence of Mr. Akhavan's adult content processing business because such evidence is irrelevant, prejudicial, and is offered as improper character evidence.  Mr. Akhavan's other business ventures simply have nothing to do with the charged conduct, and their introduction is a blatant attempt to inflame the jurors and prejudice them against Mr. Akhavan.  Similarly, the government should not be permitted to present evidence of any allegedly "threatening" communications by Mr. Akhavan.  The government has ample evidence to make any points of which those communications might be minimally probative, and the evidence would otherwise unduly prejudice the defense.

*Seventh*, the defense does not intent to introduce much of the evidence the government seeks to exclude on cross, but should be permitted to inquire into witness bias, should the need arise at trial.

## ARGUMENT

**I.     WHETHER THE DEFENDANTS' ALLEGED MISREPRESENTATIONS WERE CAPABLE OF INFLUENCING AN OBJECTIVELY REASONABLE BANK IS THE KEY ISSUE IN THE MATERIALITY ANALYSIS (GOVERNMENT MOTION *IN LIMINE* #4)**

Stated simply, the defense's argument as to materiality is that an objectively reasonable bank would have processed marijuana transactions even if the defendants had listed Eaze in the descriptor and submitted whatever merchant category code (MCC) the government believes the

defendants ought to have listed for the transaction.[6]  A statement "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed."  *Neder v. United States*, 527 U.S. 1, 16 (1999).  But a "mere metaphysical possibility" of influence is insufficient."  *United States v. Litvak*, 808 F.3d 160, 173 (2d Cir. 2015).  Rather, a misrepresentation is material when it is "*reasonably likely* to influence the [decisionmaker] in making a determination required to be made."  *United States v. Rigas*, 490 F.3d at 208, 231 (2d Cir. 2007) (emphasis added).  "[M]ateriality is a classic question reserved for the jury."  *United States v. Litvak*, 2013 WL 5740891, at *5 (D. Conn. Oct. 21, 2013) (collecting cases); *see also United States v. Ali*, 68 F.3d 1468, 1474 (2d Cir. 1995) ("[T]he element of materiality under § 1001 must be determined by the jury and not the court."); *Washington v. Recuenco*, 548 U.S. 212, 219 (2006) ("[M]ateriality is an element of the mail fraud, wire fraud, and bank fraud statutes, and thus must be submitted to the jury to support conviction of those crimes.").

The banks' actions speak louder than their words:  The defense intends to present evidence that the *vast majority* (if not all) of the "victim" Issuing Banks will indeed process what they know to be marijuana transactions.  As described in the defendants' briefing regarding the Circle subpoena, the banks *continue* to process marijuana transactions with "Eaze" listed in the descriptor that are coded as "quasi-cash," even though consumers do not receive (and, it is safe to assume, do not want) cryptocurrency as a result of their transactions with Eaze, the self-proclaimed "Uber for weed."  And if an objectively reasonable bank would have made precisely the same decision (*i.e.*, to process the transactions) if the defendants had not made the alleged

---

[6]  Of course, because there is no MCC for marijuana, it is unclear how the government thinks Eaze transactions should have been coded.

"misrepresentations" on which the government's case is founded, then those misrepresentations were immaterial.

Evidence of what the vast majority of banks *have done* (and continue to do) is the best evidence of what a reasonable bank *would do*. Even the government's arguments confirm this point. The government argues that "evidence of reliance by banks on misrepresentations in loan applications is probative of materiality." ECF No. 170 at 21 n.5 (citing *United States v. Pizano*, 421 F.3d 707, 721–22 (8th Cir. 2005)). That is true even though, as the government repeatedly notes, materiality is measured against an objective standard, so the government need not show that a particular bank relied on a defendant's misrepresentation to prove materiality. Evidence that a bank relied on a misrepresentation is material nonetheless because evidence that a *particular* bank *did* rely on a misrepresentation in a loan application is probative of whether an *objectively reasonable* bank *would have* relied on that misrepresentation. This logic cuts both ways: Evidence that a particular bank *did not* rely on a misrepresentation is also probative of whether an objectively reasonable bank also *would not have* done so.[7] It is just two sides of the same coin. The government cannot seriously maintain that evidence that a particular bank relied on a misstatement is relevant to proving that the statement was material but evidence that the same bank did not rely on the same misstatement is irrelevant to proving that the statement was immaterial. That kind of "heads I win, tails you lose" logic is untenable.

---

[7] The cases cited by the government (ECF No. 170 at 21 n.5) stand for the proposition that the government need not show that a particular bank actually relied on a misrepresentation to *prove* materiality. Unquestionably, a defendant cannot defend against a bank fraud charge by arguing that her victim was particularly gullible. But a particular bank's behavior is still *relevant* to materiality. And the defense is not arguing that any particular bank was gullible, but that virtually every (if not every) Issuing Bank does not care if their customers use their credit and debit cards to purchase marijuana in states where it is legal to do so. Thus, the case law cited by the government is of limited relevance in this case.

The government's response to these points is self-contradictory.  The government accuses the defense of "concoct[ing] [a] standard of materiality that is wholly inconsistent with the law and improper for the jury to consider."  ECF No. 170 at 23.  The government asserts that the defense's "novel theory" is that materiality is "based on whether it was reasonable for banks to process marijuana-related transactions."  *Id.*  According to the government, the correct standard is whether "[a] material fact is one that you would expect to be of concern to a *reasonable and prudent* person."  *Id.* (emphasis added).  But these standards are the same:  The assertion that it was reasonable for the banks to process marijuana transactions is equivalent to the assertion that a reasonable bank would have processed those transactions.  To rephrase the defense's argument, neither the MCCs nor the billing descriptors (the only plausible "misrepresentations" the government has identified) would have been "of concern to a reasonable and prudent" bank. Most Issuing Banks simply do not (and thus, a reasonable bank would not) refuse to process a marijuana transaction based on an MCC or a billing descriptor, as the evidence sought by the Circle subpoena will powerfully show.

The government notes that materiality is "aimed at evaluating the importance of the misstatements made to the banks."  ECF No. 170 at 23.  This is what the defense is arguing:  The defendants made misrepresentations, according to the government, to disguise the nature of marijuana transactions.   But if a reasonable and prudent bank would have processed the transactions anyway even if the billing descriptor said "Eaze" (as it does to this day for Circle-enabled marijuana transactions) and the defendants used whatever MCCs they were supposed to have used, then the defendants' alleged misrepresentations were not important.

The government cites authorities for the uncontroversial proposition that a "*particular* victim's susceptibility to fraud is irrelevant."  ECF No. 170 at 19–21 (emphasis added).  But the

defense is not arguing that the defendants' alleged misrepresentations were immaterial because a *particular* bank was careless or gullible.  The defense is instead arguing that a *reasonable and prudent* Issuing Bank would not have done anything differently if the defendants had not "miscoded" or otherwise "misrepresented" anything to the banks.  For the same reason, the government's argument that "actual reliance by the target of the fraud is not an element of the fraud statutes" is beside the point.  *Id.* at 20.  The defendants are not attempting to show that any particular bank actually failed to rely on the alleged misrepresentations but rather that a reasonable bank would not have relied on them.

The government also argues that "[n]egligence is no defense to bank fraud."  ECF No. 170 at 20.  The Court has already explained that this argument "misunderstands defendants' theory.  They intend to argue not that banks are lackadaisical in their enforcement, but rather that banks *do not care* about whether their cardholders are purchasing marijuana (at least in states where that is legal)."  ECF No. 177 at 10.[8]

The government will no doubt point to the banks' "policies" that prohibited these transactions.  But the *bona fides* of those "policies" will be a live issue at trial.  The Court has already recognized that the "defendants intend to argue that these policies are pretextual— designed to protect banks from liability, but not enforced in practice."  *Id.* at 2.  The banks made money on these transactions and simply had no countervailing incentive *not* to process them in states where marijuana is legal.  Indeed, if the banks took steps to block cannabis transactions, their customers would been dissatisfied and may even have fled to a competitor who was happy

---

[8]   The government also argues that "a particular victim's willful blindness to a fraud" is irrelevant to materiality.  ECF No. 170 at 23.  That is wrong.  If an objectively reasonable bank would have turned a blind eye to the marijuana transactions, that is relevant to materiality.  And what particular banks did is relevant to proving what an objectively reasonable bank would do. In any event, as discussed below, the banks' willful blindness is relevant to other elements of the offense.

to profit by processing these transactions.  Thus, the Issuing Banks' real cannabis "policy" was to satisfy their cardholders—who initiated and authorized the Eaze cannabis transactions at issue, and transactions at countless dispensaries across the country—by processing such transactions like any other.  But the banks calculated that it was prudent to maintain a government-pleasing policy against processing such transactions on paper.  So a few banks said one thing (marijuana transactions are prohibited) and did another (processed marijuana transactions), while others said nothing at all.[9]

At bottom, the defense will argue that the Issuing Banks (and an objectively reasonable bank)—notwithstanding their purported "policies"—would have processed marijuana transactions, even if they had not been "miscoded" and Eaze was listed in the billing descriptor. And if that is so, then the defendants' alleged misrepresentations were immaterial.  There is nothing improper about this argument, and the defense should not be precluded from arguing it at trial.

## II.   EVIDENCE THAT THE BANKS MADE A PROFIT ON MARIJUANA TRANSACTIONS IS HIGHLY RELEVANT TO MULTIPLE ELEMENTS OF THE CHARGED OFFENSE (GOVERNMENT MOTION *IN LIMINE* #1)

Evidence that the banks profited by processing marijuana transactions (the "Profit Evidence") is relevant to multiple elements of the charged offense.  The government mischaracterizes the evidence at issue in its first motion *in limine*.  The defense intends to present evidence not only that the banks suffered *no loss* but that the banks *profited* by processing these transactions.

---

[9]   This prosecution is powerful evidence that the banks' strategy has paid off:  Virtually everyone else in the payment ecosystem has been named by the government as a "co-conspirator"—but the banks are characterized as "victims."

As an initial matter, the Court should not permit the government to cherrypick evidence regarding the size and scope of the defendants' alleged "fraud."  As detailed in the defendants' motion in limine #5, the government has repeatedly characterized defendants' alleged "scheme" as a "$100 million" fraud.  If the government intends to introduce evidence that the Issuing Banks were "defrauded" to the tune of $100 million, then the defense should be permitted to introduce the Profit Evidence to rebut this (inaccurate) characterization.

Even if the Court precludes the government from arguing that the defendants' engaged in a "$100 million" fraud (as it should), the Court should not preclude the Profit Evidence because it is relevant.  The government is relying on both subsections of the bank fraud statute, so if the Profit Evidence is relevant under either subsection, the government's motion should be denied as to that evidence.  *See Wilder v. World of Boxing LLC*, 220 F. Supp. 3d 473, 478 (S.D.N.Y. 2016) ("The movant in a motion in limine seeking to exclude evidence has the burden of establishing that the evidence is not admissible for any purpose."); *see also United States v. Nejad*, 2020 WL 883500, at *3 (S.D.N.Y. Feb. 24, 2020) ("[E]vidence and argument regarding [the defendant]'s knowledge that the alleged scheme would likely harm the victim banks may be offered at trial because it is relevant to the bank fraud charge under prong one of § 1344.").  The Profit Evidence is relevant to multiple elements of the charged offense.

A.  **The Profit Evidence Is Relevant to Proving that the Defendants' Alleged Misstatements Were Immaterial**

The Profit Evidence is relevant to materiality.  As described above, the defense intends to show that an objectively reasonable bank would have processed these transactions, the defendants' "miscoding," "fake websites," and "phony merchants" notwithstanding.  That the banks profited from processing marijuana transactions is surely relevant to showing that an

objectively reasonable bank would have processed these transactions regardless of the descriptor and the MCC.

### B.   The Profit Evidence Is Relevant to Proving that the Defendants Did Not Intend To Defraud the Banks

The Profit Evidence is also relevant to proving that the defendants did not intend to defraud the "victim" banks.  Just as under the mail and wire fraud statutes, subsection 1 of the bank fraud requires proof of a "scheme to defraud," which itself requires "[p]roof of fraudulent intent, or the specific intent to harm or defraud the victims of the scheme."  *United States v. Davis*, 2017 WL 3328240, at *8 (S.D.N.Y. Aug. 3, 2017) (citing *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996)); *see also United States v. Weigand*, 2020 WL 5105481, at *4 (S.D.N.Y. Aug. 31, 2020), as corrected (Sept. 2, 2020) (analogizing bank and wire fraud).[10]

Thus, an essential element that the government must prove at trial is that the defendants "contemplated some actual harm or injury to their victims."  *United States v. Calderon*, 944 F.3d 72, 88 (2d Cir. 2019).  "[T]he government cannot escape the burden of showing that some actual harm or injury to the victim's money or property was contemplated by the schemer."  *Weigand*, 2020 U.S. Dist. LEXIS 158771, *8 (quoting *United States v. Miller*, 953 F.3d 1095, 1102 (9th Cir. 2020)); *see also United States v. Jabar*, 2017 WL 4276652, at *3 (W.D.N.Y. Sept. 27, 2017) (in analogous wire fraud prosecution, "[i]ntent to deceive is not enough") (citing *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994)).  "The government may prove fraudulent intent

---

[10]    In its opinion denying the defendants' motion to dismiss, this Court agreed that the government must allege (and ultimately prove) an intent to cause harm but reasoned that "[i]n describing the sorts of harm that qualify … the Supreme Court's bank fraud precedents cast a wide net."  *Weigand*, 2020 WL 5105481, *4.  Although defendants respectfully disagree with the Court's characterization of the Supreme Court's bank fraud precedents, it cuts against the government on this motion.  If evidence or argument is or could be relevant to *any* of the harms the government may attempt to prove at trial, a motion *in limine* to exclude that evidence must be denied.  *See Wilder*, 220 F. Supp. 3d at 478.

through circumstantial evidence" (*United States v. Autuori*, 212 F.3d 105, 116 (2d Cir. 2000)), so evidence that tends to refute the inference that the defendants contemplated some harm or injury to the "victim" banks' money or property is relevant.

The Second Circuit has recently affirmed a district court's jury instruction that "[a] genuine belief that the scheme never exposed the victim to loss or risk of loss in the first place would demonstrate a lack of fraudulent intent." *Calderon*, 944 F.3d at 90. That is sufficient to rebut the government's argument that the Profit Evidence is irrelevant. That the banks turned a profit processing these transactions is relevant to whether the defendants contemplated some actual harm or injury to the "victim" banks' property.

The Second Circuit has also "repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain." *Davis*, 2017 WL 3328240, at *9 (quoting *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015)). That is also true under subsection 1 of the bank fraud statute because all three statutes require a scheme to defraud. *See id.* (whether the purported victim received the full economic benefit of the bargain is relevant to the "scheme to defraud" element of mail and wire fraud); 18 U.S.C. § 1344(1) (requiring scheme to defraud). Thus, evidence regarding whether the banks received the full economic benefit of their bargain with the defendants is relevant.[11] *See United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179–82 (2d Cir. 1970) (reversing mail fraud conviction because purported victims received the full economic benefit of their bargain with defendants); *United States v. Starr*, 816 F.2d 94, 98–99 (2d Cir. 1987); *United States v. Novak*,

---

[11]  "[M]isrepresentations or non-disclosure of information can[] support a conviction under" the so-called "right to control theory," but only when "those misrepresentations or non–disclosures can or do result in tangible economic harm." *United States v. Finazzo*, 850 F.3d 94, 111 (2d Cir. 2017). Thus, even if the government intends to assert such a "right to control" theory in this case, the Profit Evidence would be relevant to show that defendants' alleged misrepresentations did not cause the banks to suffer tangible economic harm.

443 F.3d 150, 159 (2d Cir. 2006) (same); *United States v. Shellef*, 507 F.3d 82, 109 (2d Cir. 2007) (same as to wire fraud).  The Profit Evidence supports the defense's argument that the banks received the full economic benefit of their bargain with defendants.[12]

The government's contrary argument is unavailing because it substantially overreads this Court's motion to dismiss opinion and the Supreme Court's decisions in *Shaw v. United States*, 137 S. Ct. 462 (2016) and *Loughrin v. United States*, 573 U.S. 351 (2014).  This Court recognized that *Shaw* held that subsection 1 of the bank fraud statute does not "demand[]" a showing of intent to cause financial loss and *Loughrin* held that subsection 2 does not "require[]" the government to show that the bank suffered a risk of financial loss.  *Weigand*, 2020 WL 5105481, *4.  But this does not mean whether the banks suffered such loss is *irrelevant* to the defendants' intent.  The government elides the distinction between what is *required* to prove the elements of bank fraud and what may be *relevant* to proving those elements.  It simply does not follow from the premise that "[p]ecuniary loss is not an element of the charged bank fraud conspiracy," that "lack of pecuniary loss by a bank is irrelevant to the question of the defendants' intent to defraud."  ECF No. 170 at 13.  The government's argument has no basis in law or logic: That the banks profited on marijuana transactions surely makes it "more probable" that the defendants never intended to cause any harm to the banks' money or property.  Fed. R. Evid.

---

[12]    Even if the government could show that an objectively reasonable Issuing Bank would not have processed the marijuana transactions but for the defendants' alleged misrepresentations, the Profit Evidence would still be relevant.  That is because it is insufficient for the government to prove, at least under subsection 1, that a defendant executed a scheme that did "no more than cause their victims to enter into transactions they would otherwise avoid." *Shellef*, 507 F.3d at 108.  The government must instead prove that the scheme "depend[ed] for [its] completion on a misrepresentation of an *essential element* of the bargain." *Id.* (emphasis added).  The Profit Evidence supports the argument that whether the transaction was for marijuana was not an essential element of the bargain between the banks and their customers.

401.  The Profit Evidence is highly relevant to proving that the defendants did not intend to defraud the "victim" banks.[13]

### C.      The Court Should Not Exclude the Profit Evidence Under Rule 403

The government also moves to exclude the Profit Evidence under Rule 403.  That rule permits (but does not require) a district court to "exclude relevant evidence if its probative value is *substantially* outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403 (emphasis added).  This evidence has substantial probative value as to multiple elements of bank fraud.  To meet its burden under Rule 403, the government must therefore show truly extreme prejudice.  It has not come close to doing so.  In support of its Rule 403 argument, the government merely repeats its erroneous argument that the Profit Evidence is irrelevant.  ECF No. 170 at 13.  As demonstrated above, that is incorrect, and the government's first motion in limine should be denied.

### III.   THE BANKS' FAILURE TO TAKE EVEN RUDIMENTARY STEPS TO CATCH PURPORTEDLY PROHIBITED MARIJUANA TRANSACTIONS IS RELEVANT TO MULTIPLE ELEMENTS OF THE OFFENSE (GOVERNMENT MOTION IN LIMINE #3)

The government also argues that the court should preclude the defense from arguing or presenting evidence that the banks failed to act with "sufficient diligence" in prohibiting marijuana transactions.  ECF No. 170 at 18 (capitalization altered).  That argument is meritless.  That the Issuing Banks did not take even rudimentary steps to catch purportedly "prohibited" marijuana transactions is relevant to multiple elements of the offense.

---

[13]    Notably, Visa and MasterCard are not banks, so even if the government could prove that the defendants intended to defraud them, that is not good enough.

The defense does not intend to argue that the banks' diligence practices were *insufficient*, in the sense that the banks should have done more to ferret out "prohibited" transactions. To the contrary, it made good sense *not* to expend scarce compliance resources to ferret out marijuana transactions because there was no reason for the banks to do so. Customers got the marijuana they wanted, so they didn't complain. The federal government also indicated that it would not undertake enforcement actions against the banks for processing marijuana transactions. And the banks further insulated themselves from liability by adopting pretextual "policies" against processing marijuana transactions. Given those realities, it made perfectly good sense for the banks to adopt a "see no evil" approach to such transactions.

What the defense *does* intend to argue is that if the banks were *actually* interested in prohibiting marijuana transactions, they would have conducted more than perfunctory diligence. Evidence substantiating that argument is relevant to materiality because the jury could infer from the banks' lack of diligence that they did not care about processing marijuana transactions.

The banks' lack of diligence is also relevant to other elements of the offense. For example, the banks' failure to do even basic due diligence is relevant to proving that the defendants did not intend to defraud the banks. From the premise that the banks did not take even rudimentary steps to ferret out "prohibited" marijuana transactions, a reasonable juror could infer that the banks did not *actually want* to ferret out such transactions. And if the defendants believed that the banks were happy to approve what they actually knew to be marijuana transactions with a wink and a nod, then they did not intend to "defraud" the banks by "disguising" the nature of the marijuana transactions.

The government also argues that evidence about the banks' willful blindness is irrelevant. As described above, that is incorrect even as to materiality. In any event, willful blindness is

relevant to other elements of the offense.  For example, evidence and argument that the banks were willfully blind will undermine the premise that the banks had "policies" against processing marijuana transactions that they actually enforce, a central pillar of the government's case.

The government did not move to preclude the defense from arguing that the banks were willfully blind.  *See* ECF No. 170 at 18 (moving to "preclude evidence or argument that victim banks purportedly failed to act with sufficient diligence or acted negligently").  The government did argue (incorrectly) that the banks' willful blindness was irrelevant to materiality but did not contest that it is relevant to other elements of bank fraud.  Thus, the government's motion should not be construed as an attempt to preclude the defendants from arguing that the banks were willfully blind to the extent the banks' willful blindness is relevant to other elements of the offense.  And the motion should be denied in any event.

## IV.  THE DEFENSE SHOULD BE PERMITTED TO EXPLAIN THE RELATIONSHIP BETWEEN MARIJUANA'S LEGAL STATUS AND RELEVANT BANKS' POLICIES AND PROCEDURES (GOVERNMENT MOTION *IN LIMINE* #2)

The government seeks to preclude three categories of evidence, arguing they are irrelevant to the issues in this case:  (1) the federal government's enforcement of federal laws prohibiting the possession, distribution, and use of marijuana; (2) laws permitting the sale or recreational use of marijuana in states other than California and Oregon and/or countries outside the United States; and (3) efforts to legalize or decriminalize the sale of marijuana under federal law or create a safe harbor for banks and financial institutions doing business with state-legal marijuana businesses.  The defense does not seek to introduce evidence or argument on point (3), rendering that portion of the motion moot.  The government is wrong on points (1) and (2), and its motion should be denied as to those points.

A.   **Evidence Regarding the Federal Government's Enforcement of Laws Prohibiting Possession, Distribution, and Use of Marijuana Is Relevant**

To the government's first point, the government summarily asserts that "most United States banks have policies that prohibit, and are generally unwilling to approve, transactions that involve the sale of marijuana." ECF No. 170 at 15. The government offers its own assumption about these policies as an undisputed fact, beyond reproach, and seeks to preclude the defense from challenging it in any way. However, the defense is entitled to challenge not only the *existence* of such policies but also their *interpretation and enforcement* by the Issuing Banks in contesting whether any of the alleged misrepresentations in this case were material—an issue of fact for the jury.[14]

The Court should not preclude the defense from arguing and presenting evidence about the federal government's guidance and enforcement practices in the marijuana-related financial services sector because they directly inform and explain the Issuing Bank's policies and behavior with respect to the transactions at issue. That the federal government assured the banks that it would not enforce federal law regarding marijuana in states where it is legal is a key part of explaining *why* (as the defense will argue at trial) the banks did not (and do not) care if their customers use their credit and debit cards to purchase marijuana.

The defense will not offer this evidence to argue selective prosecution. As the government points out, it charges conspiracy to commit bank fraud, not a marijuana-related offense, (ECF No. 170 at 7), and the defense will not argue to the jury that it should acquit the

---

[14]   The Government repeatedly conflates bank policies regarding commercial business accounts with policies governing credit and debit card transaction authorizations by its customers holding bank-issued credit and debit cards. *E.g.*, ECF No. 170 at 14. These policies are *not* the same, and it would only confuse the issues, mislead the jury, and waste time to permit the government to introduce evidence of the banks' policies regarding commercial business accounts when only the policies regarding bank-issued credit and debit cards are relevant in this case. *See* ECF No. 163 at 3–7 (Memorandum in Support of Defendant's Akhavan's Motion in Limine #5).

defendants because the federal government has declined to prosecute others for marijuana-related offenses.   However, the government has put at issue whether a misrepresentation concerning a marijuana-related credit card transaction would be material to an objective, reasonable bank—that is, whether it would have "a natural tendency to influence" (*Neder*, 527 U.S. at 16) or "is reasonably likely to influence" (*Rigas*, 490 F.3d at 231) a bank's decision to process the transaction.   That inquiry is necessarily informed by the business environment that objective, reasonable banks find themselves in.   And that environment is, in turn, defined by the government's enforcement policies around marijuana.

As set forth in the defense's opposition to the government's motion to exclude testimony by John Vardaman, Issuing Banks throughout the country may, and many in fact do, serve the cannabis industry.  Akhavan Opposition to Government's Motion in Limine to Preclude Experts at 14–15.  The way the federal government has applied, interpreted and enforced this guidance, in spite of the lingering federal prohibition on marijuana, and how such guidance has been understood by Issuing Banks is directly relevant to how they behave.

Because of existing federal guidance, an objectively reasonable bank would have assumed (correctly) that it would not face an enforcement action for processing marijuana-related transactions, so there was no downside risk to processing cannabis transactions. Consequently, the banks do not maintain publicly available policies specifically prohibiting marijuana card transactions, nor do they enforce any potentially applicable general internal policies that could be construed to prohibit such transactions.  That makes it more likely that the defendants' misrepresentations were immaterial because the Issuing Banks would have approved the transactions however represented (as evidence sought by the Circle subpoena will demonstrate).  For these reasons, the Court should permit evidence and argument regarding its

enforcement of marijuana laws and guidance in the context of banking policies and regulations, and the enforcement of the same.

**B.      Evidence Regarding Laws Permitting the Sale or Recreational Use of Marijuana in States Other than California and Oregon and Internationally Is Relevant**

To the government's second point, the defense does not anticipate eliciting testimony or making an argument regarding marijuana's legal status in other countries, though it may refer to Visa or MasterCard's rules, policies and procedures which, given Visa and MasterCard's international reach, the defense understands are applied internationally and in the U.S.[15]  Nor does the defense anticipate discussing in detail the state of marijuana legalization in states other than California and Oregon, or offering into evidence the laws of other states.  However, the (non)enforcement of federal law in U.S. states where marijuana is legal *is* relevant to the broader inquiry into whether the Issuing Banks have reason to care if marijuana transactions are processed on their credit cards.  Thus, it would be inappropriate to preclude the defense from inquiring into the larger business environment in which the Issuing Banks—and, in particular, the large, national banks the government has indicated it will call as witnesses—operate, and which may inform their relevant policies.  A preclusive ruling on this point would be inappropriate, given the clear relevance of the broader legal landscape to the question of the materiality of the alleged misrepresentations.

---

[15]      For example, the defense may refer to credit card company coding policies and practices, which are by their own terms international.  Some of these policies and practices may implicate coding for marijuana outside the U.S., including Canada.  To the extent the Government elicits testimony or presents documents that raise this issue, the defense should have the opportunity to cross examine any witness on this matter.

V.   **THE DEFENDANTS SHOULD NOT BE PRECLUDED FROM INTRODUCING EVIDENCE THAT COUNSEL WAS PRESENT OR INVOLVED IN CERTAIN COMMUNICATIONS (GOVERNMENT MOTION *IN LIMINE* #6)**

The government has repeatedly inquired into whether the defense would assert an advice of counsel defense. The answer was, and remains, no. Unsatisfied, the government seeks a sweeping pretrial ruling to prohibit the defense from so much as mentioning the word "lawyer" without, at a minimum, providing an extensive privilege-waiving proffer. The Court should decline the government's premature and unfounded request.

Courts in this circuit have precluded "extensive" evidence offered simply to show participation of counsel in meetings or communications. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 683–84 (S.D.N.Y. 2013). However, that is not a blanket prohibition on references to lawyers—a defendant is permitted to "present evidence tending to show that he was not the person primarily responsible for the transaction and that the transaction occurred in the context of a sophisticated[] institution." *Id.* A defendant may also identify relevant individuals, including their profession, on documents that are otherwise admitted into evidence. *Id.* Here, it is certainly relevant to defendants' lack of criminal intent that conversations about the credit card processing proposals under discussion were conducted openly, in the full light of day, with not only Eaze executives but its lawyers as well. In other words, this was not a scheme perpetrated in the dark, behind the backs of those who were in position to say "no" to anything being discussed.

The government's cases—largely focused on securities fraud—are inapplicable here. The defense does not assert an advice of counsel defense as was at issue in *United States v. Scully*, 877 F. 3d 464, 476 (2d Cir. 2017). Nor is there "extensive" evidence counsel for the defendant or a co-defendant "blessed" any particular document or disclosure. *See Tourre*, 950 F. Supp. 2d at 683–84 (precluding evidence that counsel signed off on certain disclosures while

permitting evidence of the identity and profession of individuals mentioned on documents); *S.E.C. v. Lek. Securities. Corp.*, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) (barring evidence of co-defendants' consultations with their counsel).

In this case, the defense is not presently aware of "extensive evidence" of the involvement of counsel, nor does it anticipate eliciting testimony of the same, having listed one email chain including Eaze's counsel on its exhibit list.[16] In that sole chain of communication, Eaze is provided with extensive information *by the defendant* in response to a query by Eaze. The exhibit does not suggest the defendant sought, received or relied on any advice from that counsel. The document shows merely that Eaze involved its large and sophisticated team in discussing what the company considered a vexing problem of how to facilitate credit card transactions in the nascent marijuana industry—evidence that should not be precluded. *See Tourre*, 950 F. Supp. 2d at 683–84.

This type of material does not suggest reliance by the defendant on someone else's counsel (whose ultimate advice on the topic, if any, remains unknown to the defense), and does not present a veiled advice-of-counsel defense.[17] Even if the government had articulated a valid

---

[16]   The defense notes that the government produced approximately 4GB of data from Eaze on February 18 that purports to be the result of a long-delayed privilege review. That production presumably contains materials on which Eaze's counsel is present, but the defense has not yet had a chance to review it, much less determine if any of that material might be offered at trial.

The defense also notes that the government has listed an exhibit that reflects communications between the defendant's counsel and Eaze. The defense considers the exhibit entirely irrelevant to the issues in this case, but, to the extent the government seeks to introduce it or testimony around it, the defense does not anticipate it would prompt the defendant to assert an advice of counsel defense, veiled or otherwise, given that the agreement discussed in that communication never came to fruition. In any event, the government's application, to the extent it concerns communications not anticipated to be offered by the defense, is premature.

[17]   Further, in cases where there is a genuine concern that references to counsel may suggest or imply reliance, this Court has concluded a limiting instruction sufficient. *See S.E.C. v. Stoker*, No. 11-cv-7388 (JSR), ECF No. 100 at 895–96.

concern, the government's effort to preclude all evidence of the existence of lawyers, or obtain a proffer before a single question has been asked in this case is premature.[18]  The need for any extensive, privilege waiving proffer can be assessed if and when this material is offered.  *See, e.g.*, *United States v. Petit*, 19-cr-850 (JSR), ECF No. 115, at 8.  The Court should decline the government's request to preclude all references to counsel's presence or in communications.

## VI.   THE COURT SHOULD NOT ADMIT EVIDENCE OF MR. AKHAVAN'S ADULT CONTENT BUSINESS OR EVIDENCE OF THREATS [19] (GOVERNMENT MOTION *IN LIMINE* #8)

The Court should not admit evidence of Mr. Akhavan's adult content processing business or alleged "threats" because such evidence is irrelevant, prejudicial, and improperly offered only to impugn Mr. Akhavan's character.

### A.   The Court Should Not Admit Evidence of Mr. Akhavan's Adult Content Processing Business

In Section VIII(B) of its Memorandum, the government requests to offer evidence of the "broader business relationship between defendants and other co-conspirators."  ECF No. 170 at 39−44.  The government then lays out an elaborate foundation for why it should be permitted to offer evidence of Mr. Akhavan's unrelated adult content credit card processing business.  But none of the inflammatory detail the government seeks is needed to make the simple point that the government sets forth:  that CC-1 and CW-1 knew Mr. Akhavan through prior relationships in the payment processing industry, and that is how they came to pitch their processing solution.

In the Second Circuit, "evidence of acts occurring prior to the charged period of the conspiracy, offered only to show the background of a conspiracy" are "'other crimes' evidence"

---

[18]   What proffer the defense could make about the content of Eaze's communications with its own lawyer is entirely unclear, and highlights the government's overreaching on this issue.

[19]   Mr. Akhavan joins in full the arguments presented by Mr. Weigand in response to the governments requests in its eighth motion *in limine*, and does not repeat them here.

subject to Federal Rule of Evidence 404(b).  *United States v. Kaiser*, 609 F.3d 556, 570 (2d Cir. 2010). "However, evidence of uncharged criminal activity is not considered 'other crimes' evidence if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial."  *Id.*  None of these exceptions applies here.

*First*, Mr. Akhavan's adult processing business did not arise out of the same series of transactions as the conspiracy the government has charged.  Mr. Akhavan's adult content business pre-dated Eaze, and the two were separate and distinct before and after CC-1 approached Mr. Akhavan.  *Contra Rigas*, 490 F.3d at 238–39 (admitted acts were either repeated during the conspiracy, or were recorded in a way that continued to affect the company's books during the conspiracy to commit securities fraud); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (admitting evidence of falsification of inventory because the altered inventory was probative of the defendant's efforts to create a false image of the company's financial health in connection with charge of false acts to secure advances on a line of credit); *United States v. Innis*, 2019 WL 6999912, at *5–6 (E.D.N.Y. Dec. 20, 2019).[20]

*Second*, there is no allegation that either Mr. Akhavan's adult content business or the alleged marijuana transaction processing were financially (or otherwise) intertwined, interdependent, interrelated, or that any aspect of Mr. Akhavan's adult content business carried over to the alleged processing for Eaze.  *Contra United States v. Hsu*, 702 F.3d 22, 118–19 (2d Cir. 2012) (concluding that evidence of a defendant's simultaneous Ponzi scheme was relevant to campaign finance charges because evidence showed the Ponzi scheme funded the campaign

---

[20]    The government's reliance on *United States v. Roldan-Zapata* entirely misses the mark—in that case, the admitted evidence concerned prior drug deliveries the defendant had made for the same person and was used to explain how the illegal conspiracy came about.  916 F.2d 795, 804 (2d Cir. 1990).

contributions at issue); *Kaiser*, 609 F.3d at 571 (admitting information in a securities fraud case about prior contracts because they were directly relevant to how certain income and allowances were misrepresented to auditors).

By all accounts the proposed projects were entirely independent[21]—the two lines of business ultimately were not processed by the same means or the same company.  The government even admits that the Payment Processing Company CC-1 and CW-1 owned, and that processed certain transactions for Mr. Akhavan's adult business, never processed the marijuana-related Eaze traffic—never the twain did meet.  ECF No. 170 at 40.

*Third*, the proposed evidence does not complete any backstory.  This is not a situation where the government has evidence of a pre-existing criminal relationship.  *Contra Roldan-Zapata*, 916 F.2d at 804 (admitting evidence that concerned prior drug deliveries the defendant had made for the same person to explain how the illegal conspiracy came about); *United States v. Robinson*, 702 F.3d 22, 37–38 (2d Cir. 2012) (admitting evidence that shed light on whether the purported victim was a prostitute controlled by the defendant, an issue of fact at the heart of the prosecution for sex trafficking a minor).  Here, the adult content processing CC-1 pitched does not explain how the alleged Eaze processing relationship came to be, because the two were pitched in parallel, not in sequence.  CC-1 was acquainted with Mr. Akhavan from an acquiring bank Mr. Akhavan had used in the past, but the government says nothing to suggest they were more than casual business acquaintances.  And there is no reason to think that CC-1 could not have pitched for the Eaze processing (which never came to fruition) without also pitching for the

---

[21]    The projects appear to have had entirely different needs—according to proffer materials provided by the government, the adult-content business needed a solution for a high-chargeback subscription-based product.  The marijuana-related processing, which was low-chargeback and not subscription based, had entirely different processing requirements.  *See, e.g.*, 3500 Material (Doc. No. 3501-0321).  It only makes sense they were kept separate.

adult-content processing.  In sum, the adult-content aspect of the communications adds nothing to the Eaze story.

The government's request is a naked attempt to improperly place before the jury that Mr. Akhavan also processed credit cards for adult-content websites.  The government loses nothing relevant to the case by being prohibited from making reference to Mr. Akhavan's adult-content processing work.  Put simply, the government posits that CC-1 knew Mr. Akhavan from prior business interactions, and that CC-1 and CW-1 approached Mr. Akhavan with two business proposals, one of which is relevant to this case and one that is clearly not.  The jury would gain nothing relevant to the charged scheme by learning details of Mr. Akhavan's uncharged and entirely legal adult-content processing business.[22]  CC-1 and CW-1 approached Mr. Akhavan with an idea for processing Eaze's transactions.  The initial plan did not work, and CC-1 and CW-1 pivoted to the "scheme" the government alleges in this Indictment.  That Mr. Akhavan *also* processed adult content is irrelevant.

However, even if the adult processing were minimally relevant, the court should preclude any reference to adult content or pornography, as such a reference is likely to be extremely prejudicial.[23]  As set forth in Mr. Akhavan's motion *in limine* #1, references to pornography and adult content are likely to have the effect of inflaming the jury and causing them to condemn Mr. Akhavan for conduct they view as morally corrupt, even though such conduct is legal, rather than focusing on the entirely unrelated crime actually charged.  ECF No. 155 at 13.

---

[22]    The government insinuates that Mr. Akhavan's desire to reduce chargebacks in his adult content processing is somehow nefarious—for the reasons Mr. Weigand articulates in his response to this motion *in limine*, controlling chargeback levels is an important, and in fact mandated, aspect of participation in the Visa and MasterCard networks.

[23]    The government's contention that pornography is no more inflammatory than the charged scheme bears no serious consideration.  It has been widely recognized that pornography is a divisive issue that readily inflames a jury and can cause significant prejudice to a defendant. *See* ECF No. 155 at 13–14.

The evidence is also not admissible under Rule 404(b).  As an initial matter, the government's vague references to chargebacks and "deceptive" websites do not sufficiently allege the similarity of Mr. Akhavan's adult content processing business to the scheme at issue. *See United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) ("The court abuses its discretion if the evidence is 'not sufficiently similar' to the charged conduct.").  Indeed, the government's sparse evidence suggests the two were so different that they could not even be processed by the same company, much less in the same manner.  *See* ECF No. 170 at 40 (indicating that the payment processing company of CC-1 and CW-1 could not process the marijuana-related transactions).

Further, Mr. Akhavan's adult content processing business is irrelevant to the alleged marijuana transaction processing—its shows nothing about Mr. Akhavan's knowledge, intent or lack of mistake with respect to marijuana transaction processing.  To the extent the government seeks to elicit information about the defendants' alleged familiarity with payment processing systems in general, that can be readily elicited by means that are not clearly intended simply to sow prejudice in the jury, including, most obviously, through the millions of pages of documents the government has acquired from Eaze and other subpoena targets directly implicated by the charged scheme.  Nor is the government otherwise precluded from inquiring into Mr. Akhavan's processing knowledge relevant to the alleged marijuana transaction processing scheme. However, it is needlessly prejudicial to inquire into Mr. Akhavan's adult content business in particular.  The government's request should be denied.

**B.     The Court Should Not Admit Documents or Testimony Regarding Alleged "Threatening" Conduct by Mr. Akhavan**

The Court should also decline the government's invitation to prejudge the admissibility of a purported text message and testimony regarding a phone call that the government's cooperating witness characterizes as "threatening."

As an initial matter, the document in question suffers from certain defects that call into question its reliability and authenticity.  The message appears to be an excerpt or partial screen shot of a Telegram chat sent to a third party.  In addition to the issues raised for all Telegram communications in Mr. Akhavan's motion *in limine* #7, ECF No. 167, the message is incomplete, identifying neither a date, nor recipient, nor any context surrounding the communication.  For these reasons alone the message should be precluded.

Even if reliable, the message and CW-2's interpretation of the call are more prejudicial than probative, and should be excluded on that basis.  Evidence offered against a defendant that is material to an issue in the case may still be unduly prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980).  Such evidence must be carefully considered because of the risk that it will prejudice the defendant by reason of proving an adverse *immaterial* fact, or by simply exciting the emotions of the jurors against the defendant.  *Id.* ("When material evidence has an additional prejudicial effect, Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant.").

Here, CW-2's characterization of Mr. Akhavan's behavior on the call, which appears to center on the parties' business dispute, as "threatening" is substantially more prejudicial than

probative of any of the points raised by the government.  Further, the government appears to intend to offer the evidence as a gateway to create a situation in which, if the defense chooses to challenge the witness's interpretation of the business dispute as a "threat," the government can then elicit even further irrelevant and prejudicial testimony regarding Mr. Akhavan's possession of firearms.  ECF No. 170 at 49–50 & n.12.  The Court should reject the government's effort to bootstrap such irrelevant and extremely prejudicial information.

Moreover, the government has available to it many more probative, less prejudicial means to elicit relevant evidence of Mr. Akhavan's alleged intent, motive, and participation. When faced with evidence that may be both probative and prejudicial, "district courts must take care to determine whether there exists any alternative evidence with the same or greater probative value, but with a lesser threat of unfairly prejudicing the defendant, as the proffered evidence."  *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 170 (S.D.N.Y. 2006).  Where, as here, such evidence is readily available, the "court must discount the probative value of the originally proffered evidence and exclude it if its [discounted] probative value is substantially outweighed by unfair prejudice to the defendant." *Id.* (citing *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997)).

On the subject of the defendant's alleged intent and participation, the government has a parade of witnesses, including two cooperating witnesses, who the defense understands will testify to the defendant's alleged involvement in the scheme, and hundreds of documents (at least) containing communications between the defendant and Eaze employees.  Further, the government can rely on documentary evidence and testimony as to any financial arrangements or negotiations between Mr. Akhavan and the Company that show any purported economic interest

in the scheme, as well as his continued relationship with the Company after March of 2018.[24]
Such evidence is more probative, more reliable, and significantly less prejudicial to the
defendant than that proposed by the Government.

## VII.   THE COURT SHOULD PERMIT THE DEFENSE TO INQUIRE INTO WITNESS BIAS, SHOULD THE ISSUE ARISE AT TRIAL (GOVERNMENT MOTION *IN LIMINE* #9)

Counsel for Mr. Akhavan does not currently intend to inquire into any of the prior bad
acts which the government seeks to have excluded in its motion.  For that reason, Mr. Akhavan
does not oppose the government's motion *in limine* to preclude testimony on these topics, with
one exception discussed below.  Indeed, Mr. Akhavan mostly agrees with the government:  In
general, a witness's past drug use, marriage and romantic life, and prior arrests for crimes that
are not in the nature of *crimen falsi* and did not result in conviction are not probative of the
witness's character for truthfulness or untruthfulness and should be precluded under Rules
608(b) and 403.  *See* ECF No. 155 at 9–11.  Thus, the defense does not oppose most of the
government's ninth motion *in limine*—provided, of course, that the government does not oppose
Mr. Akhavan's mirror motion *in limine* on the same issues.

The lone exception is the government's request that the Court preclude the defense from
inquiring into Witness-1's "brief romantic relationship with another Company employee."  ECF
No. 170 at 53.  The defense has reason to believe that the "Company employee" who had a

---

[24]   The government's 300, 400, 500 and 600 series exhibits all contain the type of
relevant evidence the government purports to elicit through the message and testimony of CW-2.
For example, there are over 200 emails on the government's exhibit list that post-date the alleged
threat from which the government can surely derive evidence of the Mr. Akhavan's purported
participation in the scheme, while the 900 series contains potential evidence relevant to Mr.
Akhavan's purported financial interest in the project (which the defendant denies), that the
government seeks to offer as evidence of motive to participate in the scheme.  The defense does
not concede the admissibility or relevance of any particular exhibit but merely notes that the
government has a trove of material from which it can draw to attempt to make its case with
respect to Mr. Akhavan's intent and participation in the alleged scheme.

relationship with Witness-1 will also appear as a witness at the trial in this case.  As noted above, defense counsel does not currently intend to inquire into this relationship, but defense counsel also does not know precisely what Witness-1 and the "Company employee" intend to testify to. To the extent Witness-1 and the "Company employee" present testimony that could be reasonably construed as biased as the result of their "brief romantic relationship," the defense should be able to cross examine both witnesses on the source of that potential bias.  *See Wilder*, 220 F. Supp. 3d at 478 ("The movant in a motion in limine seeking to exclude evidence has the burden of establishing that the evidence is not admissible for any purpose.").  The defense respectfully requests that the Court reserve judgment on this issue.  *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d. 471, 476 (S.D.N.Y. 2009) ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context.").  The defense is willing to agree to approach the bench before raising this issue before the jury, should the issue arise.

## VIII.  MR. AKHAVAN JOINS IN DEFENDANT WEIGAND'S OBJECTIONS TO GOVERNMENT'S MOTIONS *IN LIMINE* #5 AND #7

Mr. Akhavan joins in full the arguments presented by Mr. Weigand in his response to the government's fifth and seventh motions in limine (ECF No. 170 at 24, 32), and does not repeat those arguments here.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motions *in limine.*

Dated: February 23, 2021


ROTHKEN LAW FIRM                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Ira Rothken*                   */s/ William A. Burck*
Ira Rothken                         William A. Burck
Jared Smith                         Derek L. Shaffer
3 Hamilton Landing                  777 6th Street NW 11th floor
Suite 280                           Washington, DC 20005
Novato, CA 94949                    Telephone: (202) 538-8000
Telephone: (415) 924-0425           Fax: (202) 538-8100
Email: ira@techfirm.net             Email: williamburck@quinnemanuel.com
Email: jared@techfirm.net           Email: derekshaffer@quinnemauel.com

                                    Christopher Tayback
                                    Mari F. Henderson
                                    865 S Figueroa Street 10th Floor
                                    Los Angeles, CA 90017
                                    Telephone: (213) 443-3000
                                    Fax: (213) 443-3100
                                    Email: christayback@quinnemanuel.com
                                    Email: marihenderson@quinnemanuel.com

                                    Sara C. Clark
                                    711 Louisiana St., Ste. 500
                                    Houston, Texas 77002
                                    Telephone: (713) 221-7000
                                    Fax: (713) 221-7100
                                    Email: saraclark@quinnemanuel.com