# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>HAMID AKHAVAN and RUBEN WEIGAND,<br><br>        Defendants | Case No. 20-cr-188 (JSR) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RUBEN WEIGAND'S MOTION TO DISMISS THE INDICTMENT

**TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................................. 1
I.   PRETRIAL MOTIONS DID NOT EXCLUDE SPEEDY TRIAL ACT TIME
     BETWEEN DECEMBER 1 AND FEBRUARY 9 ............................................................. 1
II.  THE ACT'S ENDS-OF-JUSTICE EXCEPTION DOES NOT APPLY ........................... 2
III. THE COURT SHOULD DISMISS THE INDICTMENT WITH PREJUDICE ............... 5
IV.  MR. WEIGAND'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL HAS
     BEEN VIOLATED .............................................................................................................. 6
CONCLUSION .............................................................................................................................. 7

-ii-

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States. v. Colon*,
  477 F. Supp. 2d 419 (D.P.R. 2007) ........................................................................................ 2

*Henderson v. United States*,
  476 U.S. 321 (1986) ............................................................................................................ 1, 2

*United States v. Olsen*,
  SACR 17-00076-CJC, 2020 WL 6145206 (C.D. Cal. Oct. 14, 2020) ............................... 4, 7

*United States v. Smith*,
  569 F.3d 1209 (10th Cir. 2009) ............................................................................................. 1

*United States v. Schlegel*,
  687 F. App'x 26 (2d Cir. 2017) ............................................................................................. 6

*United States v. Taylor*,
  487 U.S. 326 (1988) ............................................................................................................... 6

*Zedner v. United States*,
  547 U.S. 489 (2006) ............................................................................................................... 3

**Statutes**

18 U.S.C. § 3161 ................................................................................................................ *passim*

**Other Authorities**

U.S. Const. Amend. VI ....................................................................................................... 6, 7

Defendant Ruben Weigand ("Weigand"), by and through his undersigned counsel, respectfully submits this reply memorandum of law in support of his motion to dismiss the Indictment with prejudice for a violation of the Speedy Trial Act and the Sixth Amendment.

## ARGUMENT

### I. Pretrial Motions Did Not Exclude Speedy Trial Act Time Between December 1 and February 9

The Government contends that Mr. Weigand's calculation of Speedy Trial Act time is incorrect because certain motions were filed on February 5, 2021, which, according to the Government stopped the Speedy Trial Act clock. *See* Gov. Opp. at 6. Specifically, the Government claims that Speedy Trial Act time stopped on February 5 when the Government filed a motion in limine to admit business records pursuant to Federal Rule of Evidence 902(11), [ECF No. 135], and non-party Circle Internet Financial, Inc. ("Circle") filed a motion to quash Mr. Weigand's subpoena duces tecum [ECF No. 137]. *Id*. The Government's argument is wrong and is premised on a misinterpretation of the Act's automatic exclusion subsection, § 3161(h)(1). Based on this misinterpretation, the Government incorrectly concludes that 70 non-excludable days had not elapsed as of February 9.

The Government acknowledges that, with respect to pretrial motions, § 3161(h)(1) excludes time in two situations—treating differently[1] a pretrial motion that *requires a hearing*, and

---

[1] *See U.S. v. Smith*, 569 F.3d 1209, 1211 (10th Cir. 2009) ("The amount of time occupied by consideration of pre-trial motions depends on whether the motions entail a hearing. If there is a hearing on the motion, the period of excludable delay extends from the time the motion is filed 'through the conclusion of the hearing on, or other prompt disposition of, such motion.' 18 U.S.C. § 3161(h)(1)(D). If not, the excludable period is the time 'reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.' 18 U.S.C. § 3161(h)(1)(H).").

1

a pretrial motion that is *decided on the papers*. See *id*. at 4-5 (quoting *Henderson v. United States*, 476 U.S. 321, 329 (1986)).  Where a pretrial motion requires a hearing, the Speedy Trial Act excludes time between the date the motion is filed and the conclusion of the hearing. *See Henderson*, 476 U.S. at 329.  Where a pretrial motion is decided on the papers—which both February 5 motions were [ECF No. 151, 177]—the Speedy Trial Act excludes up to a 30-day period after the motion is "under advisement," *i.e.*, when the court receives all papers it reasonably expects to receive. *Id*. at 328-329; *see also U.S. v. Colon*, 477 F. Supp. 2d 419, 421 (D.P.R. 2007) ("Motions which require no hearing, such as those at issue, only toll the Speedy Trial Act clock for thirty (30) days, from the time the court receives all reasonably expected papers.").

The earliest date the Court received "all reasonably expected papers" with respect to the February 5 motions was on February 11, when the Government filed its reply brief in support of its motion *in limine*. [ECF No. 148].  The Court received all reasonably expected papers with respect to Circle's motion to quash on February 16, when the defendants both filed their opposition papers. [ECF No. 152, 153].  Therefore, time was not excluded by virtue of motions until February 11, and 70 non-excludable days had indeed elapsed as of February 9.

**II.    The Act's Ends-of-Justice Exception Does Not Apply**

    a.    *The Court's Endorsement of the Government's December 1 Letter Does Not Satisfy the Act's Ends-of-Justice Exception*

The language of the Act is clear: "No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless *the court sets forth*, in the record of the case, *either orally or in writing*, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added).  Nonetheless, the Government argues that, for purposes of satisfying the Act's ends-of-

2

justice exception, the Court can implicitly adopt the reasons outlined in the Government's December 1, 2020 letter requesting exclusion of time under the Act. *See* Gov. Opp. at 7; *see also* ECF No. 124.  The Government cites no case law to support its position.

Failing to cite such authority, the Government requests the Court "affirm its findings as to this case in an Order, including citation to the particular provision of the Speedy Trial Act that applies, before the Court rules on Weigand's motion to dismiss." Gov. Opp. at 8.  Although, as the Government notes, the Supreme Court has *suggested* that the Speedy Trial Act would allow a court to set forth its findings on the record at the time it decided a defendant's motion to dismiss,[2] it is irrefutable that the "findings must be made . . . before granting the continuance," and "the continuance can only be "granted . . . on the basis of [the court's] findings." *Zedner v. United States*, 547 U.S. 489, 506-507 (2006) (quotations omitted; alteration in original).  In *Zedner*, the Supreme Court explained that "Congress . . . saw a danger that [ends-of-justice] continuances could get out of hand and subvert the Act's detailed scheme," and therefore sought to "counteract substantive openendedness with procedural strictness" by demanding "on-the-record findings and specif[ying] in some detail certain factors that a judge must consider in making those findings." *Id*. at 508-509 (holding that "[e]xcusing the failure to make these findings as harmless error would be inconsistent with the strategy embodied in § 3161(h).").

      b.    *Circumstances Surrounding the Pandemic Did Not Make it Impossible to Try this Case*

The Government concedes that federal trials have been held since the first wave of COVID-19 hit the United States, but then argues that Mr. Weigand's right to a speedy trial is outweighed

---

[2] The Supreme Court, in the same opinion, discouraged such conduct: "The best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *See Zedner v. United States*, 547 U.S. 489, n.7 (2006).

3

by the COVID-19 pandemic simply because there is a "limit [to] the number of jury trials that simultaneously can be conducted in a safe manner." Gov. Opp. at 8-9. This interpretation of the ends-of-justice exception is unsupported by the Government's own cases.

The operative ends-of-justice factor[3] here is § 3161(h)(7)(B)(i): "Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding *impossible*, or result in a miscarriage of justice." (emphasis added). The cases the Government cites in which courts have invoked the ends-of-justice exception in the face of unforeseeable emergencies all involve catastrophes that, for a brief period of time, made holding trials at the respective courthouses a physical and logistical impossibility. *See* Gov. Opp. at 10 (citing cases). Indeed, in *United States v. Olsen*, a court in the Central District of California cited the same cases (with the exception of one) to support its finding that "[c]ontinuances under the 'ends of justice' exception in the Speedy Trial Act are appropriate if without a continuance, holding the trial would be *impossible*." *United States v. Olsen*, SACR 17-00076-CJC, 2020 WL 6145206, at *4 (C.D. Cal. Oct. 14, 2020) (emphasis in original). The *Olsen* court then explained, in great detail, that although the "current pandemic is serious, and with little precedent[,] . . . under the current circumstances, it is simply not a physical or logistical impossibility to conduct a jury trial." *Id*. at *5.

---

[3] Although the Government cites § 3161(h)(7)(B)(iii) & (iv) as well, [Gov. Opp. at 9], albeit without any explanation as to their applicability, the Court should not retroactively consider these factors. Section 3161(h)(7)(B)(iii) pertains to Speedy Trial Act time as it relates to the filing of an indictment. Section 3161(h)(7)(B)(iv) permits an ends-of-justice exception if the defendant or the Government would otherwise not have reasonable time to prepare for trial, which this Court has already concluded was not the case. *See* January 7 Conference, Tr. at 15:21-23 ("The whole reason for these adjournments is the pandemic, nothing else. The Government is ready to go. I'm ready to go.").

4

### III. The Court Should Dismiss the Indictment with Prejudice

The Government argues that the Court should not dismiss the Indictment with prejudice because: (1) the crime alleged is serious, (2) the violation of the Act was unintentional, and (3) Mr. Weigand cannot establish prejudice. *See* Gov. Opp. at 10-12. The Government is wrong on all three counts.

First, the Government contends that the crime alleged is serious because "[t]he defendants carried out a years-long scheme to deceive every participant in the payment processing system into processing roughly $160 million of illegal transactions." Gov. Opp. at 11. The Government's claim that the defendants deceived "every participant in the payment processing system" is contradicted by the Government's own allegations that other players in the payment industry were willing[4] participants. *See, e.g.,* Gov. Motion in Limine [ECF No. 169] at 39-40 (discussing alleged involvement of representative of payment processing company and acquiring bank). Also, the Government has not produced any evidence demonstrating that Mr. Weigand was involved in a single transaction processed by Eaze prior to 2018, nor have they produced evidence demonstrating that Mr. Weigand's participation continued into 2019.[5] Mr. Weigand has no

---

[4] In response to Mr. Weigand's claim that the issuing banks continue to approve transactions from Eaze, processed via Circle Internet Financial, Inc., the Government states, in conclusory fashion, that Mr. Weigand's argument "rests on a fundamental misunderstanding as to how the technology they describe actually works." Gov. Opp. at 12. However, the Government made no effort to elaborate on how this technology is materially different from the conduct charged in the Indictment. Absent such an explanation, the effect of Circle's technology is clear: U.S. issuing banks have been approving millions of dollars in transactions that explicitly say "Eaze" in the descriptor. *See* Memorandum Order [ECF No. 177] at 9 ("In essence, Circle offers Eaze USD Coin as a fig leaf separating the issuing bank from Eaze. But -- and here is defendants' key allegation -- Circle does not hide what it is doing from the banks."). Critically, the issuing banks have been doing so despite the publicized 2019 civil case related to the charged conduct, and this highly publicized criminal case, in connection with which a good number of the issuing banks have received subpoenas.

[5] Indeed, as the Court is aware, in May 2019, the Government's main cooperating witness placed a call to Mr. Weigand in attempt to procure incriminating information for the Government. Mr.

5

criminal history and is charged with a non-violent crime where the alleged victims suffered no monetary loss.

Second, the Speedy Trial Act violation here was not unintentional. This is not a case where a court simply lost track of its schedule. The suspension of jury trials was obviously intentional.

Third, the Government cannot seriously contend that Mr. Weigand is not suffering prejudice. He was incarcerated in a foreign country for seven months, during a pandemic, and underwent surgery while in custody. He continues to be subject to stringent, and expensive, bail conditions. Moreover, as detailed in Mr. Weigand's opening brief, Mr. Weigand continues to suffer the kind of non-trial prejudice highlighted by the Supreme Court in *United States v. Taylor*. *See* Weigand Opening Brief at 12 (quoting *United States v. Taylor*, 487 U.S. 326, 340 (1988)).

### IV.  Mr. Weigand's Sixth Amendment Right to a Speedy Trial Has Been Violated

The Government's argument that Mr. Weigand's Sixth Amendment right to a speedy trial was not violated also fails.

First, the Government concedes that courts have suggested that delays approaching a year could be presumptively prejudicial. *See* Gov. Opp. at 14. Moreover, Mr. Weigand has not affirmatively sought any continuance nor has he engaged in any pretrial litigation that prolonged the delay. *See, e.g., United States v. Schlegel*, 687 F. App'x 26, 28 (2d Cir. 2017) (finding that three year delay did not violate Sixth Amendment where defendant "sought several adjournments of the trial to review the voluminous discovery, and joined in much of the litigation that caused the delay . . .").

---

Weigand, in response to the Government's cooperating witnesses' reference to the charged scheme, stated "I'm not personally involved." Weigand Motion to Suppress [ECF No. 69] at n.1.

Second, the Government's contention that Mr. Weigand "ignored" the severity of COVID-19, or the resulting human casualties, is completely unfounded. Mr. Weigand recognized several times in his opening brief the severity of the COVID-19 pandemic, and the District's thoughtful procedures with respect to the pandemic. And it goes without saying that the loss of human life due to this wretched virus is unimaginably tragic. However, this case is markedly different from those cited in the Government's brief, where holding trial was a logistical and physical impossibility. *See* Gov. Opp. at 8. The right at issue here is an unwaivable constitutional right, and where courts have the ability to hold trials, *i.e.*, where trials are *possible*, as the Government concedes, the right must be upheld. *See United States v. Olsen*, 2020 WL 6145206, at *4 (C.D. Cal. Oct. 14, 2020).

Third, Mr. Weigand did assert his desire for a speedy trial consistently. *See* ECF No. 125; *see also* January 7 Conference, Tr. at 14:23-24. Mr. Weigand has asserted his right on the record, both in writing and orally, objecting to any more adjournments after December 1, 2020. *Id*.

Fourth, Mr. Weigand has been prejudiced, as Mr. Weigand has detailed in his opening brief; in his motions for reconsideration of this Court's bail decision; and also in his December 2, 2020 letter to the Court, in which he informed the Court that he did not consent to the exclusion of Speedy Trial Act time from December 1 to January 15. *See*, *generally*, ECF No. 26 (Weigand's first motion for bail reconsideration); ECF No. 98 (Weigand's second motion for bail reconsideration); ECF No. 125 (Weigand's December 2 letter); ECF No. 184 (Weigand's motion to dismiss).

## CONCLUSION

For the foregoing reasons, defendant Weigand respectfully requests that this Court dismiss the Indictment with prejudice.

| | |
|---|---|
| Dated:  New York, New York<br>          February 26, 2021 | Respectfully submitted,<br><br>DECHERT LLP<br><br>By: /s/ *Michael J. Gilbert*<br><br>Michael J. Gilbert<br>Shriram Harid<br>Steven Pellechi<br>Amy Lesperance<br>Three Bryant Park<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Michael.gilbert@dechert.com<br>Shriram.harid@dechert.com<br>Steven.pellechi@dechert.com<br>Amy.Lesperance@dechert.com<br><br>Michael H. Artan<br>Michael H. Artan, Lawyer, A Professional Corporation<br>1 Wilshire Boulevard, Suite 2200<br>Los Angeles, CA 90071<br>Michaelartan@yahoo.com<br><br>*Attorneys for Defendant Ruben Weigand* |