

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 2, 2021

**BY ECF**

Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
New York, New York 10007

**Re: *United States v. Hamid Akhavan et al.*, S3 20 Cr. 188 (JSR)**

Dear Judge Rakoff:

On March 1, 2021, during opening arguments, defendant Ruben Weigand indicated that he intends to seek to introduce evidence that, in or about May 2019, CW-1 called Weigand with the intent to elicit evidence that Weigand was involved in a bank fraud scheme, but that CW-1 "got nothing." (Mar. 1, 2021 Tr. at 95-96). The Government does not intend to introduce this recorded call during it's case-in-chief; however, Weigand apparently seeks to elicit details regarding the conversation, including his own statements, from CW-1 during cross-examination. *See id.*

**A. Relevant Facts**

In May 2019, as the charged bank fraud scheme was beginning to disintegrate following the identification of certain involved merchants by Mastercard, CW-2, acting at the direction of the Government, called Weigand.[1] During that call, CW-1 asked Weigand if he was "still dealing with the, with the group that the traffic – that we were trying to deal with?" Exhibit A at 3. Weigand responded, "Possibly. I know that there's still – there's some guys that I know or that I introduced. They are taking care of it." *Id.* CW-1 then explained that his team wanted to hand over hosting of certain websites to Weigand, noting that "your domain renewals all came up" and "[w]hat you've done is paid for those, but we don't want to be managing any of it beyond June." *Id.* at 5. Weigand responded that he would "check with our guys so that they can take it over." *Id.* Weigand subsequently added, "[s]o (U/I) take over so I'm not operationally involved at all, but I've rearranged some people, so that's – okay. I'll make sure that they are properly aware." *Id.* at 6. Eaze is never referred to by name in the conversation, by either CW-1 or Weigand.

Although the defendant informed the Court and the jury that this conversation is purportedly offered because CW-1 "got nothing" (Tr. at 95-96), reflecting Weigand's purported lack of criminal intent, that is not what the recording reflects. Weigand did not reflect confusion

[1] This conversation was recorded, and a full transcript of the conversation is attached hereto as Exhibit A.

as to what CW-1 was asking about, fail to offer a response, or indicate that he had never been involved with Eaze transaction processing. Rather, during the conversation Weigand made self-serving generalizations minimizing his involvement (the people taking care of it were "guys that I know or that I introduced," and he was "not operationally involved"), while acknowledging his role as a liaison between the relevant parties.

**B. Applicable Law**

A defendant's out-of-court statement is not hearsay when offered by the Government. Fed. R. Evid. 801(d)(2)(A). A defendant, however, does not have a parallel ability to offer his own statements. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). While the defendant may permissibly cross CW-1 regarding the conversations about which CW-1 testifies on direct examination, the May 2019 telephone call will not be such a conversation, and, in any event, a defendant cannot introduce his own statements—either by eliciting them on cross-examination or by playing a recording during cross-examination—on the ground that they are mere "impeachment." *See, e.g.*, *United States* v. *Faruki*, 803 F.3d 847, 857 (7th Cir. 2015) (The defendant "was not entitled to introduce his own hearsay statements through [the witness] to 'impeach' earlier statements [the defendant] had made [to the witness] . . . . The district court properly found that the appropriate vehicle for the introduction of such evidence would have been for [the defendant] himself to have taken the stand."). The basis for this settled rule is simple: Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Nor, except in extremely limited circumstances, may a defendant introduce his own out-of-court statements as evidence of his state of mind. To be admissible on that basis, the statement must be relevant to a then-existing state of mind or intent regarding a relevant fact. *See, e.g.*, *United States v. Lesniewski*, No. 11 Cr. 1091, 2013 WL 3776235, at *5 (S.D.N.Y. July 12, 2013); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016). Rule 803(3)'s exception to the hearsay bar only permits the limited admission of statements of future intent, not those concerning past intent and/or motive. *Shepard v. United States*, 290 U.S. 96, 105-06 (1933); *see also, e.g.*, *United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000). "There would be an end, or nearly that, to the rule against hearsay if the distinction [between past and future intent] were ignored." *Shepard*, 129 U.S. at 105-06.

Finally, even where a declarant's out-of-court statement is not otherwise inadmissible hearsay, it "must meet the requirements of, *inter alia*, relevance, and it must not be excludable on the grounds of undue confusion or prejudice under Rule 403." *United States v. Gupta*, 747 F. 3d 111, 139 (2d Cir. 2013) (affirming preclusion of evidence that a defendant allegedly intended to give "his wealth to charity" as both inadmissible hearsay and irrelevant).

**C. Discussion**

The defendant should be precluded from cross-examining CW-1 regarding this conversation for at least three reasons.

*First*, Weigand seeks to admit evidence of this conversation not for what he did say, but for what he did *not* say. (*See* Tr. at 95-96 (arguing that CW-1 "got nothing")). But the "absence of evidence is not evidence of absence," *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1117 (10th Cir. 2001), and a "defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions," *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). For example, Weigand's failure to mention Eaze by name—in discussing a processing scheme with which he is clearly familiar—reflects nothing more than the fact that he was not asked about Eaze by name.

*Second*, Weigand' statements during this conversation are inadmissible hearsay. For the jury to rely on the statements as "evidence" of the defendant's state of mind with respect to his intent to engage in fraudulent transactions, the jury would have to *believe* the defendant's assertions on these subjects. That is the very definition of statements offered for the truth; they are inadmissible hearsay. For example, the defendant's statement that he is "not operationally involved at all" is, even under the defendant's own theory, relevant only if it is true. So too with the other statements that the Weigand apparently seeks to offer. The statements have no valid relevance for their effect on the listener (CW-1), to prove notice, knowledge, or any other valid non-hearsay purpose.

Nor is Weigand's statement that he is "not operationally involved" one of "future intent," as would be required for admission under Rule 803(3). There is, likewise, nothing forward facing about Weigand's recitation that that individuals involved in Eaze's processing were "some guys who I know or that I introduced." These statements do not reflect Weigand's then-existing state of mind, and accordingly do not fall within Rule 803(3)'s exception to the hearsay bar.

*Finally*, Weigand should be precluded from eliciting evidence regarding this conversation under Rule 403. Because this conversation occurred at the conclusion of the bank fraud scheme's operation, its probative value of Weigand's intent while the scheme was in operation is minimal. To the extent that the statements arguably reflects Weigand's forward-looking intent to a time period in which the payment processing scheme had already shut down their probative value is even further reduced. Moreover, as noted above, the probative value of the statements relies on the jury believing, at least to some extent, that Weigand's statements as to the his level of involvement in the processing scheme are true, and therefore these are just the sort of statements likely to cause confusion that a limiting instruction likely will not be able to fully address.

Very truly yours,

AUDREY STRAUSS
United States Attorney

by: */s/ Emily Deininger*
Nicholas Folly
Tara LaMorte
Emily Deininger
Assistant United States Attorneys
(212) 637-1060 / 1041 / 2472

cc: all counsel of record (by ECF)