

Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6798=7
+1  212 698 3886  Main
+1  212 698 3599  Fax
www.dechert.com

March 3, 2021

**MIICHAEL J. GILBERT**

michael.gilbert@dechert.com
+1 212 698 3886  Main
+1 212 698 3599  Fax

**VIA ECF**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
New York, New York 10007

Re:  *United States v. Hamid Akhavan et al.*, S3 20 Cr. 188 (JSR)

Dear Judge Rakoff:

On cross-examination of the Government's cooperating witness, Oliver Hargreaves ("Hargreaves"), Weigand intends to elicit testimony about a phone call Hargreaves recorded with Weigand for the benefit of the Government in May 2019, while he was cooperating and before the alleged conspiracy ended.  *See* Trial Tr. at 95:17-96:10, 98:24-100:20 (Mar. 1, 2021).  As the Court ruled preliminarily on the first day of trial, Weigand's statements ". . . would be admissible to show lack of intent because he was being invited, by someone who allegedly was his co-conspirator, to confirm incriminating matters and instead he didn't."  Trial Tr. at 100:7-20.  That is precisely the purpose for which the statements will be offered.  The statements are admissible under Federal Rule of Evidence 803(3) as evidence of Weigand's then-existing state of mind *and* his then-future intentions—both of which are exceptions to the rule against hearsay.  Fed. R. Evid. 803(3).[1]

### A.   Relevant Facts

Hargreaves, obviously seeking to obtain incriminating statements from Ruben Weigand, asked Weigand if he was "still dealing with the . . . group that the traffic—that we were trying to deal with?"  Gov't Ex. A at 3.  But Weigand did not take the bait.  Instead, he replied, "I know there's . . . some guys that I know or that I introduced.  They are taking care of it."  *Id.*  Hargreaves again pressed Weigand, asking to "reaffirm it" and telling Weigand that "we wanted to hand this over to you."  *Id.* at 3-4.  And again, Weigand demurred, saying "so *you're* shutting this operation down."  *Id.* at 4 (emphasis added).  CW-1 did not let up, telling Weigand that "your domain renewals all came up."  *Id.* at 5.  Weigand again said he would "check with our guys . . . ."  *Id.* at 5-6.  Yet Hargreaves gave it one last try, pressing Weigand that "we've tried to give you some breathing

---

[1] As a separate matter, the statements are admissible to impeach Hargreaves' expected testimony. While Hargreaves has not yet testified, the Government's stated theory of the case suggests Hargreaves will testify that Weigand was far more involved than what is described in the recorded conversation.  Hargreaves failed to "correct" Weigand's statements.  In effect, Hargreaves tacitly endorsed what Weigand said when—under the circumstances—Hargreaves had every motive to "correct" him.



space to—before you have to take it over." *Id.* at 6.  And one last time, Weigand demurred, telling him that "I'm not operationally involved at all, but I've rearranged some people, so that's—okay. I'll make sure that they are properly aware." *Id.*

This conversation is plainly evidence of both Weigand's then-present state of mind, and his future intentions as to the alleged activities, before the alleged conspiracy ended.  Weigand did not believe he was "operationally involved at all." *Id.* at 3-6.  And Weigand showed no interest in "tak[ing] over" the operation." *Id.*  In sum, instead of procuring admissions, the call uncovered evidence of Weigand's lack of criminal intent.  *See* Trial Tr. at 95:17-96:10 (Mar. 1, 2021).

**B.  Relevant Law**

The Federal Rules of Evidence plainly exclude any "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" from the rule against hearsay.  Fed. R. Evid. 803(3).  Thus, courts repeatedly have allowed defendants to introduce their statements as to state of mind and then-future acts to rebut allegations of criminal intent.  *E.g.*, *United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) (holding that a defendant should have been permitted to introduce his prior statements that "the Government was trying to set him up").  For example, in *United States v. DiMaria*, 727 F.3d 265, 270-72 (2d Cir. 1984), the court held that a defendant should have been permitted to introduce her statement that "I only came here to get some cigarettes real cheap"—because the defendant was charged with possessing stolen cigarettes, and her statement was evidence of what she "was thinking in the present" about the cigarettes.  *Id.*  In other words, the statements "tended to disprove the state of mind required for conviction," because the statements were evidence that the defendant believed the cigarettes were "cheap," not stolen.  *Id.*

So long as the statements are evidence of the defendant's then-present state of mind or future intentions, they are not hearsay under Rule 803(3).  *See also, e.g.*, *United States v. Lea*, 131 F. App'x 320, 321 (2d Cir. 2005).  Nor does the Government contest this.  *See* Gov't Letter at 2 (March 2, 2021).  Instead, the Government raises the true, but irrelevant point that statements of past action or intent do not fall within Rule 803(3).  *Id.*

As to Hargreaves adoption of Weigand's statements, this amounts to impeachment of Hargreaves's expected testimony and constitutes circumstantial evidence that Hargreaves is exaggerating—to put it politely.

**C.  Discussion**

The conversation between Weigand and Hargreaves is plainly admissible under Rule 803(3).  As explained above, Weigand made numerous statements as to his then-present state of mind and future intent.  He disclaimed any intention to "take over" the operation.  Gov't Ex. A, at 3-6.  He believed that the domains were "not running at all." *Id.*  He disclaimed knowledge as to whether he dealt with the "traffic" at issue, saying he was not "operationally involved" and noting that



The Honorable Jed S. Rakoff
March 3, 2021
Page 3

others were "taking care of it." *Id.* These are all statements regarding Weigand's then-existing state of mind. *Id.*

Grasping at straws, the Government cites several cases regarding Rule 803(3), *all of which* dealt with statements of past actions or past intent. *See United States v. Lesniewski*, No. 11-cr-1091, 2013 WL 3776235, at *5 (S.D.N.Y. July 12, 2013) (statements were "later statements of memory or belief offered to prove the fact remembered or believed" (cleaned up)); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (statements were a "self-serving explanation of past events"); *United States v. Best*, 219 F.3d 192, 198 (2d Cir. 1980) (same). But that is not what Weigand said in this conversation. Instead of saying what he *had* done, Weigand said he was not *presently* involved, lacked *present* knowledge, and did not have any *future* intention to "take over"—just as in *DiMaria* or *Harris*, cited above.

Nor is this conversation an attempt to show Weigand's innocence "through proof of criminal acts on [other] specific occasions" or show something through the "absence of evidence." *See* Gov't Letter at 3 (quoting *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1117 (10th Cir. 2001); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990)). Beyond the fact that those two cited cases are not even about Rule 803(3), the conversation above *is evidence* that Weigand lacked any intent to defraud *during the alleged conspiracy*. Just as in *DiMaria*, saying "I don't know about that" and "I don't intend to get involved" are evidence of a lack of knowledge or criminal intent.

As a last resort, the Government falls back on Rule 403. *See* Gov't Letter at 3. But in the first place, the evidence is directly probative of Weigand's state of mind and intent regarding any scheme—and thus strikes at one of the key elements of bank fraud—intent. That probative value far outweighs any minor prejudicial effects of the evidence. And regardless, any minor prejudicial effects could easily be cured by a limiting instruction, as the courts have repeatedly said. *See, e.g.*, *United States v. Hammond*, 144 F. App'x 199, 199 (2d Cir. 2005). Indeed, that is especially true given that here, the instruction would be clear and easy to follow: the conversation is admissible as evidence of Weigand's then-present state of mind or then-future intent, months before the alleged conspiracy ended.

Finally, when Hargreaves called Weigand with the hope of gaining incriminating evidence, he was met with an accurate description of Weigand's activities. If Weigand was lying, Hargreaves could and would have made statements to Weigand suggesting Weigand left out parts of his past conduct. Hargreaves failure to do so will demonstrate Hargreaves expected testimony is false. Of course, if Hargreaves tells the truth and accurately describes Weigand's activities, the recorded statements will be unnecessary.

Respectfully submitted,

DECHERT LLP



The Honorable Jed S. Rakoff
March 3, 2021
Page 4

By: */s/ Michael J. Gilbert*

Michael J. Gilbert
Shriram Harid
Steven Pellechi
Amy Lesperance
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
Michael.gilbert@dechert.com
Shriram.harid@dechert.com
Steven.pellechi@dechert.com
Amy.Lesperance@dechert.com

Michael H. Artan
Michael H. Artan, Lawyer, A Professional Corporation
1 Wilshire Boulevard, Suite 2200
Los Angeles, CA 90071
Michaelartan@yahoo.com

*Attorneys for Defendant Ruben Weigand*

cc:  All Counsel (via ECF)