**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 | FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3170**

WRITER'S INTERNET ADDRESS
**christayback@quinnemanuel.com**

March 7, 2021

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Weigand, et al.*, 20 cr. 188

Dear Judge Rakoff:

On behalf of Defendant Hamid "Ray" Akhavan, undersigned counsel respectfully submits this letter seeking exclusion of evidence and other remedies stemming from the government's handling of certain electronic evidence of its cooperating witness, who has been working with the government since shortly after his arrest in September 2018. I am informed that Defendant Ruben Weigand, through his counsel, joins this request.

Background Facts. On the morning of Wednesday, March 3, 2021, three days into the trial in this case, the government informed the Court (and the defense) that it had discovered that at least one electronic device—an iPad—that had been seized from the primary cooperating witness in this case (who is currently testifying), and imaged, had never been produced to the defense. Tr. 316:16-18 The government also stated at that time that it was investigating the "possibility that there is data from a second iPhone." *See id.* That afternoon, the government provided the defense with a drive containing approximately 20GB of data reflecting the image of the iPad.[1]

Later that afternoon, and after the Court had adjourned for the day, the government informed the defense that a second phone had been seized when Mr. Hargreaves was arrested, but that the phone had not been imaged and had been returned to Mr. Hargreaves upon his release in October 2018.[2] The government provided no further details at that time.

---

[1] The government asserted that it understood there to be only 10GB of unique data, produced in two formats during the imaging process.

[2] The arrest report indicates that Mr. Hargreaves consented to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 3501-0051 (attached). The report indicates that (footnote continued)

On the morning of Friday, March 5, 2021, the defense emailed the government a list of eight questions regarding the missing iPhone in an effort to understand the facts and potential ramifications of the government's decision not to image one of three electronic devices seized from its cooperating witness and to return it to him without apparent monitoring or tracking. In the afternoon of Saturday, March 6, the government responded, indicating that Mr. Hargreaves had never used the phone that was not imaged, and that agent recalled it had not been set up.[3]

On Sunday, March 7, 2021, the government produced a subset of the iPad material that it represented to be the unique material from the iPad, which the defense continues to review. That same day, the government also produced additional 3500 material for Mr. Hargreaves that indicated the phone may have been ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 3501-0590; 3501-0591.[4]  The 3500 material also indicated for the first time that Mr. Hargreaves ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* Further, Mr. Hargreaves appears to assert that he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 3501-0591.

Oliver Hargreaves was arrested on September 27, 2018, and has been cooperating with the government since at least October 1, 2018—for more than two years. In that time, the defense understands the government has permitted Mr. Hargreaves to return to Europe, from where he has continued to assist the government in various investigations, including this one. It now appears that, rather than maintain close control over Mr. Hargreaves and his devices, the government was unaware of (and did not collect the contents of) at least 4 devices that Mr. Hargreaves has had in his possession since the start of this investigation, including a ▓▓▓▓▓▓ phone that Mr. Hargreaves suggests was intended for the precise purpose of concealing his communications with certain individuals.

Since his arrest, during the time of the charged conspiracy, Mr. Hargreaves has engaged in proactive cooperation at the government's behest, and the government intends to offer into evidence certain of Mr. Hargreaves' electronic communications including with the defendants and other alleged co-conspirators. It is now abundantly clear that those communications almost certainly do not provide a full record of the interactions between Mr. Hargreaves and others implicated in the scheme because the government did not take any steps to preserve Mr. Hargreaves' communications at the time, nor did it disclose that failure to preserve until now. That fact is borne out by the apparent abrupt ends to many of the "chats" which the government has identified as intended exhibits at trial, including at least one the government intends to introduce with this witness (*e.g.*,

---

on October 1, 2018, Mr. Hargreaves was provided his ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 3501-0051. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 3501-0581. The iPad was also subsequently returned.

[3] A copy of the email chain containing the questions and answers is attached as Exhibit A.

[4] 3501-0590 and 3501-0591 are attached as Exhibits B and C, respectively.

GX 4004).[5]  Such communications might have been central to the defense case, including because they might have provided evidence of Mr. Hargreaves' primary role in furthering the very scheme for which the defendants are charged.  Even in his limited testimony so far, Mr. Hargreaves has characterized Mr. Akhavan as his "client" and claimed that he was in "daily" communication with Mr. Weigand.  Tr. at 654:23 – 655:22.  The defense disputes both contentions, but only a complete record of Mr. Hargreaves' communication devices would allow the defense the necessary evidence to rebut them.  However, it appears that the government has permitted Mr. Hargreaves to cherry pick communications, allowing him to decide what evidence to send to the government, even though it should have been readily apparent that all of his communications should have been preserved and reviewed by the prosecution for potential disclosure obligations.

Requested Relief.  With respect to the newly disclosed data from Mr. Hargreaves' iPad, the defense is endeavoring to review the data provided.  Due to the late provision of the evidence, the defense seeks, at a minimum, to be able to recall the witness in the event that the defense identifies material from the iPad relevant to the defense.[6]  The defense understands the government does not object to this aspect of the instant application.

With respect to the issue of the various missing phones, the defense seeks (1) exclusion of the written text and email communications of the cooperating witness because they are evidently an incomplete record of his relevant communications given the absence of multiple of the devices he used to communicate; (2) an evidentiary examination of the witness and agents regarding their efforts (or lack thereof) to ensure relevant communications were preserved by Mr. Hargreaves; and (3) if warranted based on the Court's findings after an evidentiary hearing, any further sanction supported by the facts, including, but not limited to, a jury instruction advising that the jury may make an inference against the government's failure to preserve evidence or even dismissal.

Authorities.  With respect to the late disclosure of the iPad, although there is no precise deadline for when the government is required to disclose *Brady* and *Giglio* material, it must be produced "in time for its effective use at trial." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (internal quotation marks omitted); *accord DiSimone v. Phillips*, 461 F.3d 181, 196–97 (2d Cir. 2006).

With respect to the exclusion of the existing written communications of the government's cooperating witness recovered from his one phone, Fed. R. Crim. P. 16(d)(2)(C) provides that a court may "prohibit [a] party from introducing [ ] undisclosed evidence" if a party fails to make required document disclosures under Rule 16.  *See also* Fed. R. Crim. P. 16(d)(2)(D) (granting the court discretion to "enter any other order this is just under the circumstances").  By failing to preserve and produce to the defense the data from the cooperating witness' multiple electronic

---

[5]  GX 4004 is attached as Exhibit D.

[6]  As indicated, the defense is endeavoring to review the contents of the iPad.  However, the defense notes that it may seek exclusion of the evidence on the iPad if review is not feasible under the circumstances.  *See United States v. Anderson*, 509 F.2d 312, 324 (D.C. Cir. 1974) (decision to exclude late disclosed evidence is within the discretion of the trial judge); *see also United States v. Muessig*, 427 F.3d 856, 864 (10th Cir. 2005) (affirming district court decision to exclude document as sanction for failure to provide document to defense prior to trial).

devices—including one phone that the government actually seized from the cooperator at the time of his arrest—the government has not fulfilled its obligations.

In the Second Circuit, "[a] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *United States v. Garcia*, 596 F. App'x 24, 26 (2d Cir. 2015) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). To establish the second element, a showing of bad faith is not always required—"an adverse inference instruction may be appropriate in some cases involving the negligent destruction of evidence." *Id.* (internal quotations omitted). "To establish the third element, the party 'must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *United States v. Ulbricht*, No. 14-CR-68 KBF, 2015 WL 413426, at *6 (S.D.N.Y. Feb. 2, 2015) (quoting *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir.1998)).

In *United States v. Suarez*, the District of New Jersey dealt with a similar situation in which the cooperating witness exchanged text messages with FBI agents but the government failed to take any active steps to preserve the text messages, which were deleted in their back-up servers after 90 days and deleted by the agents on their phones to save space. In deciding to give an "adverse inference" jury instruction, the court considered that: (1) the text messages were within the government's control, (2) they were intentionally deleted by the agents, and prosecutors failed to take steps to preserve them, (3) the deleted messages were relevant to claims or defenses, and (4) it was reasonably foreseeable that they would have later been discoverable. 2010 WL 4226524, at *8 (D.N.J. Oct. 21, 2010) (citing *Mosaid Technologies Inc. v. Samsung Electronics Co.*, 348 F. Supp. 2d 332 (D.N.J. 2004)).

Similarly in *United States v. Stoll*, the Southern District of Florida gave an "adverse inference" jury instruction where the cooperating witness shredded original hard copies of documents that had not been scanned and, until the cooperating witness notified the government, prosecutors had represented that they had produced all relevant documents and *Brady* material. 2011 WL 703875, at *1 (S.D. Fla. Feb. 21, 2011) (citing *Suarez*, 2010 WL 4226524, at *8). Like the court in *Suarez*, the *Stoll* court found that the government did not act in bad faith but "was, however, grossly negligent and careless in fulfilling its obligations established by statute, rule, order, and case law." *Id.* at *2.

Respectfully Submitted,

*Christopher Tayback*

Christopher Tayback

CC: AUSAs Emily Deininger, Nicholas S. Folly, and Tara LaMorte

4