

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 8, 2021

**By EMAIL**                                                   **UNDER SEAL**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

Re:   *United States v. Hamid Akhavan & Ruben Weigand*,
        No. S3 Cr. 188 (JSR)

Dear Judge Rakoff:

The Government writes respectfully in opposition to the defendants' letter seeking suppression of evidence arising from the Government's purported mishandling of certain electronic evidence from its cooperating witness, Oliver Hargreaves. For the reasons explained below, defendants' letter-motion should be denied in its entirety as unsupported by facts or law.

**Background**

**I.  Hargreaves' Arrest and Cooperation**

As the Court is aware, the Government's cooperating witness, Oliver Hargreaves, was arrested on September 27, 2018, and shortly thereafter began cooperating with the Government. As detailed further below, at the time of his arrest, the Government seized a number of items, including, as relevant here, two cell phones and an iPad. The Government obtained consent from Hargreaves to search each of these items. The Government forensically imaged one of Hargreaves' cell phones ("Phone-1"), and the iPad, but did not forensically image the second cell phone ("Phone-2"), as the Government determined it had no evidentiary value. The Government returned each of the devices to Hargreaves. In October 2018, Hargreaves returned to Spain, and for a period of time used Phone-1 in connection with his proactive assistance.

Hargreaves's proactive assistance involved a number of targets unrelated to the defendants in this case. As Hargreaves affirmed, FBI law enforcement agents instructed him not to delete materials on his phone, and he did not do so. (3501-0593). Hargreaves lost Phone-1 (and subsequently lost at least two subsequent phones), but each of the cell phones was backed up to the same iCloud account. (3501-0593; 3501-0590).[1] At the FBI agents' request, Hargreaves

---

[1] Hargreaves' WhatsApp chats were never backed up to his iCloud account, but the Government produced to the defendants all WhatsApp chats forensically extracted from Phone-1.

periodically sent the agents information and data contained on Phone-1 (and the subsequent phones).

With respect to the defendants, Hargreaves participated in several calls and meetings after he began proactively cooperating.  In addition, he engaged in limited electronic communications.  As discussed below, this material was shared with the defense in discovery, including a recording that Weigand claims is exculpatory (a claim the Government disputes).  The Government also shared a substantial volume of materials concerning Hargreaves' cooperation against other targets with defense counsel on an attorney's eyes only basis, and permitted defense counsel to retain this material for the duration of trial.

## II.   Rule 16 and 3500 Productions

In April 2020, the Government produced the forensic image of Phone-1 that was created following Hargreaves' arrest.   That forensic image contained everything on Phone-1 that the Government was able to forensically extract as of October 2018.[2]  As stated in the Government's discovery letter, the Government produced to the defense "the results of a forensic analysis performed on a cell phone seized from an individual who is now cooperating with the Government in connection with this case." (Ltr. Dated April 29, 2020, to Akhavan; Ltr. Dated April 30, 2020, to Weigand).  The Government did not produce forensic extractions of any other device belonging to Hargreaves at any point in discovery.

The Government also produced in discovery materials pertaining to the defendants and/or the charged scheme that were generated in the course of Hargreaves' proactive cooperation.  For example, the Government produced, among other things, a recording of a meeting involving Hargreaves and Akhavan that occurred in 2019; a recording of a telephone call involving Hargreaves and a co-conspirator that occurred in 2019; and a recording of a telephone call that occurred between Hargreaves and Weigand in 2019.  Indeed, the Government's production included material identified as "screenshots from cooperating witness's cell phone" which included materials involving the defendants that post-dated Hargreaves' arrest.

In November 2020, the Government made its initial production of 3500 materials, including materials associated with Hargreaves.  Significantly, that 3500 material showed that upon arresting Hargreaves, agents seized, among other things, two cell phones and an iPad.  (3501-051).  Documents produced at that time also show that Hargreaves consented to the search of both of his cellphones, and that one of the phones (Phone-1) had been returned to him after it was imaged.[3]  (*Id.*).  However, as noted above, the Government had produced in discovery only a single forensic image from a single phone, labeled as such in its discovery cover letters dated April 29 and April 30, 2020.  In other words, defense counsel knew as of this time that the Government had

---

[2] As noted in the Government's motion *in limine*, the Government was unable to forensically extract Telegram chats from Phone-1.  Accordingly, the Government arranged for the Telegram chats to be videoed on Hargreaves' phone and produced in discovery.

[3] The materials state that the Agent advised Hargreaves that "any messages he sent from the phone would be able to be monitored by U.S. Government agents." (3501-0051).  This did not occur.

collected and obtained consent to search two of Hargreaves' cellphones, but had forensically imaged and produced only one of them.

In addition, the Government's initial 3500 production showed that certain of the materials produced to the defense in discovery were sent to the FBI from Hargreaves' cell phone, as reflected in produced screenshots of communications between Hargreaves and the FBI.

On Friday, March 5, 2021, following the receipt of a request from defense counsel for more information about Phone-1, Phone-2, and the iPad (*see infra*) the Government spoke with former SDNY Special Agent Kurt Hafer (the "Agent"), who was responsible for seizing Hargreaves' devices in 2018. The Agent recalls assessing Phone-2 and making the determination that Phone-2 had no evidentiary value. Accordingly, he did not arrange for it to be forensically imaged.

In addition, the Government met with Hargreaves to ask about his recollection of Phone-1 and Phone-2. During an initial conversation on March 5, Hargreaves did not recall having a second phone with him upon arrest, and further relayed that he had lost at least three phones subsequent to his arrest. (3501-0590).

In a conversation the following day, Hargreaves relayed that the previous day's discussion jogged his memory, and he recalled having a second phone with him upon his arrest. (3501-0591). He further stated that he could not recall whether he set up Phone-2, but he thought he might have. Hargreaves advised, however, that he had not used Phone-2. He "thinks" he "wiped" it and gave it to his daughter at a later time because her phone had been stolen. Moreover, Hargreaves "imagine[d]," that when he purchased Phone-2 he intended to use it as a "burner" phone, because it was "unlocked." (*Id.*).

## III.  Hargreaves' iPad

On the morning of Wednesday, March 3, 2021, the Government found relevant documentation of the former Agent who, as noted above, had left the U.S. Attorney's Office in October 2018, shortly following Hargreaves' arrest. That documentation showed that the Agent obtained consent from Hargreaves on October 10, 2018, to search the iPad, and that the iPad was returned to him on that same day.

As the Government relayed to the Court on Wednesday, March 3, 2021, the Government identified, that same morning, that it had in its possession a forensic image of an iPad from Mr. Hargreaves. By lunchtime on March 3, the Government arranged to produce copies of the iPad forensic image to the defendants, in a UFED format. The documentation described above was also produced to the defendants on March 3, 2021. (3501-0582).

Since then, the Government has made substantial efforts to facilitate the defendants' review of the content of the iPad forensic images. The evening of March 3, the Government produced to the defendants a combined PDF Cellebrite report (3501-0585), that identified whether the content contained therein was contained on Phone-1, the iPad, or both. On Friday, March 5, the Government wrote to defense counsel to reiterate an earlier conversation in which the Government

explained how to identify whether materials contained on that combined Cellebrite report reflected data from Phone-1, the iPad, or both.

On Thursday, March 4, the Government produced additional, separate Cellebrite reports for Phone-1 and the iPad, along with one-page summaries of those devices. (3501-0586 through 3501-0589).

On Sunday, March 7, the Government offered to walk defense counsel through the process of using the Cellebrite program to identify data unique to each device (and the Government in fact provided that tutorial earlier today). In addition, on Sunday, March 7, the Government also produced UFED reports that, to the best of the Government's ability, contained only the items in the iPad UFED report that did not also appear in the Phone-1 UFED report.

<b>Argument</b>

### 1. Legal Standard

#### a. Sanctions for Spoliation of Evidence

The Government's obligations under the Due Process Clause to make timely disclosures of exculpatory or impeaching evidence encompass evidence that is material and in its possession. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). For these purposes, the Government is considered to have possession of information within the individual prosecutor's custody, as well as information in the possession of "others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (2002). In other words, a prosecutor's constructive knowledge extends only to those individuals who are part of the "prosecution team," which generally includes individuals involved in "perform[ing] investigative duties or mak[ing] strategic decisions about the prosecution of the case." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015); *see also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (recognizing that "adopt[ing] a monolithic view of the government . . . would condemn the prosecution of criminal cases to a state of paralysis"). The Second Circuit has "never held that the 'prosecution team' includes cooperating witnesses." *Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (quoting *United States v. Garcia*, 509 F. App'x 40, 43 (2d Cir. 2013)).

In order to prevail on a due process claim relating to allegedly lost or destroyed evidence, a defendant must establish that (1) collected evidence was, in fact, lost or destroyed,[4] *see United States v. Ramirez*, No. 09 Cr. 446, 2011 WL 6945199, at *2 (S.D.N.Y. Dec. 23, 2011) (holding that defendant "failed to make the requisite showing" for sanctions based on purported destruction of recordings because, *inter alia*, "with respect to the alleged recordings, it is not clear that any

---

[4] The Second Circuit has not held that spoliation sanctions could be warranted based on a failure to *collect* evidence, and has in fact expressed skepticism on this point. *United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016) (noting lack of any substantive support for argument that "the failure to *collect* evidence could ground a due process claim" in circumstances where the defendant alleged that the prosecution team had "fail[ed] to take adequate steps to collect the original [electronic evidence]") (emphasis in original).

were ever made"); (2) "that the evidence possessed exculpatory value that was apparent before it was destroyed," *United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016), (3) that the evidence "was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means," *id.*; and, (4) that the Government acted in "bad faith." *Id*. Only if the defendants meet their burden on each of these factors does the burden shift to the Government, which must then show that sanctions should not be imposed because the defendants were not prejudiced. *United States v. Bufalino*, 576 F.2d 446, 449-51 (2d Cir. 1978) (affirming denial of motion to suppress where that was "minimal" "possibility that the defense could have usefully" supplemented case with destroyed back-up tapes given their poor quality); *see also United States v. Henderson*, 442 F. Supp. 2d 159, 163 (S.D.N.Y. 2006) (noting that "defendants must show" that these requirements are met).

Moreover, mere speculation about the "possibility" that evidence, if preserved, would have been exculpatory "is not enough." *Arizona v. Youngblood*, 488 U.S. 51, 56 n.* (1988); *see also United v. Davis*, 531 F. App'x 65, 69 (2d Cir. 2013) (affirming denial of adverse inference instruction where defendant "can only speculate that the [destroyed] video possessed exculpatory value"). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* Thus, where the evidence at issue "might have led in any number of directions," as opposed to being apparently exculpatory prior to its loss or destruction, the standard is not met. *Id.; see also Greenberg*, 835 F.3d at 304 (affirming denial of evidentiary hearing and motion to dismiss indictment where, among other things, defendant "offer[ed] no facts in support of his conclusion that the evidence was materially exculpatory, much less that the Government could have known this information"); *United States v. Campo Flores*, S5 15 Cr. 765 (PAC), 2016 WL 5946472, at *4 (S.D.N.Y. Oct. 12, 2016) (no due process violation where photographs were never collected, because they did not "possess an exculpatory value that was apparent" to the Government before they were destroyed).

### b.  Standard for Evidentiary Hearing

A defendant seeking a hearing on a suppression motion bears the burden of showing the existence of disputed issues of material fact. *United States v. Martinez*, 992 F. Supp. 2d 322, 326 (S.D.N.Y. 2014). "General and conclusory factual allegations which are based upon mere suspicion or conjecture . . . will not suffice to necessitate a hearing." *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991). Moreover, if "facts urged in support of hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required." *Id.*

### c.  Standard for Recalling a Witness

A district court has "broad discretion in controlling the scope and extent of cross-examination," *United States v. Rivera*, 971 F.2d 876, 886 (2d Cir. 1992), including whether to permit a party to recall a witness. *United States v. Fabian*, 312 F.3d 550, 558 (2d Cir. 2002), *abrogated on other grounds by United States v. Parkes*, 497 F.3d 220 (2d Cir. 2007). Among other things, a district court retains discretion to refuse to permit a defendant to recall a witness where (a) the defendant had a "full opportunity to cross-examine the witnesses during the government's case-in-chief," *United States v. Razzoli*, 548 F. App'x 733, 735 (2d Cir. 2013); or

(b) where the information sought to be elicited for impeachment purposes is not, in the district court's opinion, inconsistent with the relevant prior testimony, *Fabian*, 312 F.3d at 559.

## 2. Discussion

### a. The Government Will Ensure that Hargreaves Is Available to Be Recalled, But May Object Depending on the Intended Examination

Defendants seek the ability to recall Hargreaves in the event that they identify material from the iPad relevant to the defense. After conferring with defense counsel, the Government has agreed to ensure that Hargreaves will remain available in New York should that remedy be appropriate. Depending upon the specific iPad material that forms the basis of the defendants' request for further examination, however, the Government preserves the right to object to Hargreaves being recalled. If, for example, the materials from the iPad that the defendants seek to raise with Hargreaves were previously disclosed, are cumulative, or are consistent with the Government's previous disclosures, the Government believes that recalling Hargreaves would be inappropriate because the defendants will have already had a "full opportunity to cross-examine the witnesses during the government's case-in-chief." *Razzoli*, 548 F. App'x at 735.

### b. There is no basis to Preclude Cooperator Communications

Citing to no legal relevant legal authority, the defense seeks to preclude "the written text and email communications of the cooperating witness" on the basis that there is an "incomplete record of his relevant communications." (Dkt. 222 at 3). At the outset, the defendants' assertion that there is an incomplete record of the cooperator's communications is unsupported by the record. The Government has provided the defense with the entirety of Phone-1, which contains communications, including with the defendants, through the date of the cooperator's arrest in September 2018. As to Phone-2, as described above, the Agent determined that the phone did not contain any relevant evidence. Furthermore, as noted above, the Government has provided the defense with relevant communications that took place after the cooperator's arrest.

Even assuming arguendo that the defendants' did not receive a complete record of the defendants' communications, that would not be a basis to suppress other, lawfully obtained evidence. The defendants' reliance on Federal Rule of Criminal Procedure 16(d)(2)(C) is misplaced. That rule provides that a Court may prohibit a party from introducing undisclosed evidence if a party fails to comply with its Rule 16 obligations. Here, the defense seeks to preclude the Government from introducing evidence that *was* produced to the defense in a timely manner. The Government is not seeking to introduce any previously undisclosed evidence at all. There is accordingly no legal basis for such a preclusion, particularly here, where there has been no showing whatsoever of bad faith, apparent exculpatory value, or a failure to preserve relevant evidence that was in the Government's control. *See, e.g., Campo Flores*, S5 15 Cr. 765 (PAC), 2016 WL 5946472, at *4.

**c.   There is No Basis for an Adverse Inference Jury Instruction Or Any Other Relief**

The defendants also seek an adverse inference jury instruction "advising that the jury may make an inference against the government's failure to preserve evidence." (Dkt. 222 at 3). The defendants' argument is meritless.

First, the defendants fail to even *attempt* to articulate how they meet the factors set forth in *United States v. Garcia*, 596 F. App'x 24, 26 (2d Cir. 2015), the very case they rely on in their motion. The reason is clear: they cannot come close to meeting the *Garcia* factors here. As to Phone-2, the Agent determined that Phone-2 had no evidentiary value. As a result, the Agent returned Phone-2 to the cooperator. The defendants have pointed to nothing in the record to the contrary; indeed, their speculation that the Government had in hand yet failed to preserve relevant, exculpatory material from Phone-2 is wholly inconsistent with the undisputed facts that the Government did in fact image and preserve data from Phone-1 and the iPad, all of which is now in the defendants' possession. The defendants have therefore failed to show that there was any obligation to preserve the data from Phone-2; that the Agent chose not to image Phone-2 with a culpable state of mind; or that any evidence on Phone-2 was relevant to the defense. *Id.* Furthermore, the defense has failed to demonstrate that any evidence on Phone-2 possessed apparent "exculpatory value," or that the Agent or any member of the prosecution team acted in bad faith. *Greenberg*, 835 F.3d at 303. The defendants' outright speculation that this evidence might have been exculpatory is insufficient. *See Arizona v. Youngblood*, 488 U.S. at 56 n.*.

Second, as to the additional phones that the cooperator lost, the defendants' again fail to articulate why they are entitled to a limiting instruction. In particular, the defendants have failed to identify any relevant, much less exculpatory, evidence that was supposedly contained on those phones. *See Greenberg*, 835 F.3d at 303. Furthermore, they have made no assertion that the Government acted in bad faith. *Id.* Finally, these additional phones were never in the Government's possession to begin with. *See Barcelo*, 628 F. App'x at 38 (noting that the Second Circuit has "never held that the 'prosecution team' includes cooperating witnesses") (internal citation omitted).[5]

---

[5] The defendants' reliance on *United States v. Stoll*, 2011 WL 703875, at *1 (S.D. Fla. Feb. 21, 2011) is misplaced. First, *Stoll* goes against the weight of the authority in finding that the Government was liable for the conduct of a cooperator. Nevertheless, even there, the court concluded that the Government had been grossly negligent in fulfilling its discovery obligations. The defendants have made no similar assertions here and the record demonstrates that such allegations would be unfounded.

## Conclusion

For all of the reasons described above, the defendants' motion should be denied in its entirety and without an evidentiary hearing.

Very truly yours,

AUDREY STRAUSS
United States Attorney

by: ___/s/_____
Nicholas Folly
Tara M. La Morte
Emily Deininger
Assistant United States Attorneys