quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3170**

WRITER'S EMAIL ADDRESS
**christayback@quinnemanuel.com**

March 16, 2021

**VIA ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   U.S. v. Akhavan, No. 20-cr-0188

Dear Judge Rakoff:

We write respectfully on behalf of both defendants to respond to the Court's request for briefing as to whether it can "ever be that … reasonable banker[s] would not care about representations made to them because the reasonable banker[s] had already concluded that it was OK to violate the federal law as long as they had a good cover?" Trial Tr. 1594:9–12. The answer to that question is yes, as settled law confirms and the proof in this case further highlights.

The defense's argument as to materiality is that an objectively reasonable bank would have processed the marijuana transactions at issue in this case regardless of what descriptor, MCC, merchant name, and website were associated with the transactions. In other words, the descriptor or merchant name could have said "Eaze.com" and the MCC could have been whatever the government believes it should have been, and a reasonable bank still would have processed the transactions. The Court has suggested that it is considering restricting the defense from presenting a full-throated materiality defense in closing or (still more drastically) that it may instruct the jury that a reasonable banker would not knowingly violate federal law.

For two independent reasons, either of those courses would be erroneous. First, as the government agrees, the Sixth Amendment does not permit a trial court to instruct, *de jure* or *de facto*, a jury that an element of a criminal offense is established as a matter of law, no matter how compelling the government's evidence may be. Nor does the Sixth Amendment permit a court to prevent the defense from arguing any factually-supported theory that could create reasonable doubt

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

in a juror's mind as to any element of the charged offense. Second, even setting aside those established rules, the defense in this case has substantial evidence that the marijuana-related nature of the transactions at issue would not have been material to the allegedly defrauded banks, particularly given the federal government's stated and publicly announced policy not to prosecute certain categories of financial transactions with marijuana-related business that comply with state law. The marijuana transactions at issue in this case fall squarely within those categories.

Further still, precluding the defense from presenting its theory of materiality in closing or instructing the jury that the government has in effect established materiality as a matter of law would gravely prejudice the defense. With the Court's approval, defense counsel told the jury in the opening argument that the banks did not care that the transactions in this case were for marijuana—and defense counsel then proceeded to focus its cross-examinations on developing that evidence. It would deprive the defense of its central strategy pursued from the beginning of the trial, and also undermine the commitments it has made to this jury to challenge materiality, in ways and degrees that implicate the defendants' core due process rights .

### I. A Court May Not Instruct the Jury That an Element of the Offense Is Satisfied or Prevent the Defense From Presenting a Factually Supported Theory in Its Summation

The government agrees that the Court should not instruct the jury that the misrepresentations were material as a matter of law. *See* ECF No. 235. And with good reason: The Supreme Court has repeatedly held that "'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict … regardless of how overwhelmingly the evidence may point in that direction.'" *Rose v. Clark*, 478 U.S. 570, 578 (1986) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73 (1977)).[1] As the Court explained nearly 75 years ago, "a judge may not direct a verdict of guilty no matter how conclusive the evidence is." *United Bhd. Of Carpenters & Joiners of Am. v. United States*, 330 U.S. 395, 408 (1947). That "rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases," *Rose*, 478 U.S. at 578, which bars a court from "attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interest of the accused," *Martin Linen Supply Co.*, 430 U.S. at 573. And as the Second Circuit and other circuits have explained, the rule also prohibits a court from instructing a jury that a particular element of an offense is satisfied. *See United States v. Parkes*, 497 F.3d 220, 226–30 (2d Cir. 2007); *United States v. Gonzalez*, 110 F.3d 936, 945 (2d Cir. 1997); *United States v. Piche*, 981 F.2d 706, 716 (4th Cir. 1992); *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)

Thus, even if the government's evidence on the materiality element were "conclusive" on the sole ground that the transactions at issue involved marijuana—which it is not, for reasons set out below—it would still be improper for the Court to instruct the jury that the government has established that element merely because marijuana is illegal under federal law. Mr. Akhavan and Mr. Weigand have a constitutional right to put every element—including materiality—before the jury. *See Washington v. Recuenco*, 548 U.S. 212, 219 (2006) ("[M]ateriality is an element of the

---

[1] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from this brief.

2

mail fraud, wire fraud, and bank fraud statutes, and thus must be submitted to the jury to support conviction of those crimes."). Especially given the parties' agreement on this point, the Court should not take this issue away from the jury.

Similarly, a trial court may not "preclude [a defendant]'s attorney from making closing argument explaining the defendant's theory of the case." *Conde v. Henry*, 198 F.3d 734, 741 (9th Cir. 1999) (B. Fletcher, J.). "Although a court may limit arguments that are unduly time consuming, stray unduly from the mark, or otherwise impede … fair and orderly conduct, denying an accused the right to make final arguments on his theory of the defense denies him the right to assistance of counsel." *Id.* at 739 (citing *Herring v. New York*, 422 U.S. 853, 862, 865 (1975)); *see also United States v. Miguel*, 338 F.3d 995, 1002 (9th Cir. 2003) (reversing district court when it prevented defense counsel from "framing and giving content to the core of the defense" by precluding the defense from arguing a factually supported theory in closing).

A court can prevent a party from arguing a theory that is completely devoid of factual support in summation. But, contrary to the government's conclusory argument that "on the current evidentiary record, there is no evidence to support the defendants' 'plausible deniability' theory," ECF No. 235, at 2, the defense has put in ample evidence to support its theory that a reasonable bank simply would not care about marijuana transactions. *See, e.g.*, Trial Tr. 1258:24–1259:2. ("Mr. Burck: Has Bank of America terminated a single, a single cardholder's card because they have used their cards to buy marijuana, to your knowledge? Mr. Clow: Not to my knowledge."); Trial Tr. 1253–57 (Mr. Clow's testimony establishing that Bank of America continues to process Circle-enabled marijuana transactions); Trial Tr. 1198–1200 (Mr. Clow's testimony establishing that Bank of America has a financial incentive to encourage its cardholders to use their credit cards to make purchases); Trial Tr. 540:14–18 (Mr. Verdeschi's testimony establishing that issuing banks do not have access to information about merchants that have been terminated from the MasterCard network). The defense anticipates that it will elicit still more evidence to support its argument that a reasonable bank would not care about processing marijuana transactions from witnesses who have not yet testified at trial. In sum, it would be reversible error—and one not susceptible to harmless-error review, *see Conde*, 198 F.3d at 741; *Miguel*, 338 F.3d at 1003—for the court to preclude the defense from carrying forward its materiality defense in closing.

## II. Materiality Is a Hotly Disputed Element in Light of the Federal Government's Non-Prosecution Policy for Marijuana Transactions That Comply with State Law

In any event, even if in certain extraordinary circumstances a court could permissibly instruct a jury that the government had established the materiality element as a matter of law or foreclose a defendant from presenting a factually-supported theory of materiality in closing, this case falls on the opposite end of the spectrum. Here, materiality is in question as it seldom is. Indeed, the Court has rightly observed that materiality is central to the defense. And the evidence shows why: On this record, a reasonable jury could readily find that the prosecution has not established beyond a reasonable doubt that the alleged misstatements were material, notwithstanding the fact that the sale of marijuana generally remains illegal under the federal Controlled Substances Act.

To begin with, as this Court has already noted, "there are a lot of laws" that have not been repealed but are so rarely enforced that a reasonable person would not worry that engaging in the prohibited conduct would trigger a criminal prosecution. Trial Tr. 1509:13–1510:8. State gambling laws, for example, are rarely if ever enforced against basement poker games or March Madness office pools. *See, e.g.*, NY Penal Law § 225 *et seq.* (New York laws prohibiting gambling); CA Penal Code § 330 *et seq.* (same as to California). Underage drinking is illegal, *see, e.g.*, New York Al. Bev. Con. §§ 65, 65-c, but that law has not led to the mass arrest and incarceration of students on college campuses.

Similarly, a banker could reasonably decide to enter into a transaction with a business that is engaged in technically unlawful activity (or to maintain indifference to whether the company is engaged in such activity) where it is unlikely that the activity would result in the prosecution or sanction of the banker. For example, federal law criminally prohibits the knowing employment of unauthorized immigrants, as well as certain related conspiracy and secondary-liability offenses. *See* 8 U.S.C. § 1324(a)(1)(A)(iii)-(v), (a)(1)(B), and (a)(3)(A); 8 U.S.C. § 1324a(a)(1)(A), (a)(2), (e)(4)(A), and (f)(1). But given that millions of unauthorized immigrants participate in the U.S. workforce, bankers undoubtedly transact business with companies that they know (or strongly suspect) are knowingly employing unauthorized immigrants, presumably because the likelihood of prosecution is remote.

The argument for immateriality is, if anything, much stronger here. This case involves far more than mere non-enforcement of a widely ignored prohibition. The last decade has seen a substantial trend toward the outright legalization of marijuana, including in the two States, California and Oregon, where all the transactions at issue here took place. And as legalization has expanded at the state level, the federal government has taken affirmative steps to assure the marijuana industry and financial institutions that service the industry that their activities will not be subject to federal criminal sanction so long as they comply with state law. In the 2013 "Cole Memo," the Deputy Attorney General announced that, "[i]n jurisdictions that have enacted laws legalizing marijuana in some form and that have also implemented strong and effective regulatory and enforcement systems to control the cultivation, distribution, sale and possession of marijuana, conduct in compliance with those laws and regulations" will generally be tolerated, and "enforcement of state law by state and local law enforcement and regulatory bodies should remain the primary means of addressing marijuana-related activity." James M. Cole, *Guidance Regarding Marijuana Enforcement* 3 (Aug. 9, 2013). The Cole Memo was subsequently reaffirmed in a similar 2014 memorandum by the same author that adopted the same principles. Despite the rescission of that memorandum in 2018, as a practical matter DOJ's enforcement policy has remained in effect, as reflected by the lack of enforcement actions taken against entities or individuals for the cultivation, distribution, sale and possession of marijuana in States where it is legal since 2018. DOJ's exercise of discretion, both by policy and practice, not to prosecute marijuana transactions of the sort at issue here persisted throughout the timeframe of the conspiracy alleged in this case.

Likewise, FinCEN issued a memorandum expressly paralleling the Cole Memo in 2014 that clarified how financial institutions can permissibly provide financial services to businesses in the marijuana industry. The memorandum assured financial institutions that the federal

4

government will allow them to maintain relationships with marijuana-related businesses so long as those businesses do not engage in activities implicating DOJ enforcement priorities, none of which were implicated by the activities at issue here. The FinCEN guidance has never been rescinded.

The stated objective of these policies was to allow the marijuana industry to operate and to access capital and financial services in States where marijuana has been legalized, free from the looming threat of federal criminal sanction. It should therefore come as no surprise that hundreds of financial institutions are actively servicing the flourishing marijuana industry in States that have legalized marijuana, as reflected in quarterly Marijuana Banking Updates published by FinCEN. Given this landscape, in which all levels of government have affirmatively worked to normalize transactions involving marijuana in States where it has been legalized, a reasonable jury could readily conclude that an objectively reasonable financial institution like those that were the alleged victims of the fraud here would not have cared that the transactions involved marijuana so long as their cardholders want to buy marijuana and their purchases are generating fees for the bank—or at least that the government has not established materiality beyond a reasonable doubt. *See, e.g.*, Trial Tr. 1242:10–14 (Mr. Clow: "[I]f … our card member thinks that [a card transaction is] permissible, it doesn't necessarily put us in a brand risk or reputational risk.").

The government has suggested that it need only show that a reasonable bank would rather have known that transactions were for marijuana, even if the bank ultimately would have decided to process the transactions anyway. *See* Trial Tr. 1510:9–16. Respectfully, the government is wrong, for a misrepresentation is not material unless it is capable of influencing a *decision*. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 16 (1999) ("In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed."). From the outset, the government has argued that relevant decision is whether a bank will process the transactions at issue. *See United States v. Weigand*, 482 F. Supp. 3d 224, 237 (S.D.N.Y. 2020), as corrected (Sept. 2, 2020) (overruling motion to dismiss for failure to adequately allege materiality because the indictment alleges that "many issuing banks *would not have approved these transactions* if they had known marijuana was involved") (emphasis added). Tellingly, the government has adduced *no* evidence that *any* bank (out of the 1,000+ "victim" banks the government identified) has *ever* declined to process a credit or debit card transaction for marijuana, much less declined to process such a transaction based on a descriptor, an MCC, a merchant name, or a website. At most, the government has presented evidence that some banks on rare occasions took steps to block certain merchants from the credit card networks after reviewing transactions that *had already occurred*; even these instances are dwarfed by the huge number of marijuana sales transiting uninterrupted through the networks to this day. What the government is trying to do is to move the goalpost as to the materiality element of the offense after failing to clear the one so clearly and properly set. If accepted, the government's approach would transform the alleged violation of any idiosyncratic bank policy into a federal crime, no matter how trifling or peripheral that policy might be.

Nor can the government elide the requisite showing of materiality by suggesting that a reasonable bank would not "knowingly" process marijuana transactions. *See, e.g.*, Clow Direct Trial Tr. 1130:11–14. While factually questionable, that issue is legally beside the point. The

government must prove that the *specific* misrepresentations underlying this prosecution—*i.e.*, the descriptors, MCCs, merchant names, and websites—could influence an objectively reasonable bank. If an objectively reasonable bank would have processed these transactions *regardless* of how they were labeled by the descriptor, MCC, merchant name, and website, then the government cannot prove that the defendants' misrepresentations were material beyond a reasonable doubt, irrespective of whether a reasonable bank would "knowingly" processed marijuana transactions.

### III. Instructing the Jury That Materiality Has Been Established as a Matter of Law or Preventing the Defense From Arguing Its Theory as to Materiality in Closing Would Gravely Prejudice the Defense

Barring the defense from contesting materiality before the jury would result in severe prejudice to the defendants. Materiality is one of the key disputed issues in this case. At the outset of the case, defense counsel told the Court: "I am planning to open, your Honor, very much on the 'don't care.' … I'm going to say: These banks didn't care. I assume that's okay?" Trial Tr. 16:10-13. The Court then replied: "Yes…. That's your defense, and given my rulings, you can certainly present that defense." Trial Tr. 16:16-20. Defense counsel then proceeded to argue materiality to the jury in the opening statement. *See* Mr. Burck's Opening Statement, Trial Tr. 71:18-23 ("[Y]ou'll learn, that the banks, who the prosecutors claim were somehow defrauded … don't care."). As the Court is aware, the defense's cross examination of the government's witnesses has also been centrally focused on materiality.

To take the materiality element away from the jury or to preclude the defense from presenting its theory of immateriality to the jury would thus undercut the strategy that the defense adopted and has pursued from the beginning of this trial. In this circumstance, even if it were otherwise permissible to direct a partial verdict of guilt on the materiality element or prevent the defense from presenting its theory of materiality in closing, it would be fundamentally unfair—and, indeed, unconstitutional—to do so.

For the foregoing reasons, the Court should permit the defense to present its materiality theory to the jury in summation and should not instruct the jury that the government has proven materiality because marijuana is illegal under federal law and no reasonable banker would knowingly violate federal law. Such an instruction would effectively remove an element of the crime from the purview of the jury and amount to an impermissible determination of materiality as a matter of law.

Very truly yours,

*Christopher Tayback* (signature)

Christopher Tayback

CC:   All counsel of record (via ECF)