

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 17, 2021

**BY ECF**

Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
New York, New York 10007

    Re:    *United States v. Hamid Akhavan et al.*, S3 20 Cr. 188 (JSR)

Dear Judge Rakoff:

    The Government respectfully submits this letter to address several of the defendants' proposed witnesses (and related evidence), including a witness from Circle and investigators who purchased marijuana through the Eaze website through the use of Circle. Testimony from these witnesses is minimally relevant at best, highly confusing, and unduly prejudicial. Such evidence should be excluded under Rules 401 and 403.

    As an initial matter, purchases of marijuana products through Circle, which took place *after* the charged conspiracy, are wholly distinct from the fraudulent credit and debit card transactions at issue in this case. For a Circle transaction, the customer first purchases a stable cryptocurrency that is pegged to the dollar (so called "USD Coin," or "USDC") and added to the customer's Circle wallet. The USDC is then used to fund the purchase of marijuana products that are sold through the Eaze platform. In other words, the marijuana products are purchased through the payment of USDC, *not* the payment of U.S. dollars from the issuing bank. This is analogous to if a bank customer uses a debit or credit card to purchase Bitcoin, and then uses the Bitcoin to purchase an illegal product. Last fall the Acting Comptroller of the Office of the Comptroller of the Currency ("OCC")[1], Brian Brooks, explained cryptocurrency wallets as follows:

> Banks are engaged in a frontend part of stablecoin transaction and a backend part of a stablecoin transaction. **We're not asking banks to try and police every other thing that occurs in the use of a stablecoin.** What we are saying is that when a dollar is received at a bank in respect of a stablecoin, that transaction where the fiat comes into the bank in exchange for the purchase of a Tether token of a **USDC token** -- that transaction to fall within our letter needs to be coming from a hosted wallet.

---

[1] The OCC is an independent bureau within the United States Department of the Treasury that is responsible for chartering, regulating, and supervising all national banks.

> For example it's fine for the dollar to purchase a stablecoin that's going from a Coinbase wallet, or a Gemini Wallet, or a Kraken wallet. Not fine for it to go to an internet address that's not associated with that. **What happens from there is not the bank's issue - the bank at that point has received a dollar and is holding that dollar in deposit**….
>
> **The best analogy**, Laura, that I think people in crypto land ought to be taking from this **is the analogy of ATM machines**. If I go to an ATM and I put in my card and type in my pin, the bank knows who it is giving twenty bucks to, it's giving $20 to the cardholder Brian Brooks. Now I may take that dollar and I may go to the 7 Eleven, and I may pay cash for a pack of chewing gum a 7 Eleven may take that dollar and do something else with it… before finally that dollar makes it back to a bank account. **The bank is not obligated to chase that dollar bill everywhere it's going, that's not the way a cash economy works or the way a synthetic electronic cash economy would work.** But the bank, when it's either taking the dollar or giving the dollar back needs to know who it's dealing with, and it also needs to know that the hosted platforms it is working with have BSA/KYC procedures in place.

UnChained Podcast, [Interview with] Acting Comptroller of the Currency Brian Brooks on Crypto Banks, Oct. 27, 2020 *available at* https://www.youtube.com/watch?v=3DW7Q-4e5n0&feature=emb_title (emphasis added). Consistent with the statements by the OCC, testimony at trial from one of the issuing banks indicated that the issuing bank view wallet transactions as wholly distinct from direct purchases through cards. *See* Tr. 1278 (witness testifying that the issuing bank does not own the customer's wallet and does not have control over how the customer uses the money in the wallet).

      The defense has introduced evidence at trial showing that purchases of marijuana through Circle are described as "Circle Wallet *Eaze" on customer banks statements. (Akhavan Exhibit 11009). The Court initially precluded the evidence, but in response to a question from defense counsel, a witness from an issuing bank indicated that Eaze was currently on the Visa and MasterCard network through the use of a wallet, thereby opening the door to the admission of this document. The Court was clear, however, the door had been opened in a limited fashion: "but the door has not been opened to – we're not going to hear about Circle and cryptocurrency and all of that. As I said at the sidebar, I will permit, in a much more limited way, whether any of the banks are still processing, knowingly processing Eaze transactions." (Tr. 1261).

      Testimony regarding Circle is not necessary to elicit whether issuing banks are "knowingly processing Eaze transactions" (Tr. 1261), and it otherwise has limited if any bearing on the issue of materiality in this case. "In general, a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (internal citations omitted). Here, that decisonmaking body is an objectively reasonable issuing bank. The Government has alleged a scheme in which the defendants used an elaborate set of techniques, including fake merchants accounts, fake websites, fake descriptors, fake MCC codes, and deceptive customer service protocols in order to disguise the true merchants (i.e., the dispensaries and Eaze) and nature of the

transactions (i.e., marijuana transactions). In the charged scheme, funds from the issuing banks were used to directly purchase the marijuana products. The Government has also introduced evidence at this trial that demonstrates that issuing banks in the United States and Visa and MasterCard would not have knowingly allowed these marijuana transactions. In fact, the Government has shown that Visa and MasterCard uncovered the defendants' scheme while it was happening and took steps to shut it down.

Circle transactions in 2020 and 2021 have no bearing on the jury's determination of materiality in this case, which involves standard credit and debit purchases between 2016 and 2019. Unlike those transactions, Circle transactions involve the purchase of a stable cryptocurrency, which in turn is used to purchase the marijuana products through the Eaze website. As to materiality, the defense argues that if "Issuing Banks are content to process Circle-enabled marijuana transactions for Eaze now, it is more probable that Defendants' alleged misrepresentations were immaterial to the Issuing Banks during the charged time period." (Dkt. 139 at 4). The defense is wrong. The only conceivable relevance of the Circle transactions is if the defendants were to establish that reasonable banks view the purchase of cryptocurrency that in turn is used to fund illegal transactions, as one and the same as the direct use of cards issued by the issuing banks to fund illegal transactions. There is no evidence in the record that would enable the jury to reach that conclusion. To the contrary, the limited evidence to date suggests just the opposite, that is, that banks have no authority or control over cryptocurrency their customers may purchase using a credit or debit card, and therefore would likely view these transactions differently than standard card transactions.[2] Moreover, absent other evidence that the banks have been made aware of these transactions, testimony regarding Circle and Circle transactions does not establish that the issuing banks are "knowingly" processing Eaze transactions.

If the Court were to allow the defense to put in additional evidence about Circle, it would create the misimpression to the jury that the banks and credit card companies view these transactions as equivalent. It would also necessitate the need for a mini-trial and potentially a rebuttal case by the Government in order to determine how banks view cryptocurrency wallet transactions; without that evidence in the record, there is no probative value of the Circle evidence. As the comments by the OCC make clear, the evaluation of crypto wallet transactions is complicated. As Your Honor noted earlier in the trial, "for the jury to really fully appreciate [the Circle argument], even with the explanation you gave, would require a very considerable amount of background that would have to be adduced and it would not be worth the candle." (Tr. 1251:3-7).

---

[2] As explained by a number of witnesses in this case, in standard credit or debit transactions, the funds at issue are held by the issuing bank in the issuing bank's own corporate accounts before being transferred to the acquiring bank to ultimately transfer to the merchant. In other words, the funds at issue are not the customer's own funds at that point; the funds are under the custody and control of the bank.

      Given the minimal probative value of the defendants' proposed additional Circle evidence and testimony, the evidence should be precluded.

                         Very truly yours,

                         AUDREY STRAUSS
                         United States Attorney

by: s/
     Nicholas Folly
     Tara LaMorte
     Emily Deininger
     Assistant United States Attorneys
     (212) 637-1060 / 1041 / 2472

cc: all counsel of record (by ECF)