## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3170**

WRITER'S EMAIL ADDRESS
**christayback@quinnemanuel.com**

March 18, 2021

<u>VIA ECF</u>

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   <u>U.S. v. Akhavan, No. 20-cr-0188</u>

Dear Judge Rakoff:

      We write respectfully on behalf of both defendants in response to the government's letter seeking to preclude evidence tending to prove that the issuing banks (the "victims" in this case, according to the government's theory) are *right now continuing* to process debit-card transactions for marijuana through Circle Financial LLC (the "Circle evidence") *while knowing full well* that substantial volumes are going to Eaze and marijuana purchases.  Already, the court has determined that this evidence is relevant, *see* ECF No. 177, just as the defendants have made it a pillar of their strategy, cross-examinations, and arguments to the jury.[1]   For the reasons stated herein, the government's motion to preclude it lacks adequate basis and should be denied.

      It is worth underlining at the outset just how pivotal the Circle evidence and testimony are to the defense in this case.  As the Court has observed, the entire case may well hinge on the jury's

---

[1]   *See, e.g.,*, Trial Tr. 71: 13–17 (MR. BURCK:  "You're also going to learn that the credit card companies and the banks . . . continue, to this day, to this day, to permit flourishing online sales of marijuana using debit cards, to this day."); Trial Tr. 76: 3–24:  (MR. BURCK:  One of the most important things in this case, one of the most important pieces of evidence in this case, goes to the question of whether or not these banks care. You're going to hear from witnesses and evidence that the banks and the credit card companies continue, continue, to process marijuana sales to this day, through Eaze, using debit cards.  To this very day. The banks and the credit card companies allow card holders to use their debit cards to buy products online from Eaze, the self-described largest cannabis marketplace in California or, more simply, the Uber of weed.")

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

assessment of materiality, which defense counsel have trained their attacks on from the commencement of trial (and, indeed, since before the trial began). Consider the competing accounts that have taken shape: According to the prosecution's core theory, *but for* the defendants' alleged misrepresentations (about MCC codes and the like) issuing banks never would have processed the transactions at issue because banks would have known the transactions involved marijuana that is illegal under federal law. According to the defense, however, issuing banks *would not have cared* whether the transactions involved marijuana (even assuming *arguendo* that the information at issue would have revealed as much to issuing banks) so long as willing customers were ponying up their own funds, the host States were treating marijuana as legal, and these types of transactions do not fall within the enforcement priorities of the Department of Justice. How will the jury choose between these competing accounts? We respectfully submit that the evidence at issue may be the single best, and most essential, on-point proof that is available to the defense and crucial to the jury's ultimate deliberations.

The best proof of *im*materiality can be found in the real-world pudding of the Circle evidence. Whatever its imperfections may be, as argued by the government, it is highly instructive by any fair account. It shows the jury what issuing banks are *in fact* doing when the banks and card networks *undeniably know* that their customers' funds are being drawn from to transact with Eaze, which is to say to purchase marijuana. That is what is happening right now, through Circle, with the knowing, happy blessing of Visa, MasterCard, and issuing banks. To the extent that the government wants to poke holes by purporting to identify confounding factors (like the supposed role of conversion to cryptocurrency as intermediating factor), so be it; that is the government's right, and no one is trying to stop it. For present purposes, it suffices to note simply that the Defendants have a corresponding right (and need) to offer their side of the story and their proof to the jury.

In the respectful view of the defense, there is no satisfying distinction—and certainly no *inexorable* distinction—between issuing banks consciously (a) deciding to process marijuana transactions on behalf of their willing, paying customers using their customers' funds, versus (b) deciding to process marijuana transactions on behalf of their willing, paying customers using their customers' funds while those funds are converted to cryptocurrency for this very purpose. If the illegality of marijuana under federal law were preclusive, per the government's theory, such that no reasonable bank would be willing to partake of marijuana transactions, then reasonable banks would decline in scenario (b) no less than scenario (a). At a bare minimum, however, the demonstrable fact that banks are actively and knowingly participating in scenario (b), per the Circle evidence, is probative evidence as to how banks saw scenario (a), which is what materiality should ultimately turn on in this case. Given how central the materiality fight is to this case, the Circle evidence may be the hottest of hot documents for the defense.

    A.  <u>The Court's Grant Of The Circle Subpoena Commends Denial Of Preclusion</u>

Although it is no surprise that the government fears the Circle evidence, there is no merit to the government's bid to exclude it. Notably, the Court has already recognized the probative value of this evidence when granting the Circle subpoena, in relevant part, over the government's vigorous objection. Because the Court's reasoning remains equally apt now, it should effectively be dispositive:

> Given the ease with which a bank could figure out that Eaze sells marijuana, and the alleged quantity of marijuana sales consummated by Eaze (tens of millions of dollars annually), defendants argue that a juror could infer that banks must know what Eaze and Circle are doing. The fact that banks nevertheless process such transactions, like the private investigator's test buy, could arguably support an inference that the banks would not have cared about the misrepresentations that the defendants allegedly made.
>
> To be sure, defendants' argument requires several inferential steps, which a jury is free to make or to reject. All the Court must here decide is whether defendants' subpoena seeks relevant information on this topic.
>
> The Government principally argues that the victim banks have policies prohibiting use of their credit and debit cards to make illegal purchases and that whether banks are effective at enforcing those policies is beside the point because a victim's negligence or ineptitude is no defense to bank fraud. This is true as far as it goes, but it misunderstands defendants' theory. They intend to argue not that banks are lackadaisical in their enforcement, but rather that banks do not care about whether their cardholders are purchasing marijuana (at least in states where that is legal). If defendants uncover evidence sufficient to support such an inference, then, at least arguably, a juror might find that the alleged misstatements did not have a natural tendency to influence or a reasonable likelihood of influencing a bank's decision whether to process Eaze transactions.

ECF No. 177 at 10–11. All of that was exactly right, and it has only been further borne out by developments at trial.

Without grappling with the Court's reasoning, the government identifies no intervening development or other justification for the Court now to deviate. To be sure, the Court there was analyzing the evidence specifically under Federal Rule of Criminal Procedure 17(c), governing grant of a third-party subpoena, *see id.* at 2–6, but the standard for balancing materiality (*i.e.*, probative value) to the defense against burdens upon a third party does not meaningfully differ from weighing probative value against any unfair prejudice to the government.

Especially because the government struggles to identify unfair prejudice of any kind, its motion to exclude the Circle evidence should fail for the same reasons its objection to the subpoena did. Perhaps most importantly, the Court has already spoken to and overcome precisely what the government now argues—namely, "that banks might be willing to process Circle's transactions because they are, nominally, purchases of USD Coin rather than marijuana." *Id*. at 10 n.4. As the Court observed then, and as remains true now, "[t]his is a reasonable argument that the Government is free to make to the jury," but it did "not demonstrate that the subpoena does not seek relevant material," *id*., nor does it now demonstrate that the Circle evidence poses unfair prejudice substantially outweighing its probative value. To the contrary, the Circle evidence is quintessential grist for the jury; both sides should be left "free to make" their respective arguments around it. None of the government's points alters that clear bottom line.

3

## B. The Circle Evidence Is Relevant And Straightforward At Trial

Nuances of cryptocurrency are a red herring. It does not matter that Circle sells cryptocurrency en route to the end result. Circle could sell anything as a means to its avowed ends. For example, if customers could use their debit cards to "buy" $50 worth of apples from Circle, which were then traded for precisely $50 worth of marijuana from Eaze in a nanosecond, the defense's point would be the same. What matters is that Eaze appears in the descriptor when customers use a Circle wallet to make a purchase from Eaze, thereby supporting the defense's argument that the descriptor is immaterial to an objectively reasonable bank. The defense intends to elicit this simple point during its direct examination of the Circle witness, which the defense expects will last no longer than 45 minutes. The testimony the defense intends to elicit would in substance establish what Circle is; Circle's business relationship with Eaze; the history and volume of the transactions that Circle has facilitated between Eaze and U.S. issuing banks; the fact that Eaze customers can use debit cards to make purchases at Eaze; and the fact that the word "Eaze" appears on customer bank statements. No risk of jury confusion looms.

Nonetheless, the government huffs and puffs to obfuscate and complicate the role and value of the Circle evidence. The equation remains straightforward, however, and the Court has already spelled it out, cogently and concisely. *See* ECF No. 177 at 8–11.

The jury need not struggle to grasp the import of what the Circle evidence shows: customers' debit card statements say "Eaze" in the descriptor when they use their debit card to make Eaze purchases. The government nonetheless warns of confusion because Circle-enabled transactions involving cryptocurrency and "the evaluation of crypto wallet transactions is complicated." ECF No. 239 at 3. But explanations of cryptocurrency should not matter to the elementary yet key point that banks, when they transact with Circle, are in turn knowingly transacting with "Eaze," as reflected in the descriptor. If the government wants to inject complications about cryptocurrency, it can do so at its discretion, simply by noting the conversion process, but that should not occasion any "mini-trial" about cryptocurrency. At the end of the day in court, no such complication can alter either the status of marijuana under federal law or the fact that banks are alerted to its presence in a transaction once Eaze shows up in the statement.

Indeed, it is difficult for the government to mount any credible argument that conversion to cryptocurrency matters to the analysis. The operative, incontestable reality is that banks today are enabling marijuana transactions through Circle, in substance and by design. When customers go to Eaze, they input their Visa or MasterCard branded debit card information for a certain U.S. dollar amount of marijuana, and in return they get marijuana for the exact price they paid. Contrary to the government's account, this is not "wholly distinct" from direct purchases through cards. Considering that lay customers can understand how to buy marijuana from Eaze using Circle, without knowing the ins and outs of cryptocurrency, there is no reason to believe that jurors cannot understand the same.[2] Thus, the defense would argue that neither Eaze nor its customers wants or

---

[2] The government incorrectly argues that Circle-enabled Eaze transactions are analogous to a customer getting money out of an ATM and using that money to make a purchase from Eaze. Setting aside significant differences between ATMs and wallet transactions, that ignores the fact that *the descriptor for Circle-enabled Eaze purchases specifies "**Eaze**."* If attentive observers

cares about cryptocurrency. As the Court has already explained, the defense's argument is that "Circle offers Eaze USD Coin as a fig leaf separating the issuing bank from Eaze." ECF 177 at 9. No one should struggle to understand this argument or how the Circle evidence supports it.

      C.   The Circle Evidence Rebuts the Prosecution's Evidence

Perplexingly, the government argues that "[t]estimony regarding Circle is not necessary to elicit whether issuing banks are knowingly processing Eaze transactions." ECF No. 239 at 2. Yet the government argues later in the very same paragraph that it has "introduced evidence at this trial that demonstrates that issuing banks in the United States and Visa and MasterCard would not have knowingly allowed these marijuana transactions." *Id.* at 3. Given the parties' persisting, fundamental dispute on this critical question of materiality, the defense should be allowed to introduce its best evidence, which is the Circle evidence.

Relatedly, the government argues that, "absent other evidence that the banks have been made aware of these transactions, testimony regarding Circle and Circle transactions does not establish that the issuing banks are 'knowingly' processing Eaze transactions." ECF No. 239 at 3. The defense intends to elicit testimony that the banks have in fact been alerted to these transactions because Eaze is using the exact same merchant URL with the same name, "Eaze," in the descriptor as was true when MasterCard and Visa first identified the alleged illegal transactions in April and June 2019, respectively. Despite their knowledge, the banks have continued to approve payments from Eaze. Although this case was indicted in March 2020, only "a couple weeks ago" did Visa receive a complaint from Bank of America about Eaze, coming through Circle, and it is only now investigating. *See* Trial Tr. 1284:3–18; Trial Tr. 1968:5–13. This is clearly contrary to the government's self-serving gloss on how banks would view these transactions. ECF No. 239 at 3.

Last, as we have explained previously, the larger materiality question in this case goes beyond whether an objectively reasonable issuing bank would have "knowingly" processed Eaze transactions. The government must go so far as proving that the *specific* misrepresentations underlying this prosecution—*i.e.*, the descriptors, MCCs, merchant names, and websites—could influence an objectively reasonable bank. If an objectively reasonable bank would have processed these transactions *regardless* of how they were labeled by the descriptor, MCC, merchant name, and website, then the government necessarily cannot prove that the defendants' misrepresentations were material beyond a reasonable doubt. Although the Court and the parties sometimes refer to whether the banks would "knowingly" process marijuana transactions as a shorthand, the ultimate inquiry is not confined to whether the banks "knowingly" processed Eaze transactions. Rather, it includes whether the banks would refuse the transactions absent the specific misrepresentations

---

could believe the government's instant account, according to which conversion to crypto solves everything for banks, they would be astonished and appalled by it: to hear the government explain things in this case, U.S. banks have no responsibility to block cryptocurrency wallet transactions even if the words "cocaine," "prostitution," "gambling," "Hezbollah," or even "murder for hire" appeared in the descriptor. It is difficult to imagine the government seriously making that argument to this jury, but, if the government sticks to its position, that essentially is the argument it should need to make, and it should need to direct it to the jury.

alleged.³  The Circle transactions make clear that the banks would, and in fact did, process those transactions with Eaze displayed prominently for the world—and the banks—to see.  The jury should be permitted to see this evidence and assess its import for itself.  Likewise, the defense should be permitted to follow through by presenting the Circle evidence, on which so much of its trial strategy and theory of the case now depend.

For the foregoing reasons, the government's motion to preclude the Circle evidence should be denied.

Very truly yours,

*[signature: Christopher Tayback]*

Christopher Tayback

CC:   All counsel of record (via ECF)

---

³  The government also halfheartedly suggests that the evidence is irrelevant because it postdates the conspiracy, while stopping short of making the actual argument, presumably because it recognizes that the Court's prior rulings foreclose it.  *See* Trial Tr. 1248:21–22 (MS. LA MORTE: … "[The Circle evidence] was post scheme.  I understand your Honor's view on that.  It still may have some relevance there.").  And the Court was right.  This post-conspiracy evidence is highly probative in spotlighting actual decisions by banks under circumstances materially identical to those alleged—particularly as marijuana is illegal under federal law and announced as the subject of a transaction that is paid out of the funds of consenting customers.  The government is of course nonetheless free to urge the jury to discount the Circle evidence merely because it postdates the conspiracy, but the government has no good basis to exclude it as posing any sort of undue, unfair prejudice.  *See* Fed. R. Evid. 403.

6